**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ROBERT MARTINO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ISLAMIC REPUBLIC OF IRAN,<br><br>Defendant. | Case No. 1:21-cv-01808-RDM |

**PLAINTIFFS' MOTION FOR ENTRY OF A CASE MANAGEMENT ORDER**

Plaintiffs submit this Motion for Entry of a Case Management Order to facilitate adjudication of Plaintiffs' claims in an efficient and prompt manner. Plaintiffs welcome an opportunity to discuss this proposed Order with the Court at a Case Management hearing, should the Court deem such a hearing helpful.

**I.    Background**

This is a civil action against the Islamic Republic of Iran ("Iran") under the terrorism exception to the Foreign Sovereign Immunities Act (28 U.S.C. § 1605A, or "FSIA"). Plaintiffs are American service members and civilians, and family members of service members and civilians, who were killed or wounded by terrorists while serving their country in Iraq. Iran, which has been designated as a State Sponsor of Terrorism since 1984, sponsored those terrorist attacks in an effort to kill Americans and undermine American foreign policy in Iraq. *See* First Amended Complaint ("FAC"), Dkt.[1] 15 ¶¶ 1–4.

---

[1]    Unless otherwise specified, citations to "Dkt." are to docket entries in *Martino, et al., v. Islamic Republic of Iran*, No. 21-cv-01808 (RDM).

Plaintiffs served the FAC on Iran through the Clerk of the Court pursuant to 28 U.S.C. § 1608(a)(4).  *See* Dkt. 25.  Service was completed on July 11, 2022.  *See* Dkt. 26.  Iran was required to respond within 60 days of service, by September 9, 2022, and failed to do so.  On September 12, 2022, Plaintiffs filed an Affidavit in Support of Default against Iran.  *See* Dkt. 27. The Clerk entered default against Iran on September 15, 2022.  *See* Dkt. 29.  Since then, Plaintiffs have diligently pursued discovery in aid of their claims.  Plaintiffs now respectfully move the Court to enter a Case Management Order for the efficient and timely adjudication of Plaintiffs' claims.

Plaintiffs allege that Iran provided material support for terrorist attacks—in most instances committed by a Sunni terrorist coalition led by al-Qaeda and its two Iraqi affiliates, al-Qaeda in Iraq ("AQI") and Ansar al-Islam ("AI")—between approximately 2003 and 2017.  FAC ¶¶ 1–4.[2] This case involves 623 plaintiffs, consisting of five wounded-in-action service members, and the families and estates of 287 killed-in-action service members and civilian government contractors, who were injured or killed in approximately 236 different terrorist attacks in Iraq.  *See id*. ¶¶ 247– 2073.  Iran's support for these attacks was part of its systematic effort to kill Americans, undermine American foreign policy in Iraq, and promote both Sunni and Shia terrorist insurgencies against Americans in Iraq.  *See id*. ¶¶ 2–8, 31–245.  Iran, through its agents, including Hezbollah, the Islamic Revolutionary Guard Corps ("IRGC"), and the Islamic Revolutionary Guard Corp-Qods Force ("Qods Force"), provided the terrorist coalitions, including al-Qaeda, AQI, and AI, with material support in a variety of forms.  *Id*.  The terrorist coalitions used this support from Iran to attack Plaintiffs or their family members in Iraq.  *See id*. ¶ 246.

---

[2]    There may be a small number of Plaintiffs who were injured or killed in terrorist attacks committed by Iran-supported Shia terrorist groups in Iraq during this same time period.

## II.     Proposed Phases

To move forward towards a final judgment following Iran's default, Plaintiffs have developed a proposed case management plan with three phases:  (1) a bellwether phase focused on representative attacks and plaintiffs; (2) a damages phase for additional plaintiffs harmed by the bellwether attacks; and (3) a liability and damages phase for two additional tranches of non-bellwether attacks and plaintiffs that will be able to rely on the Court's bellwether ruling.  As explained further below, Plaintiffs request that the Court, at appropriate times, permit certain phases to proceed simultaneously in the interests of judicial economy.  Plaintiffs respectfully submit that this structure will provide the Court with satisfactory evidence of Iran's liability and Plaintiffs' damages, as required by 28 U.S.C. § 1608(e), and accordingly will move the case forward towards an efficient conclusion.

