# **Exhibit 114**

UNCLASSIFIED

SGT Ross Clevenger

UNCLASSIFIED

## REPORT OF PROCEEDINGS BY INVESTIGATING OFFICER/BOARD OF OFFICERS
For use of this form, see AR 15-6; the proponent agency is OTJAG.

*IF MORE SPACE IS REQUIRED IN FILLING OUT ANY PORTION OF THIS FORM, ATTACH ADDITIONAL SHEETS*

### SECTION I - APPOINTMENT

Appointed by  Michael J. Silva, Brigadier General, 411th Engineer Brigade, Commanding
*(Appointing authority)*

on  09 February, 2007  *(Attach inclosure 1: Letter of appointment or summary of oral appointment data ) (See para 3-15, AR 15-6.)*
*(Date)*

### SECTION II - SESSIONS

The *(investigation) (board)* commenced at  Camp Ramadi, Iraq                    at    1000 Hrs
*(Place)*                                      *(Time)*

on  09 Feb., 2007   *(If a formal board met for more than one session, check here ☐ . Indicate in an inclosure the time each session began and
*(Date)*
ended, the place, persons present and absent, and explanation of absences, if any.) The following persons (members, respondents, counsel) were
present: (After each name, indicate capacity, e.g., President, Recorder, Member, Legal Advisor.)*
NONE

The following persons *(members, respondents, counsel)* were absent: *(Include brief explanation of each absence.) (See paras 5-2 and 5-8a, AR 15-6.)*
NONE

The *(investigating officer) (board)* finished gathering/hearing evidence at    1600 Hrs      on    15 Feb., 2007
*(Time)*                  *(Date)*
and completed findings and recommendations at         1700Hrs        on    16 Feb., 2007
*(Time)*                      *(Date)*

### SECTION III - CHECKLIST FOR PROCEEDINGS

| A. COMPLETE IN ALL CASES | YES | NO1 | NA2 |
|---|---|---|---|
| 1  Inclosures  *(para 3-15, AR 15-6)* | | | |
| Are the following inclosed and numbered consecutively with Roman numerals:  *(Attached in order listed)* | | | |
| a. The letter of appointment or a summary of oral appointment data? | ☒ | | |
| b. Copy of notice to respondent, if any?*(See item 9, below)* | | | ☒ |
| c. Other correspondence with respondent or counsel, if any? | | | ☒ |
| d. All other written communications to or from the appointing authority? | ☒ | | |
| e. Privacy Act Statements *(Certificate, if statement provided orally)?* | | | ☒ |
| f. Explanation by the investigating officer or board of any unusual delays, difficulties, irregularities, or other problems encountered  *(e.g., absence of material witnesses)?* | | | ☒ |
| g. Information as to sessions of a formal board not included on page 1 of this report? | | | ☒ |
| h. Any other significant papers *(other than evidence)*  relating to administrative aspects of the investigation or board? | | | ☒ |

*FOOTNOTES:  1/ Explain all negative answers on an attached sheet.*
*2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.*

