# **Exhibit 157**

UNCLASSIFIED

CPT Jonathan Grassbaugh

SPC Levi Hoover

UNCLASSIFIED

| REPORT OF PROCEEDINGS BY INVESTIGATING OFFICER/BOARD OF OFFICERS |
|---|
| For use of this form, see AR 15-6; the proponent agency is OTJAG. |

*IF MORE SPACE IS REQUIRED IN FILLING OUT ANY PORTION OF THIS FORM, ATTACH ADDITIONAL SHEETS*

### SECTION I - APPOINTMENT

Appointed by **(b)(6), (b)(3)**   Commander, 3rd Heavy Brigade Combat Team, 1st Cavalry Division
*(Appointing authority)*

on **7 APR 07**
*(Date)*
*(Attach inclosure 1: Letter of appointment or summary of oral appointment data.) (See para 3-15, AR 15-6.)*

### SECTION II - SESSIONS

The *(investigation) (board)* commenced at **FOB Warhorse** *(Place)* at **1200** *(Time)*

on **8 APR 07** *(Date)* *(If a formal board met for more than one session, check here ☐. Indicate in an inclosure the time each session began and ended, the place, persons present and absent, and explanation of absences, if any.)* The following persons *(members, respondents, counsel)* were present: *(After each name, indicate capacity, e.g., President, Recorder, Member, Legal Advisor.)*

CPT Phillip J. Kiniery

The following persons *(members, respondents, counsel)* were absent: *(Include brief explanation of each absence.) (See paras 5-2 and 5-8a, AR 15-6.)*

The *(investigating officer) (board)* finished gathering/hearing evidence at **1600** *(Time)* on **17 Apr 07** *(Date)*

and completed findings and recommendations at **2000** *(Time)* on **17 Apr 07** *(Date)*

### SECTION III - CHECKLIST FOR PROCEEDINGS

| A. COMPLETE IN ALL CASES | YES | NO[1] | NA[2] |
|---|---|---|---|
| 1. Inclosures *(para 3-15, AR 15-6)* Are the following inclosed and numbered consecutively with Roman numerals: *(Attached in order listed)* | | | |
| a. The letter of appointment or a summary of oral appointment data? | ☒ | | |
| b. Copy of notice to respondent, if any? *(See Item 9, below)* | | | ☒ |
| c. Other correspondence with respondent or counsel, if any? | | | ☒ |
| d. All other written communications to or from the appointing authority? | | | ☒ |
| e. Privacy Act Statements *(Certificate, if statement provided orally)*? | | | ☒ |
| f. Explanation by the investigating officer or board of any unusual delays, difficulties, irregularities, or other problems encountered *(e.g., absence of material witnesses)*? | ☐ | ☐ | ☒ |
| g. Information as to sessions of a formal board not included on page 1 of this report? | | | ☒ |
| h. Any other significant papers *(other than evidence)* relating to administrative aspects of the investigation or board? | | | ☒ |

FOOTNOTES: 1/ Explain all negative answers on an attached sheet.
2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

DA FORM 1574, MAR 1983     EDITION OF NOV 77 IS OBSOLETE.     Page 1 of 4 pages     APD PE v1.20

