# **Exhibit 169**

UNCLASSIFIED

SPC Legrand, Damon G.



UNCLASSIFIED

**MEMORANDUM FOR RECORD**                                    23 September 2010

The following copy of AR 15-6 investigation into the death of SPC Legrand, Damon G. is the best copy of the file on hand. The documents are difficult to read and are barely legible.

```
┌─────────────────────────────────┐
│                                 │
│                                 │
│         (b)(3), (b)(6)          │
│                                 │
│                                 │
└─────────────────────────────────┘
```
Administrative Law Division

Approved for Release

UNCLASSIFIED



DEPARTMENT OF THE ARMY
293D MILITARY POLICE COMPANY
FOB CALDWELL, IRAQ
APO AE 09324

AFZP-HCT-C                                                                 30 JUN 07

MEMORANDUM FOR [ (b)(3) ], Commander, 89th MP BDE.
SUBJECT: 15-6 Investigation Findings and Recommendations

1. On 13 June 2007, I, [ (b)(3), (b)(6) ] was appointed as the Investigating Officer for an informal investigation IAW AR 15-6 into the facts and circumstances surrounding the KIA of SPC Legrand and International Police Liaison Officer, Mr. Butler members of 1st Squad, 1st Platoon, 571st Military Police Company. The incident occurred in the city of Baqubah, in what is known as the "Old Baqubah" neighborhood.

2. The guidelines as published in AR 15-6 were followed.

3. The investigative plan I developed is as follows:

   a. Develop my investigative plan.

   b. Gather all witnesses, SARs, storyboards and sworn statements already completed.

   c. Develop a list of witnesses.

   d. Schedule and conduct witness interviews.

   e. Consider all potential witnesses testimony.

   f. Develop a standard of proof and present findings and recommendations.

4. Timeline of investigation.

   a. 14 JUN 07 - Received appointment orders as investigating officer.

   b. 14 JUN 07

      (1) 1300 contacted legal representative concerning initial briefing

      (2) 1400 Received storyboard and SAR concerning incident.

*Approved for Release*

MEMORANDUM FOR [(b)(3), (b)(6)], Commander, 89th MP BDE.
SUBJECT: 15-6 Investigation Findings and Recommendations

    (3) 1800 Began the 2823 process with all members of the squad

  c. 15 JUN 07

    (1) 0900 Revisited all persons that gave statements, for final review and signature.

    (2) 1400 Departed FOB Warhorse back to FOB Caldwell.

    (3) 1700 Arrived FOB Caldwell.

  d. 19 JUN 07

    (1) 0900 Reviewed all evidence collected and completed DA Form 1574.

    (2) 1200 Compiled all information for the subsequent findings and recommendation memo.

  e. 20 JUN 07

    (1) 1800 organized and prepared all paperwork

    (2) 2100 scanned all documents into electronic versions

  f. 21 JUN 07

    (1) 1700 emailed all paperwork to Battalion

5. Evidence collected.

  a. Eleven (11) DA Form 2823 Sworn Statements with privacy act statements (attached).

  b. Copy of the Death Certificates (attached).

  c. Diagram of incident (attached).

6. Facts.

  a. On 12 JUN 07, at approx 1730, 1st Squad 1st Platoon of the 571st Military Police Company departed forward operating base (FOB) Warhorse enroute to the Tahrir Iraqi Police (IP) station south of Old Baqubah. Their reason for the patrol was to make contact with the

*Approved for Release*

MEMORANDUM FOR [(b)(3), (b)(6)], Commander, 89th MP BDE.
SUBJECT: 15-6 Investigation Findings and Recommendations

station chief and inform him that two of his IP that had been detained under suspicion of having connections to explosive materials had been cleared, ready for pick-up, and conduct the return. Mr. Legrand had joined the patrol to evaluate the need for night vision devices and other equipment requested by other IPLOs which he supported. (Exhibit XII, III, V, VII)

    b. Traveling from FOB Warhorse, the patrol encountered no enemy contact. After the squad reached the Tahrir IP station, they returned with an IP patrol back to FOB Warhorse to conduct the detainee release again with out contact. (Exhibit XIII, VII, III, V)

    c. At approx 2050, the squad along with the IP, began their return patrol back to Tahrir to return the IP to their station. Prior to their movement, a check with the battle space owners on current route (RTE) status, revealed ongoing operations on one of the primary routes, and that an alternate route had recently been cleared. The patrol's new route would be south along RTE Victory, east on RTE Pacific, and back south on RTE Gold. (Exhibit II, VIII, XII, V)