Plaintiffs request that the Court enter a full case management order governing all three phases at this time.  Plaintiffs offer this proposal with due deference to the Court's scheduling preferences, but respectfully submit that entering a full case management order at this juncture will enable Plaintiffs and their experts to prepare most efficiently for a timely submission of evidence in a format that will be most useful for the Court.  For example, with a full case management order in place, Plaintiffs will be able to prepare evidence for the Court's desired distribution of bellwether attacks; prioritize third-party discovery efforts in accordance therewith; prepare adequate expert reports addressing each bellwether attack; and prepare damages evidence for both bellwether and non-bellwether plaintiffs.

While Plaintiffs continue to pursue discovery, they have made substantial progress since filing their FAC.  Because Iran has refused to participate in the litigation, Plaintiffs have sought evidence to support their claims by other means—including directly from plaintiffs, through

requests to numerous federal agencies under the Freedom of Information Act (5 U.S.C. §§ 552, et seq., or "FOIA"), and through subpoenas, or *Touhy* requests, to federal agencies as authorized by this Court's Minute Order of February 17, 2023. *See* Dkt. 31. Through these efforts, Plaintiffs have sought, and will continue to seek, documents that will demonstrate Iran's support for the specified attacks that killed or injured Plaintiffs or their family members, as well as the harm suffered by Plaintiffs.

Specifically, Plaintiffs have requested governmental records such as Army Regulation 15-6 ("AR 15-6") Investigation Reports, Casualty Reports, Significant Activity ("SIGACT") Reports, Operational Reports ("OPREPs"), Commander's Situational Reports ("SITREPs"), Autopsy Reports, and Improvised Explosive Device ("IED") reports through FOIA requests to United States Central Command, Army Central Command, Marine Corps Central Command, Navy Central Command, Air Force Central Command, the Defense Threat Reduction Agency, the Defense Health Agency, and the U.S. Department of State. After filing lawsuits against each of these agencies to enforce their FOIA rights and after regularly meeting and conferring with the Government to develop search parameters and production schedules, Plaintiffs have begun receiving documents responsive to their FOIA requests and supporting their claims against Iran in this litigation. In addition, on March 1, 2023, Plaintiffs served a *Touhy* request on U.S. Central Command seeking records and information from the Combined Explosives Exploitation Cell ("CEXC") database as described in their Motion for Third-Party Discovery. *See* Dkt. 31. U.S. Central Command has since begun conducting searches of the CEXC database. Plaintiffs' counsel are also compiling the necessary information to establish damages, such as declarations from Plaintiffs, information substantiating any economic losses, and additional documentation of Plaintiffs' injuries.

Plaintiffs are now prioritizing the additional discovery necessary for the Bellwether Phase, and plan to continue discovery for non-bellwether attacks while the Bellwether Phase proceeds. Plaintiffs believe they will be prepared to move forward to the Bellwether Phase on or before November 30, 2023.

A.    **Bellwether Phase**

Because of the large number of attacks at issue and the general similarity of Iran's support for each, Plaintiffs propose conducting a Bellwether Phase focused on a set of representative attacks and a subset of plaintiffs associated with those attacks.  Other courts in this District have recently used similar bellwether approaches in FSIA lawsuits against Iran involving large numbers of attacks.  *See Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835 (JDB), 2022 WL 2817730, at *57 (D.D.C. July 19, 2022) (granting default judgment as to liability for 11 bellwether attacks and damages to 23 bellwether plaintiffs and authorizing the referral of remaining claims to a Special Master "who will receive evidence and prepare proposed findings and recommendations for the disposition of each claim in a manner consistent with [the Court's] Opinion"); *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12 (D.D.C. 2019) (granting default judgment as to liability for seven bellwether attacks and contemplating the referral of related damages claims to a Special Master); *Lee v. Islamic Republic of Iran*, 518 F. Supp. 3d 475 (D.D.C. 2021) (granting default judgment as to liability for four bellwether attacks after taking judicial notice of decisions in two related cases); Scheduling Order, *Estate of Fishbeck v. Islamic Republic of Iran*, No. 1:18-cv-02248 (CRC) (D.D.C. Nov. 19, 2021), Dkt. 75 (case management order authorizing a bellwether phase followed by the submission of additional claims to Special Masters).  *See also* Motion for Default Judgment as to Bellwether Plaintiffs, *Heaton v. Islamic Republic of Iran*, No. 1:19-cv-03003 (JMC) (D.D.C. June 2, 2023), Dkt. 51 at 3 (describing bifurcation of case into a bellwether phase and "a second phase, in which, 'if the Court is satisfied with the evidence