**DA FORM 1574, MAR 1983**        EDITION OF NOV 77 IS OBSOLETE.        *Page 1 of 4 pages*        APD PE v1.20

| | | YES | NO[1] | NA[2] |
|---|---|---|---|---|
| 2 | Exhibits *(para 3-16, AR 15-6)* | | | |
| | a. Are all items offered *(whether or not received)* or considered as evidence individually numbered or lettered as exhibits and attached to this report? | ☒ | | |
| | b. Is an index of all exhibits offered to or considered by investigating officer or board attached before the first exhibit? | ☒ | | |
| | c. Has the testimony/statement of each witness been recorded verbatim or been reduced to written form and attached as an exhibit? | ☒ | | |
| | d. Are copies, descriptions, or depictions *(if substituted for real or documentary evidence)* properly authenticated and is the location of the original evidence indicated? | ☒ | ☐ | |
| | e. Are descriptions or diagrams included of locations visited by the investigating officer or board *(para 3-6b, AR 15-6)*? | ☒ | | |
| | f. Is each written stipulation attached as an exhibit and is each oral stipulation either reduced to writing and made an exhibit or recorded in a verbatim record? | ☒ | | ☐ |
| | g. If official notice of any matter was taken over the objection of a respondent or counsel, is a statement of the matter of which official notice was taken attached as an exhibit *(para 3-16d, AR 15-6)*? | | ☐ | ☒ |
| 3 | Was a quorum present when the board voted on findings and recommendations *(paras 4-1 and 5-2b, AR 15-6)*? | | | ☒ |
| **B.** | **COMPLETE ONLY FOR FORMAL BOARD PROCEEDINGS** *(Chapter 5, AR 15-6)* | | | |
| 4 | At the initial session, did the recorder read, or determine that all participants had read, the letter of appointment *(para 5-3b, AR 15-6)*? | | | |
| 5 | Was a quorum present at every session of the board *(para 5-2b, AR 15-6)*? | | | |
| 6 | Was each absence of any member properly excused *(para 5-2a, AR 15-6)*? | | | |
| 7 | Were members, witnesses, reporter, and interpreter sworn, if required *(para 3-1, AR 15-6)*? | | | |
| 8 | If any members who voted on findings or recommendations were not present when the board received some evidence, does the inclosure describe how they familiarized themselves with that evidence *(para 5-2d, AR 15-6)*? | | | |
| **C.** | **COMPLETE ONLY IF RESPONDENT WAS DESIGNATED** *(Section II, Chapter 5, AR 15-6)* | | | |
| 9 | Notice to respondents *(para 5-5, AR 15-6)*: | | | |
| | a. Is the method and date of delivery to the respondent indicated on each letter of notification? | | | |
| | b. Was the date of delivery at least five working days prior to the first session of the board? | | | |
| | c. Does each letter of notification indicate — | | | |
| | (1) the date, hour, and place of the first session of the board concerning that respondent? | | | |
| | (2) the matter to be investigated, including specific allegations against the respondent, if any? | | | |
| | (3) the respondent's rights with regard to counsel? | | | |
| | (4) the name and address of each witness expected to be called by the recorder? | | | |
| | (5) the respondent's rights to be present, present evidence, and call witnesses? | | | |
| | d. Was the respondent provided a copy of all unclassified documents in the case file? | | | |
| | e. If there were relevant classified materials, were the respondent and his counsel given access and an opportunity to examine them? | | | |
| 10 | If any respondent was designated after the proceedings began *(or otherwise was absent during part of the proceedings)*: | | | |
| | a. Was he properly notified *(para 5-5, AR 15-6)*? | | | |
| | b. Was record of proceedings and evidence received in his absence made available for examination by him and his counsel *(para 5-4c, AR 15-6)*? | | | |
| 11 | Counsel *(para 5-6, AR 15-6)*: | | | |
| | a. Was each respondent represented by counsel? | | | |
| | Name and business address of counsel: | | | |
| | *(If counsel is a lawyer, check here ☐ )* | | | |
| | b. Was respondent's counsel present at all open sessions of the board relating to that respondent? | | | |
| | c. If military counsel was requested but not made available, is a copy *(or, if oral, a summary)* of the request and the action taken on it included in the report *(para 5-6b, AR 15-6)*? | ☐ | | ☐ |
| 12 | If the respondent challenged the legal advisor or any voting member for lack of impartiality *(para 5-7, AR 15-6)*: | | | |
| | a. Was the challenge properly denied and by the appropriate officer? | | | |
| | b. Did each member successfully challenged cease to participate in the proceedings? | | | |
| 13 | Was the respondent given an opportunity to *(para 5-8a, AR 15-6)*: | | | |
| | a. Be present with his counsel at all open sessions of the board which deal with any matter which concerns that respondent? | | | |
| | b. Examine and object to the introduction of real and documentary evidence, including written statements? | | | |
| | c. Object to the testimony of witnesses and cross-examine witnesses other than his own? | | | |
| | d. Call witnesses and otherwise introduce evidence? | | | |
| | e. Testify as a witness? | | | |
| | f. Make or have his counsel make a final statement or argument *(para 5-9, AR 15-6)*? | | | |
| 14 | If requested, did the recorder assist the respondent in obtaining evidence in possession of the Government and in arranging for the presence of witnesses *(para 5-8b, AR 15-6)*? | | ☐ | |
| 15 | Are all of the respondent's requests and objections which were denied indicated in the report of proceedings or in an inclosure or exhibit to it *(para 5-11, AR 15-6)*? | | ☐ | ☐ |

FOOTNOTES: 1/ Explain all negative answers on an attached sheet. 2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

Page 2 of 4 pages, DA Form 1574, Mar 1983                                                                APD PE v1.20

**SECTION IV - FINDINGS** *(para 3-10, AR 15-6)*

The *(investigating officer) (board)* , having carefully considered the evidence, finds:

At 0800 on 08 February, 2007, 3rd Platoon, Alpha Company, 321st Engineer Battalion conducted a route clearance mission in support of RCT-6 to lead recovery personnel to a downed helicopter north of Camp Falluja. The mission included 24 personnel and 7 vehicles. At 0730hrs, 08 February, 2007, the platoon was assembled and issued a pre-mission brief from the platoon leader. The brief included a discussion of the previous nights IED finds, the possibility of new IED emplacements, the order of march, CASEVAC procedures, vehicle recovery procedures and ROE/EOF. Vehicle radio checks were performed internally and externally and Red/Green (b)(1)1.4a were tested and operational. All soldiers were wearing their PPE which included IBA, nomex suit, nomex gloves, ballistic eye and hearing protection. The platoon leadership did not however, check personnel ID cards or ID tags which resulted in a miscommunication of casualties to the Battalion TOC during the incident. This was later cleared from the platoon to the TOC. At approximately 0930hrs just passed the curve at grid MB124 999, the lead RG-31 (A352) was struck by an IED buried in the center of the road beneath the pavement. This IED was not detected the previous night due to its depth beneath the road. Post blast analysis showed the IED to have been paved under the road several months earlier. This IED was undetectable by the Husky vehicle due to its depth beneath the ground. The hull of the RG-31 was breached directly behind the passenger seat. The original post blast analysis on site found fragmentation consistent with a (1) 155mm projectile, (1) 120mm projectile, and an improvised container holding 70 to 80 pounds of an unknown explosive. A further, more detailed post blast analysis conducted at Camp Ramadi also found fragmentation consistent with a Russian OFAB-250. The final total net explosive weight is determined to be approximately 250 lbs.

Directly following the blast, the (b)(3), (b)(6) moved his Buffalo around the curve to get a better view of the downed RG-31and then directed his Cougar (designated CASEVAC vehicle) to move up to the downed RG-31 to perform a secondary sweep for IEDs and perform CASEVAC operations. The platoon medic immediately dismounted and began to render aid to PFC Werner who was lying in the center of the road. PFC Werner was pronounced dead after several attempts were made to save his life (b)(3), (b)(6) then assessed (b)(3), (b)(6) and moved to the more critical personnel, SGT Holton and SGT Clevenger. SGT Holton was immediately pronounced dead due to the severity of his wounds and the medic then moved to SGT Clevenger who was deemed as critically wounded SGT Clevenger was given all aid available to him. SGT Clevenger and (b)(3), (b)(6) were MEDEVACed to Balad with SGT Clevenger dying enroute.

Findings:
1) All (b)(1)1.4a were operational
2) All soldiers were wearing proper protective equipment but thorough PCCs and PCIs were not performed
3) The pre-combat briefing included a discussion of the previous nights IED finds, the possibility of new IED emplacements, order of march, CASEVAC procedures, vehicle recovery and ROE/EOF
4) All radio and BFT systems were operational
5) Actions of the platoon directly following the blast were appropriate for the situation
6) All possible actions to prevent the loss of life were performed by the platoon
7) Platoon medical personnel performed above standard in rendering aid to downed soldiers
8) CASEVAC procedures were well rehearsed and executed flawlessly
9) Vehicle spacing was appropriate for the speed of travel
10) The Husky vehicle chosen for use during the mission has an Analog Pulse Induction (PI) box which is reportedly rated to detect objects to a depth of 18". The possibility exists that if the platoon had used their other Husky vehicle, equipped with the new Digital PI boxes reportedly rated up to 48 inches in depth, the IED may have been detected in the previous nights mission

**SECTION V - RECOMMENDATIONS** *(para 3-11, AR 15-6)*

In view of the above findings, the *(investigating officer) (board)* recommends:

1) NCOIC's within all platoons and squads must perform proper PCC's and PCI's to include ID cards and ID tags
2) Recommend all dry reeds be burned along routes in order to prevent enemy cover and concealment.
3) Recommend ALL Husky vehicles in Iraq have Analog PI boxes replaced with newer Digital PI boxes or tactics should be modified to ensure Husky's with Digital PI boxes are used on paved roads
4) All Platoon Leaders should be trained on the effectiveness of the Digital PI boxes as opposed to the Analog PI boxes

UNCLASSIFIED

## SECTION VI – AUTHENTICATION   (para 3-17, AR 15-6)

THIS REPORT OF PROCEEDINGS IS COMPLETE AND ACCURATE.  (If any voting member or the recorder fails to sign here or in Section VII below, indicate the reason in the space where his signature should appear.)

(b)(3), (b)(6)

(b)(3), (b)(6)
(Investigating Officer) (President)

_____
(Member)

_____
(Member)

_____
(Member)

_____
(Member)

## SECTION VII – MINORITY REPORT    (para 3-13, AR 15-6)

To the extent indicated in Inclosure _____, the undersigned do(es) not concur in the findings and recommendations of the board.

(In the inclosure, identify by number each finding and/or recommendation in which the dissenting member(s) do(es) not concur. State the reasons for disagreement. Additional/substitute findings and/or recommendations may be included in the inclosure.)

_____
(Member)

_____
(Member)

## SECTION VIII – ACTION BY APPOINTING AUTHORITY   (para 2-3, AR 15-6)

The findings and recommendations of the (investigating officer) (board) are (approved) (disapproved) (approved with following exceptions/ substitutions). (If the appointing authority returns the proceedings to the investigating officer or board for further proceedings or corrective action, attach that correspondence (or a summary, if oral) as a numbered inclosure.)