| # | Item | YES | NO[1] | NA[2] |
|---|---|---|---|---|
| 2 | Exhibits *(para 3-16, AR 15-6)* | | | |
| | a. Are all items offered *(whether or not received)* or considered as evidence individually numbered or lettered as exhibits and attached to this report? | ☒ | ☐ | ☐ |
| | b. Is an index of all exhibits offered to or considered by investigating officer or board attached before the first exhibit? | ☒ | ☐ | ☐ |
| | c. Has the testimony/statement of each witness been recorded verbatim or been reduced to written form and attached as an exhibit? | ☒ | ☐ | ☐ |
| | d. Are copies, descriptions, or depictions *(if substituted for real or documentary evidence)* properly authenticated and is the location of the original evidence indicated? | ☐ | ☐ | ☒ |
| | e. Are descriptions or diagrams included of locations visited by the investigating officer or board *(para 3-6b, AR 15-6)*? | ☐ | ☐ | ☒ |
| | f. Is each written stipulation attached as an exhibit and is each oral stipulation either reduced to writing and made an exhibit or recorded in a verbatim record? | ☐ | ☐ | ☒ |
| | g. If official notice of any matter was taken over the objection of a respondent or counsel, is a statement of the matter of which official notice was taken attached as an exhibit *(para 3-16d, AR 15-6)*? | ☐ | ☐ | ☒ |
| 3 | Was a quorum present when the board voted on findings and recommendations *(paras 4-1 and 5-2b, AR 15-6)*? | ☐ | ☐ | ☒ |
| **B. COMPLETE ONLY FOR FORMAL BOARD PROCEEDINGS** *(Chapter 5, AR 15-6)* | | | | |
| 4 | At the initial session, did the recorder read, or determine that all participants had read, the letter of appointment *(para 5-3b, AR 15-6)*? | ☐ | ☐ | |
| 5 | Was a quorum present at every session of the board *(para 5-2b, AR 15-6)*? | ☐ | ☐ | |
| 6 | Was each absence of any member properly excused *(para 5-2a, AR 15-6)*? | ☐ | ☐ | ☐ |
| 7 | Were members, witnesses, reporter, and interpreter sworn, if required *(para 3-1, AR 15-6)*? | ☐ | ☐ | ☐ |
| 8 | If any members who voted on findings or recommendations were not present when the board received some evidence, does the inclosure describe how they familiarized themselves with that evidence *(para 5-2d, AR 15-6)*? | ☐ | ☐ | ☐ |
| **C. COMPLETE ONLY IF RESPONDENT WAS DESIGNATED** *(Section II, Chapter 5, AR 15-6)* | | | | |
| 9 | Notice to respondents *(para 5-5, AR 15-6):* | | | |
| | a. Is the method and date of delivery to the respondent indicated on each letter of notification? | ☐ | ☐ | |
| | b. Was the date of delivery at least five working days prior to the first session of the board? | ☐ | ☐ | |
| | c. Does each letter of notification indicate — | ☐ | ☐ | |
| | (1) the date, hour, and place of the first session of the board concerning that respondent? | ☐ | ☐ | |
| | (2) the matter to be investigated, including specific allegations against the respondent, if any? | ☐ | ☐ | |
| | (3) the respondent's rights with regard to counsel? | ☐ | ☐ | |
| | (4) the name and address of each witness expected to be called by the recorder? | ☐ | ☐ | |
| | (5) the respondent's rights to be present, present evidence, and call witnesses? | ☐ | ☐ | |
| | d. Was the respondent provided a copy of all unclassified documents in the case file? | ☐ | ☐ | |
| | e. If there were relevant classified materials, were the respondent and his counsel given access and an opportunity to examine them? | ☐ | ☐ | ☐ |
| 10 | If any respondent was designated after the proceedings began *(or otherwise was absent during part of the proceedings):* | | | |
| | a. Was he properly notified *(para 5-5, AR 15-6)*? | ☐ | ☐ | ☐ |
| | b. Was record of proceedings and evidence received in his absence made available for examination by him and his counsel *(para 5-4c, AR 15-6)*? | ☐ | ☐ | ☐ |
| 11 | Counsel *(para 5-6, AR 15-6):* | | | |
| | a. Was each respondent represented by counsel? | ☐ | ☐ | |
| | Name and business address of counsel: | | | |
| | *(If counsel is a lawyer, check here ☐ )* | | | |
| | b. Was respondent's counsel present at all open sessions of the board relating to that respondent? | ☐ | ☐ | ☐ |
| | c. If military counsel was requested but not made available, is a copy *(or, if oral, a summary)* of the request and the action taken on it included in the report *(para 5-6b, AR 15-6)*? | ☐ | ☐ | ☐ |
| 12 | If the respondent challenged the legal advisor or any voting member for lack of impartiality *(para 5-7, AR 15-6):* | | | |
| | a. Was the challenge properly denied and by the appropriate officer? | ☐ | ☐ | ☐ |
| | b. Did each member successfully challenged cease to participate in the proceedings? | ☐ | ☐ | ☐ |
| 13 | Was the respondent given an opportunity to *(para 5-8a, AR 15-6):* | | | |
| | a. Be present with his counsel at all open sessions of the board which deal with any matter which concerns that respondent? | ☐ | ☐ | |
| | b. Examine and object to the introduction of real and documentary evidence, including written statements? | ☐ | ☐ | ☐ |
| | c. Object to the testimony of witnesses and cross-examine witnesses other than his own? | ☐ | ☐ | ☐ |
| | d. Call witnesses and otherwise introduce evidence? | ☐ | ☐ | |
| | e. Testify as a witness? | ☐ | ☐ | |
| | f. Make or have his counsel make a final statement or argument *(para 5-9, AR 15-6)*? | ☐ | ☐ | |
| 14 | If requested, did the recorder assist the respondent in obtaining evidence in possession of the Government and in arranging for the presence of witnesses *(para 5-8b, AR 15-6)*? | ☐ | ☐ | ☐ |
| 15 | Are all of the respondent's requests and objections which were denied indicated in the report of proceedings or in an inclosure or exhibit to it *(para 5-11, AR 15-6)*? | ☐ | ☐ | ☐ |

FOOTNOTES: [1] Explain all negative answers on an attached sheet.
[2] Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

UNCLASSIFIED

| SECTION IV - FINDINGS *(para 3-10, AR 15-6)* |
|---|
| The *(investigating officer) (board)*, having carefully considered the evidence, finds: |
| See attached Memorandum For Record. |

| SECTION V - RECOMMENDATIONS *(para 3-11, AR 15-6)* |
|---|
| In view of the above findings, the *(investigating officer) (board)* recommends: |
| See attached Memorandum For Record. |

*Page 3 of 4 pages, DA Form 1574, Mar 83*                               USAPA V1.20

## SECTION VI - AUTHENTICATION  (para 3-17, AR 15-6)

THIS REPORT OF PROCEEDINGS IS COMPLETE AND ACCURATE. *(If any voting member or the recorder fails to sign here or in Section VII below, indicate the reason in the space where his signature should appear.)*

(b)(6), (b)(3)

_____  
(Recorder)

_____  
(Investigating Officer) (President)

_____  
(Member)

_____  
(Member)

_____  
(Member)

_____  
(Member)

## SECTION VII - MINORITY REPORT  (para 3-13, AR 15-6)

To the extent indicated in Inclosure _____, the undersigned do(es) not concur in the findings and recommendations of the board.