    e. The vehicle configuration as they left the FOB was two American vehicles, then the Iraqi Police truck, followed by the trail two US trucks. U.S. Vehicle 1 truck [(b)(3), (b)(6)] [(b)(3), (b)(6)] driver SPC Legrand, [(b)(3), (b)(6)] and International Police Liaison Officer (IPLO) Mr. Butler. Vehicle 2, [(b)(3), (b)(6)] [(b)(3), (b)(6)] [(b)(3), (b)(6)] (Exhibit II, III, V, XII, VII)

    f. As the patrol turned onto RTE Gold off of RTE Pacific, and proceeded south in a neighborhood known as Old Baqubah, the front truck was struck by a buried improvised explosive device believed to have been a tank mine combined with an accelerant. Almost instantly, the [(b)(1)1.4a] (Exhibit II, III, V, VII, VIII, XII)

    g. Of the occupants, the [(b)(3), (b)(6)] well as [(b)(6)] the [(b)(3), (b)(6)] [(b)(6)] The driver SPC Legrand, was killed instantly in the blast, as he was found with seat belt still connected. The IPLO, Mr. Butler, was able to remove himself from the vehicle before he collapsed and died of wounds outside immediately next to the vehicle. (Exhibit VII, XIII, XI)

    h. After the vehicle initially [(b)(1)1.4a] [(b)(3), (b)(6)] he [(b)(3), (b)(5)] ran forward from their trucks to assist their comrades. However, upon movement forward, gunmen in the buildings to the east and south west of their location, approximately 40 meters away initiated fire with small arms and a rocket propelled grenade which struck the already damaged truck. (Exhibit II, VII, V, IX, XI, XIII)

Approved for Release

UNCLASSIFIED

MEMORANDUM FOR [(b)(3), (b)(6)] Commander, 89th MP BDE.
SUBJECT: 15-6 Investigation Findings and Recommendations

    i. Realizing the complexity of the attack, [(b)(3), (b)(6)] returned to his vehicle called for a quick reaction force to provide immediate assistance at their location to help fend off the enemy. (Exhibit II)

    j. While waiting for help, and still trying to get to the wounded men, the members of the squad acquired identification of the enemy and returned fire from their M2 50. cal, as well as from their M4 rifles and M9 pistols. (Exhibit XIII, II, III, V, VII)

    k. Due to the heat of the vehicle, the AT4 rocket located in the back of the truck exploded, as well as the extra ammo carried in the vehicle, again compounding the situation causing more standoff between the men. (Exhibit XIII, III, VII, V )

    l. Upon finally reaching the damaged truck, [(b)(3), (b)(6)] was taken into an adjacent building where a casualty collection point was established. A medical team along with the strykers had arrived on scene as well, and had recovered [(b)(3), (b)(6)] into one of their vehicles so he could be treated. (Exhibit XI, XIII, VII)

    m. The stryker medic, name unknown, was able to link up with [(b)(3), (b)(6)] and begin medical aid, while other members of the squad tried vigilantly to extinguish the fire in the truck with their extinguishers. (Exhibit XI, XIII, II, V)

    n. The stryker element grabbed [(b)(3), (b)(6)] and led her to [(b)(3), (b)(6)] who had been moved inside of a stryker, so she could also treat him for his burns and other serious injuries. (Exhibit XI, XIII)

    o. After [(b)(3), (b)(6)] was initially treated and loaded into the strykers, the response force returned to FOB Gabe where they medevac'd the wounded men to Balad. (Exhibit XI, VII)

    p. The remainder of the 1st squad was secured by another Crusher element from 2nd platoon who had come to assist. An Iraqi firefighting unit also was dispatched by the landowners who arrived and began to extinguish the burning vehicle. (Exhibit XIII, II, VII)

    q. The body of Mr. Butler was loaded into a bodybag; however, SPC Legrand [(b)(6)] [(b)(6)]. (Exhibit XIII, II, VII)

    r. Recovery assets then removed the destroyed truck to FOB Gabe, while the MPs returned to FOB Warhorse to be seen for their injuries and checked by the aid station. (Exhibit XIII, II, V)

Findings.