presented for the bellwether plaintiffs,' the remaining Plaintiffs would move for default judgment").

As for how the Court will adjudicate the bellwether claims, Plaintiffs propose that the Court adjudicate liability for the bellwether attacks and damages for a subset of bellwether plaintiffs based on written submissions, and without the need for an in-person hearing. Plaintiffs believe this approach will promote judicial economy, ensure Plaintiffs' claims are adjudicated in the most efficient way possible (which is crucial for their participation in and recovery from the U.S. Victims of State Sponsored Terrorism Fund), and minimize the emotional toll on Plaintiffs. Plaintiffs intend to establish their claims "by evidence satisfactory to the court," 28 U.S.C. § 1608(e), by submitting a detailed motion for default judgment that establishes (1) Iran's liability through documentary evidence, detailed reports from experts on Iran's support for the relevant terrorist groups involved in the attacks, and judicially noticeable findings, and (2) damages owed to Plaintiffs through written declarations from Plaintiffs, expert reports on economic losses for certain Plaintiffs, and other substantiating documentary evidence.

Plaintiffs' counsel recently proceeded in a similar fashion in *Neiberger v. Islamic Republic of Iran*, No. 16-cv-2193 (EGS-ZMF), 2022 WL 17370239, at *1 (D.D.C. Sept. 8, 2022), *report and recommendation adopted*, No. 16-cv-2193 (EGS), 2022 WL 17370160 (D.D.C. Sept. 30, 2022) ("An evidentiary hearing is not required; a plaintiff may establish proof by affidavit, declarations, or other written materials as plaintiffs can otherwise obtain") (internal citations and quotations omitted). As the D.C. Circuit has explained, the "district court also has an unusual degree of discretion over evidentiary rulings in a FSIA case against a defaulting state sponsor of terrorism," *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017), *vacated and remanded sub nom. on other grounds Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020), and

"when the defendant State fails to appear and the plaintiff seeks a default judgment, the FSIA leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide." *Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C. Cir. 2014). "[A]n evidentiary hearing is not required; a 'plaintiff may establish proof by affidavit.'" *Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 65 (D.D.C. 2015) (quoting *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 211 (D.D.C. 2012)); *see also Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 12 (D.D.C. 2009); *Saberi v. Islamic Republic of Iran*, 541 F. Supp. 3d 67, 77 (D.D.C. 2021); *Mwani v. bin Laden*, 417 F. 3d 1, 7 (D.C. Cir. 2005). "Indeed, cases in this Circuit and in others have repeatedly sustained jurisdiction or liability or both under the terrorism exception to the FSIA . . . based solely upon expert testimony." *Owens*, 864 F.3d at 788. Furthermore, "[a] court may take judicial notice of related proceedings and records in cases before the same court." *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 263 (D.D.C. 2006) (quoting *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 109 n.6 (D.D.C. 2005)); *see also Lee*, 518 F. Supp. 3d at 480. Similar to the process Plaintiffs propose here, another court in this District recently authorized the filing of a motion for default judgment as to 20 bellwether attacks and 46 bellwether plaintiffs based on written submissions without live testimony, following which, if the court is satisfied with the evidence presented for the bellwether plaintiffs, the remaining plaintiffs would move for default judgment. *See* Motion for Default Judgment as to Bellwether Plaintiffs, *Heaton v. Islamic Republic of Iran*, No. 1:19-cv-03003 (JMC) (D.D.C. June 2, 2023), Dkt. 51, at 3.