(b)(3), (b)(6)

Page 4 of 4 pages. DA Form 1574, Mar 1983

APD PE v1.20

UNCLASSIFIED

**INCIDENT TIMELINE:**
08 February, 2007
0030hrs - Returned to Camp Falluja from 14.5 hour mission and informed of new mission requirements
0600hrs - First Call, chow, PCC's/PCI's
0700hrs - (b)(3), (b)(6) moves to RCT-6 HQ for final coordination meeting
0730hrs - (b)(3), (b)(6) returns from RCT-6 and briefs platoon on route, CASEVAC procedures, vehicle recovery plan, mission intent, ROE and ROF
0755hrs - Unit movement to link-up point with C Company, 2nd Tanks at Falluja South Gate
0825hrs - SP
0930hrs - Lead vehicle in convoy (RG31) A352 is struck by IED buried center of road
0950hrs - (b)(3), (b)(6) stabilized patients for medevac
0955hrs - CASEVAC vehicle arrives at OP Omar with patients
1025hrs - Patients air extracted

**INCIDENT NARRATIVE:**
After returning from a 14.5 hour route clearance mission on 07 February, 2007, Alpha Company, 3rd Platoon was met by (b)(3), (b)(6) at the platoon ready ramp. (b)(3), (b)(6) informed (b)(3), (b)(6) of new requirements to lead a recovery mission to a downed helicopter. (b)(3), (b)(6) was also instructed to meet with RCT-6 at 0700hrs on 08 February, 2007 to discuss any changes to the mission and receive any intelligence updates. This mission was to retrace the previous route 3rd platoon had just returned from clearing on 07 February, 2007 and lead an Air Wing Support Unit with security forces back to the helicopter crash site. The new mission had a start time of 0800 on 08 February, 2007. Upon receipt of the new mission, (b)(3), (b)(6) informed his squad leaders of the new requirements but felt, because the platoon had just cleared the route, there was limited need for planning other than the timeline. At this time, (b)(3), (b)(6) also performed spot checks of his vehicles and personnel before releasing them for rest.
At 0730hrs, 08 February, 2007, the platoon was assembled and issued a pre-mission brief from the (b)(3), (b)(6). The brief included a discussion of the previous nights IED finds, the possibility of new IED emplacements, the order of march, CASEVAC procedures, vehicle recovery procedures and ROE/EOF. Vehicle radio checks were performed internally and externally and (b)(1)(1.4a) were tested. With the pre-mission requirements completed, 3rd platoon mounted their vehicles and moved to the south gate of Camp Falluja to link up with their security element and the Marine Air Wing recovery unit. At this time, the (b)(3), (b)(6) 2nd Marine Tanks, requested a face-to-face meeting with (b)(3), (b)(6) and the (b)(3), (b)(6) to discuss any last minute mission requirements.
At 0825hrs all elements departed the south gate at Camp Falluja and proceeded out onto Route Mobile and onto Route Michigan. From Route Michigan, the elements then moved onto Route Mets and began traveling east past OP Omar. At this point, (b)(3), (b)(6) directed his platoon to reduce speed to approximately 5MPH due to the number of IED's found on route Mets the previous night. Route Mets has high reed growth along the side of the road which creates good cover and concealment for the enemy. At approximately 0930hrs just passed the curve at grid MB124 999, the lead RG-31 (A352) was struck by an IED buried in the center of the road beneath the pavement. This IED was not detected the previous night due to its depth beneath the road. Directly following the detonation, (b)(3), (b)(6) moved his Buffalo around the curve to get a better view of the downed RG-31 and then directed his Cougar (designated CASEVAC vehicle) to move up to the downed RG-31 to perform a secondary sweep for IEDs and perform CASEVAC operations. With the cougar in place, (b)(3), (b)(6) then directed several men in his vehicle (Buffalo) including EOD personnel, to dismount and assist in the CASEVAC and sweep of the area. At this time, (b)(3), (b)(6) requested Tank escort for the CASEVAC vehicle back to OP Omar. The (b)(3), (b)(6) immediately began work on the injured soldiers by prioritizing, treating and evacuating. Evacuation of the wounded immediately followed and the remainder of the platoon continued mission.

**INDEX OF EXHIBITS.**
I. Memorandums of Appointment as AR 15-6 Investigating Officer

II. SIGACTS Log

III. Casualty Reports

IV. EOD Final Story board

V. Sworn Statements - (b)(3), (b)(6)

VI. JA Story board 08FEB

VII. Maps

VIII. Manifest

IX. Microsoft Internet Chat (MIRC) log

X. Interview Notes

XI. Husky Effective Depth email trail

XII. Husky PI Boxes Email trail 2

XIII. Husky PI Boxes Email trail 3

XIV. Husky Testing Memo17AUG