*(In the inclosure, identify by number each finding and/or recommendation in which the dissenting member(s) do(es) not concur. State the reasons for disagreement. Additional/substitute findings and/or recommendations may be included in the inclosure.)*

_____  
(Member)

_____  
(Member)

## SECTION VIII - ACTION BY APPOINTING AUTHORITY  (para 2-3, AR 15-6)

The findings and recommendations of the *(investigating officer) (board)* are *(approved)* ~~(disapproved)~~ ~~(approved with following exceptions/substitutions)~~. *(If the appointing authority returns the proceedings to the investigating officer or board for further proceedings or corrective action, attach that correspondence (or a summary, if oral) as a numbered inclosure.)*

(b)(6), (b)(3)

APR 2 2 2007

UNCLASSIFIED



**DEPARTMENT OF THE ARMY**
HEADQUARTERS AND HEADQUARTERS TROOP
5TH SQUADRON, 73RD CAVALRY
3RD BRIGADE COMBAT TEAM, 82ND AIRBORNE DIVISION
FOB CALDWELL, APO AE 09324

AFVC-CC-H                                                                 17 April 2007

MEMORANDUM FOR RECORD

SUBJECT: 15-6 Investigation into an IED detonation resulting in the death of CPT Grassbaugh, Jonathan; SPC Emolo, Ebe; SPC Hoover, Levi; and PFC McCandless, Rodney from 5-73rd Cavalry Squadron, 07APR07, 38S MC 7042 4576.

1. On 07APR 2007, I was appointed as the AR 15-6 Investigating Officer (IO) into an IED detonation resulting in the death of CPT Grassbaugh, Jonathan; SPC Emolo, Ebe; SPC Hoover, Levi; and PFC McCandless, Rodney from 5-73rd Cavalry Squadron occurring on 071616APR07, south of Zaganiyah, Diyala Province, Iraq. I have conducted a thorough investigation of the circumstances surrounding this incident. My observations, conclusions and recommendations are provided in the following format: facts, finding and recommendations.

2. FACTS: On 07 April 2007 at 1244 a squadron combat logistical patrol consisting of 26 personnel and nine vehicles left Forward Operating Base (FOB) Warhorse enroute to the A/5-73 Company Outpost in Zaganiyah (exhibit 9). Their mission was to re-supply A/5-73 and return back to FOB Warhorse upon completion. At approximately 1600 as the convoy was moving south on Route Barley enroute back to FOB Warhorse an improvised explosive device (IED) detonated under the lead vehicle. The lead vehicle had five total passengers; the (b)(3), (b)(6) (b)(3), (b)(6) was (b)(6), (b)(3) PFC McCandless was the driver, SPC Hoover was the .50 cal gunner, SPC Emolo and CPT Grassbaugh were passengers in the rear.

The command detonated IED was buried under the asphalt in the center of the road (exhibit 11). The vehicle was thrown forward into the air landing on its roof and immediately engulfed in fire upon impact (exhibit 11). (b)(6), (b)(3) immediately (1616hr) reported to the 5-73 Tactical Operation Center (TOC) that his convoy had been hit by an IED (exhibit 1, 9). The remaining vehicles in the convoy then established an initial security perimeter around the lead vehicle, simultaneously others began evaluating and treating the casualties at the IED site (exhibit 1, 2, 4, 6, 8).

CPT Grassbaugh and (b)(6), (b)(3) were the first two casualties identified; both were about 10-15 meters from the truck at the 12 o'clock position in reference to the direction of travel (exhibit 1, 2). CPT Grassbaugh and (b)(6), (b)(3) were both on fire when (b)(6), (b)(3) and (b)(3), (b)(5) (medic) arrived, they immediately extinguished the flames, moved them to a secure position and began to administer medical aid (exhibit 1, 2). CPT Grassbaugh was unconscious and (b)(3), (b)(6) (b)(6), (b)(3) was conscious at this point in the incident (exhibit 2, 3). (b)(6), (b)(3) identified PFC McCandless still in the vehicle and made all attempts to remove him from the vehicle but was not able to because of the intensity of the fire (exhibit 2). (b)(6), (b)(3) and (b)(6), (b)(3) then began to search for the rest of the vehicle crew (exhibit 1, 2, and 8). They located the vehicle

turret approximately 15-20m from the vehicle and SPC Hoover, once they were able to get to SPC Hoover had already passed away (exhibit 1, 2, 8).