Approved for Release

MEMORANDUM FOR [(b)(3), (b)(6)] Commander, 89th MP BDE.
SUBJECT: 15-6 Investigation Findings and Recommendations

    a. I find that SPC Legrand and Mr. Butler were unfortunately killed in action due to injuries sustained from a buried IED. The IED blast was severe enough to immediately [(b)(1)1.4a] [(b)(1)1.4a] of all ammo and explosive devices. The [(b)(1)1.4a] [(b)(1)1.4a] leaving nothing more than the doghouse. The [(b)(1)1.4a] [(b)(1)1.4a]. The IED is believed to have been a tank mine with an accelerant added to the mix.

    b. The actions post detonation of the squad ultimately saved the lives of other members of the damaged truck within during the midst of a complex attack. AIF had strategically positioned themselves to allow for plunging fire after the unit would begin recovery efforts which they were able to repel until more assistance could arrive on scene. AIF had flank side positions established in order to exploit security vulnerabilities amidst the chaos.

    c. The location in Old Baqubah has been the site for several other complex attacks over the last month as well as IED activity.

8. Recommendations.

    a. I recommend members of the squad who helped to secure the site, be recognized for their actions.

    b. I recommend that this situation be shared with other coalition units as an example of the complexity of attacks which are being conducted against us. In order to better prepare for the follow-on SAF, everyone should be aware of the current AIF TTP. As time passes, AIF have learned the weak spots in the truck, coupled with the devastating effects of the undercarriage buried IEDs.

9. Point of contact for this memo is the undersigned at [(b)(3), (b)(6)] @us.army.mil.

Investigating Officer

REPORT OF PROCEEDINGS BY INVESTIGATING OFFICER/BOARD OF OFFICERS
UNCLASSIFIED
For use of this form, see AR 15-6; the proponent agency is OTJAG.

*IF MORE SPACE IS REQUIRED IN FILLING OUT ANY PORTION OF THIS FORM, ATTACH ADDITIONAL SHEETS*

## SECTION I - APPOINTMENT

Appointed by **(b)(3), (b)(6)**, Commander 89th MP BDE
(Appointing authority)

on **15JUN07** (Attach Inclosure 1, Letter of appointment or summary of oral appointment data.) (See para 3-15, AR 15-6.)
(Date)

## SECTION II - SESSIONS

The (investigation) (board) commenced at **FOB Warhorse, Iraq APO AE 09336** at **1800**
(Place)

on **14JUN07** (If a formal board met for more than one session, check here [ ]. Indicate in an inclosure the time each session began and ended, the place, persons present and absent, and explanation of absences, if any.) The following persons (members, respondents, counsel) were present. (After each name, indicate capacity, e.g., President, Recorder, Member, Legal Advisor.)

**(b)(3), (b)(6)**  Investigating Officer

**(b)(3), (b)(6)**

The following persons (members, respondents, counsel) were absent. (Include brief explanation of each absence.) (See notes 5-2 and 5-2a, AR 15-6.)

The (investigating officer) (board) finished gathering/hearing evidence at **1000** on **15JUN07**
(Time)                     (Date)

and completed findings and recommendations at **1700** on **21JUN07**
(Time)                     (Date)

## SECTION III - CHECKLIST FOR PROCEEDINGS

[illegible checklist items]