To this end, Plaintiffs propose moving for default judgment on or before November 30, 2023 on claims involving 25 bellwether attacks, and damages for a subset of approximately 45 plaintiffs associated with those bellwether attacks. For this purpose, Plaintiffs have organized their

attacks into a set of categories that represent a cross-section of the attack geographies and attack types spanning all of the attacks in this case. Specifically, Plaintiffs propose using at least two attacks from each of six geographies—Anbar, Baghdad, Babil, Diyala, Nineveh, and Saladin provinces—which collectively encompass the attacks in this case and exemplify the regions where the different Iran-supported terrorist groups at issue in this case were active in Iraq throughout the relevant time period.[3] Plaintiffs further propose using at least one attack from five commonly occurring terrorist tactics, techniques, and procedures ("TTPs")—Improvised Explosive Device ("IED") attacks; complex attacks; suicide bombings; small arms, rocket-propelled grenade ("RPG"), and anti-aircraft attacks; and indirect fire attacks—which are representative of the attacks in the case.

The proposed approach would thus allow the Court to issue its findings and opinions in an efficient manner on many if not all of the key issues in the case in the first instance and to lay out a framework that Special Masters can use to adjudicate substantially similar claims efficiently in the Non-Bellwether Phase of the case, as described in greater detail below. *See infra* Section II.C. To the extent the Court has any questions or desires additional information from Plaintiffs following Plaintiffs' written submission, Plaintiffs would be able to supplement their initial submission or, should the Court desire, present the additional information at an in-person hearing.

Notwithstanding the above, Plaintiffs understand that the Court may prefer to proceed with a hearing prior to ruling on Plaintiffs' bellwether motion for default judgment. Should that be the Court's preference, Plaintiffs have no objection to proceeding in that manner, and will be prepared

---

[3] One victim was killed in Najaf Province, which directly borders Anbar Province on the southeast. This attack will be a part of the non-bellwether proceedings.

to present evidence substantiating the bellwether claims at the earliest possible date following Plaintiffs' submission of their motion for default judgment on or before November 30, 2023.

### B.    Bellwether Damages Phase

Following Plaintiffs' filing of their bellwether motion for default judgment, Plaintiffs propose that the Court appoint up to three Special Masters to determine damages for all additional plaintiffs associated with the bellwether attacks who did not submit damages evidence with Plaintiffs' bellwether motion for default judgment.  Then, if the Court issues a liability and damages decision granting Plaintiffs' bellwether claims (the "Bellwether Opinion"), the Special Masters will already have the evidence they need to efficiently adjudicate damages for the additional plaintiffs associated with the bellwether attacks.  This plan is similar to how the plaintiffs were allowed to proceed in another recent FSIA case (in which Plaintiffs' counsel serve as co-counsel).  *See* Case Management Order, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835 (JDB) (D.D.C. Oct. 31, 2022), Dkt. 45 (ordering the plaintiffs to propose Special Masters for the adjudication of damages for other plaintiffs associated with the bellwether attacks who did not present damages evidence at a bellwether hearing).

Special Masters are authorized to hear damages claims in FSIA cases under 28 U.S.C. § 1605A(e).  Plaintiffs will propose individuals to serve as Special Masters and will file a proposed Administrative Plan Governing the Appointment of Special Masters within 60 days of filing their motion for default judgment.  In general, Plaintiffs propose that the Special Masters be empowered to accept documentary evidence and declarations to establish each plaintiff's eligibility to bring a claim under 28 U.S.C. § 1605A(c), the relationship of each plaintiff to his or her related direct victim, and each plaintiff's damages.  The Special Masters would issue recommendations on damages, which would be informed by this Court's Bellwether Opinion, when issued, and numerous precedents arising from similar cases in this District.  Were the Court to accept this

proposal, it would then review the Special Masters' reports and recommendations ("R&Rs") promptly following the issuance of its Bellwether Opinion, make any necessary adjustments or modifications, and enter final judgment for all additional plaintiffs associated with the bellwether attacks.