A/5-73 Quick Reaction Force (QRF) arrived at the IED location at approximately 1630, established security and control of the helicopter landing zone for the MEDEVAC aircraft. The QRF platoon sergeant sent the rest of his platoon to clear the site and found the end of the wire where the IED was detonated from (exhibit 5). They continued to follow the wire to a house that after clearing was determined to be abandoned (exhibit 5). At 1631, the air weapons team arrived on station and began to facilitate security of the area (exhibit 9). At 1632, the MEDEVAC aircraft arrived and CPT Grassbaugh, (b)(6), (b)(3) and SPC Hoover were loaded and sent to level three medical care at Balad (exhibit 9, 10). At 1711, CPT Grassbaugh was pronounced dead on arrival, (b)(6), (b)(3) went immediately into surgery. Several others in the convoy not pulling security continued to search for SPC Emolo. Once the MEDEVAC aircraft had left the site, (b)(6), (b)(3) and (b)(6), (b)(3) (QRF medic) found SPC Emolo's body about 40 meters from the vehicle at the 10 o'clock position (exhibit 2, 3, 5, 6, 7, 8). At approximately 1740 the (b)(3), (b)(6) , and the vehicle recovery assets arrived at the site to help recover the vehicle. (b)(6), (b)(3) and (b)(6), (b)(3) , the (b)(3), (b)(6) (b)(3), (b)(6) were finally able to recover PFC McCandless' body from the burning vehicle. Disassembly of the vehicle was required in order to get to his body (exhibit 1, 2, 4, 5, 6). Both SPC Emolo and PFC McCandless were brought back to FOB Warhorse by ground and handed over to mortuary affairs.

3. FINDINGS: After reviewing this incident and all evidence, I found that the deaths of CPT Grassbaugh, Jonathan; SPC Emolo, Ebe; SPC Hoover, Levi; and PFC McCandless, Rodney were the result of a preplanned attack from Anti Iraqi Forces (AIF). This finding comes from the analysis of the IED blast site and eye witness statements that account the event.

The EOD assessment of the blast site determined that the IED was 1-2 155mm rounds buried in the center of the road under the asphalt (exhibit 10). A/5-73 had conducted mounted and dismounted patrols daily on Route Barley for two weeks prior to this incident in order to kill or capture the IED emplacers along this route. The IED was buried several months prior to 5-73 being in sector preventing this convoy from identifying any noticeable changes in the road giving away its position. Preset IEDs allow the enemy to easily connect the detonator to the wire attached to the rounds without being compromised by coalition forces.

I found that the MEDEVAC process followed all proper procedures and were responsive in aiding to the casualties. The initial triage performed by the medics on site and the nine line MEDEVAC call to time of evacuation totaled 16 minutes. This time was well within the preplanned squadron medical plan. Both CPT Grassbaugh and (b)(6), (b)(3) had someone with them throughout the entire process reassuring them that everything was going to be okay, (exhibit 3, 6, and 7).

2

4. RECOMMENDATIONS: No further investigation needed, I found no fault of any friendly element's actions that led to the deaths of CPT Grassbaugh, Jonathan; SPC Emolo, Ebe; SPC Hoover, Levi; and PFC McCandless, Rodney.

5. The POC for this memorandum is the undersigned at (b)(6), (b)(3) @us.army.mil



Commanding

7 Enclosures:
1. (b)(6), (b)(3), Sworn Statement
2. (b)(6), (b)(3) Sworn Statement
3. (b)(6), (b)(3) Sworn Statement
4. (b)(6), (b)(3) Sworn Statement
5. (b)(6), (b)(3) Sworn Statement
6. (b)(6), (b)(3) Sworn Statement
7. (b)(6), (b)(3) Sworn Statement
8. (b)(6), (b)(3) Sworn Statement
9. DA Form 1594, Duty Staff Journal Log
10. Significant Activity Story Board ppt.
11. Pictures of IED sited, 7 APR 07

3

UNCLASSIFIED

SGT Joshua Hanson


UNCLASSIFIED


## REPORT OF PROCEEDINGS BY INVESTIGATING OFFICER/BOARD OF OFFICERS

For use of this form, see AR 15-6; the proponent agency is OTJAG.

*IF MORE SPACE IS REQUIRED IN FILLING OUT ANY PORTION OF THIS FORM, ATTACH ADDITIONAL SHEETS*

### SECTION I - APPOINTMENT

Appointed by (b)(3), (b)(6) Commander 1/34 BCT
*(Appointing authority)*

on 1 Aug 06 *(Attach inclosure 1: Letter of appointment or summary of oral appointment data.) (See para 3-15, AR 15-6.)*
*(Date)*

### SECTION II - SESSIONS

The *(investigation) (board)* commenced at LSA Adder at 0800
*(Place)* *(Time)*

on 2 Aug 06 *(If a formal board met for more than one session, check here ☐. Indicate in an inclosure the time each session began and ended, the place, persons present and absent, and explanation of absences, if any.)* The following persons *(members, respondents, counsel)* were present: *(After each name, indicate capacity, e.g., President, Recorder, Member, Legal Advisor.)*

The following persons *(members, respondents, counsel)* were absent: *(Include brief explanation of each absence.) (See paras 5-2 and 5-8a, AR 15-6.)*

The *(investigating officer) (board)* finished gathering/hearing evidence at 1500 on 8 Sep 06
*(Time)* *(Date)*

and completed findings and recommendations at 1700 on 13 Sep 06
*(Time)* *(Date)*