*[Watermark: Approved for Release]*

UNCLASSIFIED

| | | YES | NO | N/A |
|---|---|---|---|---|
| | Exhibits (para 3-16, AR 15-6) | | | |
| a | Are all items offered *(whether or not received)* or considered as evidence individually numbered or lettered as exhibits and attached to this report? | X | | |
| b | Is an index of all exhibits offered to or considered by investigating officer or board attached below the first exhibit? | X | | |
| c | Has the testimony/statement of each witness been recorded verbatim or been reduced to written form and attached as an exhibit? | X | | |
| d | Are copies, descriptions, or depictions *(if substituted for real or documentary evidence)* properly authenticated and is the location of the original evidence indicated? | | | X |
| e | Are descriptions or diagrams included of locations visited by the investigating officer or board (para 3-6b, AR 15-6)? | | X | |
| f | Is each written stipulation attached as an exhibit and is each oral stipulation either reduced to writing and made an exhibit or recorded in a verbatim record? | X | | |
| g | If official notice of any matter was taken over the objection of a respondent or counsel, is a statement of the matter of which official notice was taken attached as an exhibit (para 3-16d, AR 15-6)? | | | X |
| 5 | Was a quorum present when the board voted on findings and recommendations (paras 3-1 and 5-2b, AR 15-6)? | | | X |
| 6 | **COMPLETE ONLY FOR FORMAL BOARD PROCEEDINGS** *(Chapter 5, AR 15-6)* | | | |
| 4 | At the initial session, did the recorder read, or determine that all participants had read, the letter of appointment (para 5-3b, AR 15-6)? | | | |
| 5 | Was a quorum present at every session of the board (para 5-2b, AR 15-6)? | | | |
| 6 | Was each absence of any member properly excused (para 5-2a, AR 15-6)? | | | |
| 7 | Were members, witnesses, reporter, and interpreter sworn, if required (para 3-1, AR 15-6)? | | | |
| 8 | If any members who voted on findings or recommendations were not present when the board received some evidence, does the inclosure describe how they familiarized themselves with that evidence (para 5-2d, AR 15-6)? | | | |
| | **COMPLETE ONLY IF RESPONDENT WAS DESIGNATED** *(Section II, Chapter 5, AR 15-6)* | | | |
| 9 | Notice to respondents (para 5-5, AR 15-6) | | | |
| a | Is the method and date of delivery to the respondent indicated on each letter of notification? | | | |
| b | Was the date of delivery at least five working days prior to the first session of the board? | | | |
| c | Does each letter of notification indicate — | | | |
| (1) | the date, hour, and place of the first session of the board concerning that respondent? | | | |
| (2) | the matter to be investigated, including specific allegations against the respondent, if any? | | | |
| (3) | the respondent's rights with regard to counsel? | | | |
| (4) | the name and address of each witness expected to be called by the recorder? | | | |
| (5) | the respondent's rights to be present, present evidence, and call witnesses? | | | |
| d | Was the respondent provided a copy of all unclassified documents in the case file? | | | |
| e | If there were relevant classified materials, were the respondent and his counsel given access and an opportunity to examine them? | | | |
| 10 | If a respondent was designated after the proceedings began (or otherwise was absent during part of the proceedings) | | | |
| a | Was he properly notified (para 5-5, AR 15-6)? | | | |
| b | Was a record of proceedings and evidence received in his absence made available for examination by him and his counsel (para 5-6, AR 15-6)? | | | |
| 11 | Counsel (para 5-6, AR 15-6) | | | |
| a | Was each respondent represented by counsel? | | | |
| | Name and business address of counsel: | | | |
| | (If counsel is a lawyer, check here ☐) | | | |
| b | Was respondent's counsel present at all open sessions of the board relating to that respondent? | | | |
| c | If military counsel was requested but not made available, is a copy (or, if oral, a summary) of the request and the action taken on it included in the report (para 5-8b, AR 15-6)? | | | |
| 12 | If the respondent challenged the legal adviser or any voting member for lack of impartiality (para 5-7, AR 15-6) | | | |
| a | Was the challenge properly denied and by the appropriate officer? | | | |
| b | Did each member successfully challenged cease to participate in the proceedings? | | | |
| 13 | Was the respondent given an opportunity to (para 5-8, AR 15-6) | | | |
| a | Be present with his counsel at all open sessions of the board which deal with any matter which concerns that respondent? | | | |
| b | Examine and object to the introduction of real and documentary evidence, including written statements? | | | |
| c | Object to the testimony of witnesses and cross-examine witnesses other than his own? | | | |
| d | Call witnesses and otherwise introduce evidence? | | | |
| e | Testify as a witness? | | | |
| f | Make or have his counsel make a final statement or argument (para 5-9, AR 15-6)? | | | |
| 14 | If requested, did the recorder assist the respondent in obtaining evidence in possession of the Government and in arranging for the presence of witnesses (para 5-8c, AR 15-6)? | | | |
| 15 | Are all of the respondent's requests and objections which were denied indicated in the report of proceedings or in an inclosure or exhibit to it (para 5-11, AR 15-6)? | | | |

NOTES: 1. Explain all "NO" answers on an attached sheet.
2. Use of "N/A" column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or hearing.

(For use with DA Form 1574, Mar 83)

Approved for Release

SECTION IV - FINDINGS (para AR 15-6)

UNCLASSIFIED

I, (investigating officer) Board, having carefully considered the evidence, finds:

On 12JUN07, at approx 1330, 1st Squad 1st Platoon of the 571st Military Police Company departed forward operating base (FOB) Warhorse enroute to the Tahrir Iraqi Police (IP) station south of Old Baqubah. Their reason for the patrol was to make contact with the station chief and inform him that two of his IP that had been detained under suspicion of connections to explosive materials had been cleared, ready for pick-up, and conduct the return. Travelling from FOB Warhorse, the patrol encountered no enemy contact. Once the squad reached the Tahrir IP station, they returned with an IP patrol back to FOB Warhorse to conduct the detainee release again with no contact.

At approx 2030, the squad along with the IP began their return patrol back to Tahrir to return the IP to their station. Prior to their movement, a check with the battle space owners on current route (RTE) status, revealed ongoing operations on one of the primary routes, and that an alternate route had recently been cleared. The patrol's new route would be south along RTE Victory, east on RTE Pacific, and back south on RTE Gold. The vehicle configuration as they left the FOB was two American vehicles, then the Iraqi Police truck, followed by the trail two US trucks.