### C.    Non-Bellwether Liability and Damages Phase

#### 1.    Tranche 1

Plaintiffs next propose litigating the non-bellwether claims in an initial, large Tranche 1 of approximately 400 Plaintiffs, and a second, smaller Tranche 2 of the remaining approximately 128 Plaintiffs.[4]  Plaintiffs propose that, for each tranche, the liability and damages phases proceed simultaneously before as many as 10 Special Masters (subject to definition by this Court in a later Order) based solely on written submissions and guided by the Court's initial Bellwether Opinion. Plaintiffs propose that these Special Masters be appointed following this Court's Bellwether Opinion.  In accordance with the proposed schedule set forth below in Section III, Plaintiffs propose that, within 60 days after the Court's Bellwether Opinion, Plaintiffs submit for the Court's approval a plan identifying proposed Special Masters.  Other courts in this District have similarly appointed Special Masters in this fashion to adjudicate both liability and damages claims based on written submissions and informed by the courts' bellwether opinions.  *See, e.g*., Case Management Order, *Cabrera v. Islamic Republic of Iran*, No. 1:19-cv-03835 (JDB) (D.D.C. Oct. 31, 2022), Dkt. 114 (ordering plaintiffs to file a motion for the appointment of up to 10 Special Masters to make recommendations regarding the liability and damages claims of non-bellwether plaintiffs);

---

[4]    The precise size of the two tranches will depend in large part on the state of Plaintiffs' discovery efforts as of the non-bellwether phase of the case.  Plaintiffs will provide the Court with a more precise estimate of the tranches prior to the appointment of Special Masters for this phase.

Scheduling Order, *Estate of Fishbeck v. Islamic Republic of Iran*, No. 1:18-cv-02248 (CRC) (D.D.C. Nov. 19, 2021), Dkt. 75 (ordering plaintiffs to submit evidence regarding liability and damages for non-bellwether plaintiffs to Special Masters).

Plaintiffs submit that proceeding with the Tranche 1 claims while Plaintiffs simultaneously continue to gather evidence to support the Tranche 2 claims will conserve judicial resources and efficiently move the litigation forward. Plaintiffs plan to divide the attacks into groupings based upon similar criteria as those used in selecting the bellwether attacks to ensure that each Special Master may complete his or her work as efficiently as possible. Plaintiffs further believe that a number of the Special Masters involved in the *Cabrera* or other FSIA cases could be utilized for this matter, further ensuring an informed and efficient process for adjudicating these remaining claims. *See, e.g.,* Plaintiffs' Motion to Appoint Tranche 1 Special Masters, *Cabrera v. Islamic Republic of Iran*, No. 19-cv-03835 (JDB) (D.D.C. Nov. 30, 2022), Dkt. 122.

Guided by the Court's Bellwether Opinion, Plaintiffs will present specific liability evidence to the Special Masters for their assigned attacks and plaintiffs. Plaintiffs anticipate that these submissions will include additional expert reports and additional supporting documentary evidence establishing that Iran-supported terrorists committed each attack and that Iran's material support substantially contributed to each attack. The expert reports will be similar in structure and methodology to those submitted to the Court in the Bellwether Phase and will include exhibits consisting largely of U.S. governmental reports and investigations regarding the attacks. Should a Special Master recommend a liability decision in Plaintiffs' favor on a non-bellwether attack, the Special Master will then adjudicate the damages claims for the plaintiffs associated with the attack. The Special Masters will make damages determinations based on the same framework laid out in the Court's Bellwether Opinion. Special Masters may send requests for additional information to

Plaintiffs should they, at any time during their review, determine more information is necessary for finalizing their recommendations.

Plaintiffs propose that each Special Master draft an R&R covering both liability and damages and specifically containing findings of fact, liability conclusions for each non-bellwether attack, and damages recommendations—all guided by the Court's Bellwether Opinion. Plaintiffs will file the R&Rs with the Court promptly upon receiving them and will file any objections within 30 days.