### SECTION III - CHECKLIST FOR PROCEEDINGS

| A. COMPLETE IN ALL CASES | YES | NO | NA |
|---|---|---|---|
| 1 Inclosures *(para 3-15, AR 15-6)* | | | |
| Are the following inclosed and numbered consecutively with Roman numerals: *(Attached in order listed)* | | | |
| a. The letter of appointment or a summary of oral appointment data? | ● | ○ | |
| b. Copy of notice to respondent, if any? *(See item 9, below)* | ○ | ○ | ● |
| c. Other correspondence with respondent or counsel, if any? | ○ | ○ | ● |
| d. All other written communications to or from the appointing authority? | ○ | ○ | ● |
| e. Privacy Act Statements *(Certificate, if statement provided orally)?* | ○ | ○ | ● |
| f. Explanation by the investigating officer or board of any unusual delays, difficulties, irregularities, or other problems encountered *(e.g., absence of material witnesses)?* | ○ | ○ | ● |
| g. Information as to sessions of a formal board not included on page 1 of this report? | ○ | ○ | ● |
| h. Any other significant papers *(other than evidence)* relating to administrative aspects of the investigation or board? | ● | ○ | ○ |

FOOTNOTES: 1) Explain all negative answers on an attached sheet
2) Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

DA FORM 1574, MAR 83    USAPA V1.0-67 Batch 1    EDITION OF NOV 77 IS OBSOLETE.    Page 1 of 4 pages

| | | YES | NO[1] | NA[2] |
|---|---|---|---|---|
| 2 | Exhibits *(para 3-16, AR 15-6)* | | | |
| | a. Are all items offered *(whether or not received)* or considered as evidence individually numbered or lettered as exhibits and attached to this report? | ● | ○ | ○ |
| | b. Is an index of all exhibits offered to or considered by investigating officer or board attached before the first exhibit? | ● | ○ | ○ |
| | c. Has the testimony/statement of each witness been recorded verbatim or been reduced to written form and attached as an exhibit? | ● | ○ | ○ |
| | d. Are copies, descriptions, or depictions *(if substituted for real or documentary evidence)* properly authenticated and is the location of the original evidence indicated? | ○ | ○ | ● |
| | e. Are descriptions or diagrams included of locations visited by the investigating officer or board *(para 3-6b, AR 15-6)*? | ● | ○ | ○ |
| | f. Is each written stipulation attached as an exhibit and is each oral stipulation either reduced to writing and made an exhibit or recorded in a verbatim record? | ○ | ○ | ● |
| | g. If official notice of any matter was taken over the objection of a respondent or counsel, is a statement of the matter of which official notice was taken attached as an exhibit *(para 3-16d, AR 15-6)*? | ○ | ○ | ● |
| 3 | Was a quorum present when the board voted on findings and recommendations *(paras 4-1 and 5-2b, AR 15-6)*? | ○ | ○ | ● |
| **B. COMPLETE ONLY FOR FORMAL BOARD PROCEEDINGS** *(Chapter 5, AR 15-6)* | | | | |
| 4 | At the initial session, did the recorder read, or determine that all participants had read, the letter of appointment *(para 5-3b, AR 15-6)*? | ○ | ○ | |
| 5 | Was a quorum present at every session of the board *(para 5-2b, AR 15-6)*? | ○ | ○ | |
| 6 | Was each absence of any member properly excused *(para 5-2a, AR 15-6)*? | ○ | ○ | ○ |
| 7 | Were members, witnesses, reporter, and interpreter sworn, if required *(para 3-1, AR 15-6)*? | ○ | ○ | ○ |
| 8 | If any members who voted on findings or recommendations were not present when the board received some evidence, does the inclosure describe how they familiarized themselves with that evidence *(para 5-2d, AR 15-6)*? | ○ | ○ | ○ |
| **C. COMPLETE ONLY IF RESPONDENT WAS DESIGNATED** *(Section II, Chapter 5, AR 15-6)* | | | | |
| 9 | Notice to respondents *(para 5-5, AR 15-6)*: | | | |
| | a. Is the method and date of delivery to the respondent indicated on each letter of notification? | ○ | ○ | |
| | b. Was the date of delivery at least five working days prior to the first session of the board? | ○ | ○ | |
| | c. Does each letter of notification indicate — | ○ | ○ | |
| | (1) the date, hour, and place of the first session of the board concerning that respondent? | ○ | ○ | |
| | (2) the matter to be investigated, including specific allegations against the respondent, if any? | ○ | ○ | |
| | (3) the respondent's rights with regard to counsel? | ○ | ○ | |
| | (4) the name and address of each witness expected to be called by the recorder? | ○ | ○ | |
| | (5) the respondent's rights to be present, present evidence, and call witnesses? | ○ | ○ | |
| | d. Was the respondent provided a copy of all unclassified documents in the case file? | ○ | ○ | |
| | e. If there were relevant classified materials, were the respondent and his counsel given access and an opportunity to examine them? | ○ | ○ | ○ |
| 10 | If any respondent was designated after the proceedings began *(or otherwise was absent during part of the proceedings)*: | | | |
| | a. Was he properly notified *(para 5-5, AR 15-6)*? | ○ | ○ | ○ |
| | b. Was record of proceedings and evidence received in his absence made available for examination by him and his counsel *(para 5-4c, AR 15-6)*? | ○ | ○ | ○ |
| 11 | Counsel *(para 5-6, AR 15-6)*: | | | |
| | a. Was each respondent represented by counsel? | ○ | ○ | |
| | Name and business address of counsel: | | | |
| | *(If counsel is a lawyer, check here ○ )* | | | |
| | b. Was respondent's counsel present at all open sessions of the board relating to that respondent? | ○ | ○ | ○ |
| | c. If military counsel was requested but not made available, is a copy *(or, if oral, a summary)* of the request and the action taken on it included in the report *(para 5-6b, AR 15-6)*? | ○ | ○ | ○ |
| 12 | If the respondent challenged the legal advisor or any voting member for lack of impartiality *(para 5-7, AR 15-6)*: | | | |
| | a. Was the challenge properly denied and by the appropriate officer? | ○ | ○ | ○ |
| | b. Did each member successfully challenged cease to participate in the proceedings? | ○ | ○ | ○ |
| 13 | Was the respondent given an opportunity to *(para 5-8a, AR 15-6)*: | | | |
| | a. Be present with his counsel at all open sessions of the board which deal with any matter which concerns that respondent? | ○ | ○ | |
| | b. Examine and object to the introduction of real and documentary evidence, including written statements? | ○ | ○ | ○ |
| | c. Object to the testimony of witnesses and cross-examine witnesses other than his own? | ○ | ○ | ○ |
| | d. Call witnesses and otherwise introduce evidence? | ○ | ○ | |
| | e. Testify as a witness? | ○ | ○ | |
| | f. Make or have his counsel make a final statement or argument *(para 5-9, AR 15-6)*? | ○ | ○ | |
| 14 | If requested, did the recorder assist the respondent in obtaining evidence in possession of the Government and in arranging for the presence of witnesses *(para 5-8b, AR 15-6)*? | ○ | ○ | ○ |
| 15 | Are all of the respondent's requests and objections which were denied indicated in the report of proceedings or in an inclosure or exhibit to it *(para 5-11, AR 15-6)*? | ○ | ○ | ○ |