In Vehicle 1 truck, (b)(3), (b)(6) driver SPC Legrand, (b)(3), (b)(6) had International Police Liaison Officer (IPLO) Mr. Butler. Vehicle 2, in vehicle 4 (b)(3), (b)(6). As the patrol turned onto RTE Gold off of RTE Pacific, and proceeded south in a neighborhood known as Old Baqubah, the front truck was struck by a buried improvised explosive device believed to have been a tank mine combined with an additional. Almost instantly, the vehicle was engulfed in flames. Of the occupants, the gunner (b)(3), (b)(6) (b)(6). The driver SPC Legrand, was killed instantly in the blast, as he was found with seat belt still connected. The IPLO Mr. Butler, was able to remove himself from the vehicle before he collapsed and died of wounds outside immediately next to the vehicle. After the vehicle initially caught fire, (b)(3), (b)(6) ran forward from their trucks to assist their comrades. However, upon movement forward, gunmen in the buildings to the east and south west of their location, approximately 40 meters away initiated fire with small arms and a rocket propelled grenade which struck the already damaged truck. Realizing the complexity of the attack, (b)(3), (b)(6) returned to his vehicle called for a quick reaction force to provide immediate assistance at their location to help fend off the enemy. While waiting for help, and still trying to get to the wounded men, the members of the squad verified identification of the enemy and returned fire from their M2 .50 cal, as well as from their M4 rifles and M9 pistols. Due to the heat of the vehicle, the AT4 rocket located in the back of the truck exploded, as well as the extra ammo carried in the vehicle, again compounding the situation causing more standoff between the men.

Upon finally reaching the damaged truck, (b)(3), (b)(6) was taken into an adjacent building where a casualty collection point was established. A medical team along with the strykers had arrived on scene as well, and had recovered (b)(3), (b)(6) into one of their vehicles so he could be treated. The stryker medic, name unknown, was able to link up and (b)(3), (b)(6) and begin medical aid, while other members of the squad tried vigilantly to extinguish the fire in the truck with their extinguishers. The stryker element grabbed (b)(3), (b)(6) led her to (b)(3), (b)(6) who had been moved inside of a stryker, so she could also treat him for her wounds and other serious injuries. After (b)(3), (b)(5) was initially assessed and loaded into the stryker, the response force returned to FOB Gabe where they medevac'd the wounded and Mr. Butler.

The remainder of the 1st squad was secured by another Crusher element from 2nd platoon who had come to assist. An Iraqi firefighting unit also was dispatched by the mainstream, who arrived and began to extinguish the burning vehicle. The body of Mr. Butler was loaded into a bodybag; however, SPC Legrand (b)(6) (b)(6). Recovery assets then removed the destroyed truck to FOB Gabe, while the MPs returned to FOB Warhorse to be seen for their wounds and debriefed by the unit staff.

SECTION V - RECOMMENDATIONS (para 3-11, AR 15-6)

In view of the above findings, the (investigating officer) Board recommends:

That the members of 1st Sqd be awarded for actions which ultimately helped to save the lives of the other injured squad members. Despite the near ambush and enormous threat, multiple individuals resisted the enemy attack until further assistance could arrive.

UNCLASSIFIED

## SECTION VI - AUTHENTICATION (para 3-11, AR 15-6)

THIS REPORT OF PROCEEDINGS IS COMPLETE AND ACCURATE. (If any voting member or the recorder fails to sign here or in Section VII below, indicate the reason in the space where his signature should appear.)

(b)(3), (b)(6)

(Recorder)

(Member)  (Member)

(Member)  (Member)

## SECTION VII - MINORITY REPORT (para 3-15, AR 15-6)

For the reasons indicated in inclosure _____, the undersigned do(es) not concur in the findings and/or conclusions of the board. (In the inclosure, identify by number each finding and/or recommendation in which the dissenting member(s) do(es) not concur. State the reasons for disagreement. Additional/substitute findings and/or recommendations may be made in the inclosure.)

(Member)  (Member)

## SECTION VIII - ACTION BY APPOINTING AUTHORITY (para 3-0, AR 15-6)

The findings and recommendations of the board (are approved) (are approved with following exceptions/substitutions) (If the appointing authority returns the proceedings to the investigating officer or board for further proceedings or corrective action, attach that correspondence (or a summary thereof) as a numbered inclosure.)

(b)(3), (b)(6)

Commanding

[Watermark: Approved for Release]