Plaintiffs propose the Court adjudicate liability and damages, and issue final judgments, for the non-bellwether attacks and plaintiffs in Tranche 1 on a rolling basis based on the Special Masters' R&Rs, including the written evidence on which those R&Rs will be based.

### 2.    Tranche 2

Once a Special Master has completed his or her R&R for Tranche 1, Plaintiffs propose submitting expert reports and documentary evidence to that Special Master for his or her assigned Tranche 2 non-bellwether plaintiffs. The Special Masters will then submit their R&Rs to the Court when complete, after which the Court will rule on the liability and damages claims for the included Tranche 2 plaintiffs on a rolling basis. Once a Special Master has completed his or her R&R for Tranche 2, that Special Master may either complete his or her appointment, or, if available, review the evidence for additional Tranche 2 Plaintiffs until evidence has been submitted to Special Masters for all Plaintiffs in the case.

### III.    Proposed Schedule

Plaintiffs propose the following schedule, subject to the Court's availability:

- On or before November 30, 2023, Plaintiffs will file their motion for default judgment and associated filings for the bellwether plaintiffs.

- Within 60 days after filing their motion for default judgment, Plaintiffs will file a proposed Administrative Plan Governing the Appointment of Special Masters for other plaintiffs associated with the bellwether attacks who did not submit damages evidence in the motion for default judgment.  If the Court approves this plan, Plaintiffs will make written damages submissions to the appointed Special Masters for the additional plaintiffs injured in the bellwether attacks while the Court's Bellwether Opinion is pending.  The Special Masters will submit their R&Rs for these plaintiffs not more than 30 days after the Court issues its Bellwether Opinion. Plaintiffs will promptly file the R&Rs with the Court and will file any objections within 30 days thereafter.

-  Within 60 days after the Court issues its Bellwether Opinion, Plaintiffs will file a motion for the appointment of additional Special Masters to adjudicate the liability and damages claims of the Tranche 1 non-bellwether attacks and plaintiffs.

- Within 60 days after entry of an order appointing the Special Masters, Plaintiffs will make written submissions as to both liability and damages to the Special Masters for each of the Tranche 1 non-bellwether plaintiffs.  The Special Masters will complete their R&Rs for these plaintiffs not more than 120 days from receiving Plaintiffs' written submissions.  Plaintiffs will promptly file the R&Rs with the Court and will file any objections within 30 days thereafter.

- Following the submission of a Special Master's R&R addressing Tranche 1 non-bellwether Plaintiffs, Plaintiffs will make written submissions as to both liability and damages to the Special Master for Tranche 2 non-bellwether plaintiffs.  Special Masters will complete their R&Rs for these Tranche 2 plaintiffs not more than 120

days from receiving Plaintiffs' written submissions, after which Plaintiffs will promptly file the R&Rs with the Court and file any objections within 30 days thereafter. Plaintiffs will promptly inform the Court should Plaintiffs need additional time for Tranche 2 submissions, or should a need for additional Special Masters arise at any point.

Pursuant to Local Civil Rule 7(c), Plaintiffs attach to this Motion a proposed order entering the relief requested above.

DATED: August 14, 2023

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

*/s/    Nicholas Reddick    *
Nicholas Reddick (D.C. Bar No. 1670683)
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7400
Fax: (415) 858-7599
NReddick@willkie.com

Michael J. Gottlieb (D.C. Bar No. 974960)
1875 K Street, N.W.
Washington, DC 20006-1238
Tel: (202) 303-1000
Fax: (202) 303-2000
MGottlieb@willkie.com

Randall Jackson (D.C. Bar No. 490798)
787 Seventh Avenue
New York, NY 10019-6099
Tel: (212) 728-8000
Fax: (212) 728-8111
RJackson@willkie.com

SPARACINO PLLC

Ryan R. Sparacino (D.C. Bar No. 493700)
Eli J. Kay-Oliphant (D.C. Bar No. 503235)
1920 L Street, NW, Suite 535
Washington, D.C. 20036
Tel: (202) 629-3530
ryan.sparacino@sparacinopllc.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.


*/s/  Nicholas Reddick*
Nicholas Reddick