FOOTNOTES: 1) Explain all negative answers on an attached sheet.
2) Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

## SECTION IV - FINDINGS (para 3-10, AR 15-6)

The *(investigating officer)* *(board)*, having carefully considered the evidence, finds:
See attached memo.

## SECTION V - RECOMMENDATIONS (para 3-11, AR 15-6)

In view of the above findings, the *(investigating officer)* *(board)* recommends:
See attached memo.

## SECTION VI - AUTHENTICATION (para 3-17, AR 15-6)

THIS REPORT OF PROCEEDINGS IS COMPLETE AND ACCURATE. *(If any voting member or the recorder fails to sign here or in Section VII below, indicate the reason in the space where his signature should appear.)*

_____ (Recorder)

(b)(3), (b)(6)
_____ (Investigating Officer) (President)

_____ (Member)

_____ (Member)

_____ (Member)

_____ (Member)

## SECTION VII - MINORITY REPORT (para 3-13, AR 15-6)

To the extent indicated in Inclosure _____, the undersigned do(es) not concur in the findings and recommendations of the board. *(In the inclosure, identify by number each finding and/or recommendation in which the dissenting member(s) do(es) not concur. State the reasons for disagreement. Additional/substitute findings and/or recommendations may be included in the inclosure.)*

_____ (Member)

_____ (Member)

## SECTION VIII - ACTION BY APPOINTING AUTHORITY (para 2-3, AR 15-6)

The findings and recommendations of the (investigating officer) ~~(board)~~ are (approved) ~~(disapproved)~~ ~~(approved with following exceptions/substitutions)~~. *(If the appointing authority returns the proceedings to the investigating officer or board for further proceedings or corrective action, attach that correspondence (or a summary, if oral) as a numbered inclosure.)*

Concur w/ the findings of the I/O. SOP's were followed, soldiers were all doing the right thing, at the time of incident. The soldiers were heroic in their efforts and should be commended for performing their jobs in a manner befitting the Bearcat tradition.

(b)(3), (b)(6)

19 SEP 06

UNCLASSIFIED



**DEPARTMENT OF THE ARMY**
HEADQUARTERS 1ST BRIGADE COMBAT TEAM, 34TH DIVISION
ALI AIR BASE, LOGISTICAL SUPPORT AREA ADDER
ARMY POST OFFICE AE 09331

1/34BCT-CO                                                                7 September 2006

MEMORANDUM FOR [(b)(3), (b)(6)] Commander, 1/34th Brigade Combat Team

SUBJECT: AR 15-6 Investigation of Facts and Circumstances Leading to the Death of Sergeant Joshua Hanson.

1. Purpose: This memorandum contains facts, findings, and recommendations for the above mentioned investigation in accordance with AR 15-6, Procedures for Investigating Officers and Boards of Officers.

2. Background: The following are the facts of the above mentioned investigation in accordance with the AR 15-6, Procedures for Investigating Officers and Board of Officers.

    a. The Brigade Mission is to conduct Theater Security and Security Force operations to secure theater support convoys and logistical nodes in the Iraq Theater of Operations in order to allow 3 Corps Support Command to provide continuous, synchronized and responsive Combat Service Support to Multi National Corps – Iraq units.

    b. The mission of 2-136 Combined Arms Battalion (CAB) is to conduct combat patrolling, Entry Control Point operations and Observation Post operations in order to maintain freedom of maneuver in AO Bearcat and secure Camp Taqaadam from Anti Iraqi Forces to ensure uninterrupted logistics operations of the 1st Marine Logistics Group.

    c. On 28 August 2006, the Commander of the 1st Marine Logistics Group ordered 2-136 CAB to support 3rd Battalion, 2nd Marine Expeditionary Force. On 29 August 2006, 2nd Platoon of Able Company, 2-136 CAB conducted operations in support of 3rd Battalion, 2nd Marine Expeditionary Force. The Platoon of which SGT Joshua Hanson was a member, was to provide over watch of two critical road intersections in support of an operation conducted by Kilo Company, 3rd Battalion, 2nd Marines.

3. Findings of the Investigation: From 29 to 30 August 2006, 2nd Platoon, Able Company was supporting an operation by Kilo Company 3/2 Marines. The element consisted of (26) Personnel, (4) M2 Bradley Fighting Vehicles, (1) M1114 HMMWV, and (1) M1151 HMMWV. During the course of the operation Bravo Section of the Platoon led by [(b)(3), (b)(6)] consisting of (13) personnel (2) M2 Bradley Fighting Vehicles and (1) 1151 HMMWV was providing over watch of the intersection of route

1

UNCLASSIFIED

Twins and Dodgers at grid LB 5565 9785. A Section led by [(b)(3), (b)(6)] was providing over watch of route Michigan at grid LB 5590 9970. Alpha Section consisted of (13) Personnel, (2) M2 Bradley Fighting Vehicles and (1) M1114 HMMWV.

As B Section was moving from their over watch position to the Kilo Company command post along route Twins, the M1151 HMMWV in which SGT Joshua Hanson was traveling, struck an IED identified as double stacked anti tank mines. The explosion and ensuing fire resulted in the death of SGT Hanson.

    a. Personnel and Vehicles Involved in Incident:

        Vehicle A65, M2 Bradley Fighting Vehicle, mICE ECM

(b)(3), (b)(6)

        Vehicle A11, M2 Bradley Fighting Vehicle, No ECM System

(b)(3), (b)(6)

        Vehicle A204, M1114 HMMWV, Chameleon ECM System

(b)(3), (b)(6)

        Vehicle A24, M2 Bradley Fighting Vehicle, mICE ECM System

(b)(3), (b)(6)

        Vehicle A66, M2 Bradley Fighting Vehicle, No ECM System

(b)(3), (b)(6)

        Vehicle A208, M1114 HMMWV, Chameleon ECM System

(b)(3), (b)(6)

        Sergeant Joshua Hanson - Passenger

2

b. Role of Sergeant Hanson on the mission: Sergeant Hanson was part of the dismounted Infantry squad whose job was to provide local security and over watch of the Bradley Fighting vehicles and road intersection.

c. Time Sequence of Events:

29 August 2006

0900 Able Company leadership move from Camp Taqqadum to Habbiniyah to receive mission brief from Kilo Company 3rd Battalion 2nd Marine Expeditionary Force.
1200 Able Company returns to Camp Taqqadum and conducts pre execution checks and troop leading procedures
1430 Able Company elements leave Camp Taqqadum for Voodoo Command Post (CP) where Kilo Company has established their forward Command Post at grid 38S LB 5527 9765.
1500 – Able Company arrives at Voodoo CP and links up with Kilo Company for final instructions.
1630 – Able Company elements move to their over watch positions
1640 – Able Company elements commence over watch mission
2000 – Bravo Section of Able Company moves back to Voodoo CP to initiate rest cycle as operation is planned to last 48 hours.
2030 – Bravo Section returns to over watch position and resumes over watch mission

30 August

0600 – Kilo Company elements come to relieve Bravo Section in place
0650 – Bravo Section moves back to Voodoo CP along canal road
0720 – Bravo Section links up with Kilo Company Engineer element and receives mission to clear canal road from Route Twins to Route Dodgers.
0920 – Bravo Section clears route and arrives at Route Dodgers
1200 – Bravo Section receives instructions to travel back along canal road to Voodoo CP. Order of march is A66, A208, A24.
1205 – A208 is struck by IED and is immediately engulfed in flames. All vehicle personnel except for SGT Hanson are able to exit vehicle. SGT Hanson is [(b)(6)]
1206 – Bravo Section attempts to free SGT Hanson as vehicle is [(b)(6)] [(b)(3), (b)(6)] [(b)(6)] calls for QRF and medical evacuation.
1208 – Ammunition in vehicle A208 is exploding and attempts to free SGT Hanson are stopped. Section moves to cover in irrigation ditch.
1217 – Bravo Section does accountability check and inspections for wounds. SGT Hanson is still inside vehicle A208. Kilo Company is in over watch positions, and secures incident site. Bravo section meets up with QRF and Medical Evacuation team from Kilo Company CP. [(b)(3), (b)(6)] [(b)(3), (b)(6)] and [(b)(3), (b)(6)] are evacuated for burns and smoke inhalation. Alpha Section stays in over watch position.

3



UNCLASSIFIED

1247 --Evacuated soldiers arrive back at Camp Taqqadum
1330 Bravo Section (-) returns to Camp Taqqadum
1800 Personnel recover team arrives on incident site
1900 SGT Hanson recovered
2030 Recovery Team Departs for Camp Taqqadum with SGT Hanson and Vehicle
2100 Recovery Team arrives at Camp Taqqadum

31 August

1400 Alpha Section leaves over watch position and returns to Camp Taqqadum
1430 Alpha Section returns to Camp Taqqadum

    d. Medical aid given to SGT Joshua Hanson – SGT Hanson was [(b)(6)] [(b)(6)] No medical aid was able to be administered.

    e. Cause of Death: Sergeant Hanson was riding in the rear passenger seat behind the vehicle commander when the IED exploded under the right rear tire. The explosion rendered SGT Hanson [(b)(6)] [(b)(6)] vehicle. Despite multiple heroic attempts by the members of his squad to free SGT Hanson from the vehicle, the efforts were unsuccessful. The cause of death for Sergeant Joshua R. Hanson as determined by [(b)(3), (b)(6)] is catastrophic burns.

    f. Protective Equipment: Sergeant Hanson was wearing Individual Body Armor, with neck protector, side protectors, IDAPS, enhanced small arms protective plates in the front and rear, groin protector, ballistic helmet, and protective eyewear. He was also wearing his seat belt.

    g. There is no evidence that any violations of Army Regulation or Unit Standard Operating Procedures were committed. There was a thorough mission brief prior to execution and pre combat inspections were made. The element had an experienced mission commander and non commissioned officer in charge of the mission. The leadership had been in Iraq approximately 5 months and had completed over 100 combat missions prior to this operation.

The vehicle was equipped with a fire extinguisher that was inspected as part of the Preventative Maintenance Checks and Services (PMCS) inspections prior to the mission. The fire extinguisher was unable to be utilized as the vehicle fire prevented it from being removed from the vehicle and utilized.

    h. After the explosion of the IED, the element responded in a quick and efficient manner to secure the location, attempt to extract SGT Hanson, and initiate medivac procedures. The quick reaction force and the medical evacuation crew responded in a timely manner.

4

UNCLASSIFIED

    i. Support from the supported unit (K, 3/2 Marines) was timely and efficient in organizing aid and recovery elements. Explosive Ordinance Disposal and the Quick Reaction Force responded to the scene in a timely manner to render aid.

    j. The aforementioned actions demonstrate that there are effective policies and procedures in place. These procedures were well executed and every possible action was taken to save the life of Sergeant Hanson.

4. Recommendations: I recommend the following actions be taken:

    a. No negative action be taken against any service member involved in the incident.

    b. I recommend no further investigation be conducted on this matter.

5. The point of contact for this memorandum is the undersigned at email of (b)(3), (b)(6) @iraq.centcom.mil

FOR THE COMMANDER

(b)(3), (b)(6)

EXHIBITS:
Exhibit A (2-136 CAB Patrol Request)
Exhibit B (Letter drafted but not sent by (b)(3), (b)(6) to family of SGT Hanson)
Exhibit C (EOD Incident Report)
Exhibit D (Casualty Report)
Exhibit E (Daily Staff Journal from 2-136 CAB located at Camp Taqqadum )
Exhibit F (Tasking from Marine Logistics Group to 2-136 to support 3/2 MAR)
Exhibit G (G2 Slide on Anti Tank Mine attacks)
Exhibit H (Operation Rubicon Operational Overview)
Exhibit I (CCIR Report on attack killing SGT Hanson)
Exhibit J (Statement from (b)(3), (b)(6)
Exhibit K (Statement from
Exhibit L (Statement from
Exhibit M (Statement from
Exhibit N (Statement from
Exhibit O (Statement from
Exhibit P (Statement from
Exhibit Q (Statement from
Exhibit R (Statement from
Exhibit S (Statement from
Exhibit T (Statement from



5

Exhibit U (Statement from [(b)(3), (b)(6)])
Exhibit V (Statement from [(b)(3), (b)(6)])
Exhibit W (Appointment Order of [(b)(3), (b)(6)] as 15-6 Investigating Officer)
Exhibit X (Investigating Officers Notes on Interview with [(b)(3), (b)(6)])
Exhibit Y (Investigating Officers Notes on Interview with [(b)(3), (b)(6)])
Exhibit Z (Investigating Officers Notes on Interview with [(b)(3), (b)(6)])

Exhibit AA (Casualty Report for [(b)(3), (b)(6)])
Exhibit BB (Casualty Report for [(b)(3), (b)(6)])
Exhibit CC (Casualty Report for [(b)(3), (b)(6)])
Exhibit DD (Casualty Report for [(b)(3), (b)(6)])
Exhibit EE (Casualty Report for [(b)(3), (b)(6)])
Exhibit FF (Casualty Report for [(b)(3), (b)(6)])