# **Exhibit 172**

FA-17-0222 Matthew Pionk & Zachary Mcbride

2 redacted for the following reason:
- - - - - - - - - - - - - - - - -
), (b)(3), (b)(6)

## TABLE OF CONTENTS

I.      Appointment Orders for      (b)(3), (b)(6)
II.     Report of Proceedings (DA Form 1574)
III.    Findings of Investigation and Recommendations
IV.     Investigation Timeline
V.      Exhibits
        A. Recon Platoon Roster in Excel format
        B. HHC IIBIED Debrief in PowerPoint
        C. 4/2 SBCT Brigade SIGACT
        D. January 9, 2008 Brigade Duty Log
        E. WIT 12 Report
        F. WIT 12 Expanded Written Report
        G. WIT 12 Analysis PowerPoint product
        H. 717ᵗʰ EOD Team Post Blast Storyboard
        I. Detention Packet: 02-03225
                1.    (b)(3), (b)(6)    Law Enforcement Personnel Sworn
                      Statement
                2.    (b)(3), (b)(6)    detention sworn statement
                3.    (b)(3), (b)(6)    detention sworn statement
                4.    (b)(3), (b)(6)    sworn statement
                5.    (b)(3), (b)(6)    sworn statement
                6. Summary Interrogation Report
                7. Document Exploitation Report for        (b)(6)
        J. Coalition Apprehension Form
        K.    (b)(3), (b)(6)    sworn statement
        L.    (b)(3), (b)(6)    sworn statement
        M.    (b)(3), (b)(6)    sworn statement
        N.    (b)(3), (b)(6)    sworn statement
        O. Law Enforcement Personnel Memo concerning Operation Recon and the
           results and findings of the operation.
        P. Financial Liability Investigation of Property Loss for Organizational
           Property Book equipment
        Q. Financial Liability Investigation of Property Loss for Theater Property
           Equipment Property Book equipment

# ENCLOSURE I

# ENCLOSURE II

| REPORT OF PROCI | GS BY INVESTIGATING OFFICER/BOAI | OFFICERS |
|---|---|---|

For use of this form, see AR 15-6; the proponent agency is OTJAb.

*IF MORE SPACE IS REQUIRED IN FILLING OUT ANY PORTION OF THIS FORM, ATTACH ADDITIONAL SHEETS*

### SECTION I - APPOINTMENT

Appointed by    Commander, 4-2d Infantry Stryker Brigade, Forward Operating Base Warhorse, APO AE 09336
*(Appointing authority)*

on    11 January 2008    *(Attach inclosure 1: Letter of appointment or summary of oral appointment data.) (See para 3-15, AR 15-6.)*
*(Date)*

### SECTION II - SESSIONS

The *(investigation) (board)* commenced at   Forward Operating Base Normandy, Iraq              at       2115
*(Place)*                                   *(Time)*

on    11 January 2008    *(If a formal board met for more than one session, check here* ☐ *Indicate in an inclosure the time each session began and ended, the place, persons present and absent, and explanation of absences, if any.) The following persons (members, respondents, counsel) were present. (After each name, indicate capacity, e.g., President, Recorder, Member, Legal Advisor.)*

The following persons *(members, respondents, counsel)* were absent   *(Include brief explanation of each absence.) (See paras 5-2 and 5-8a, AR 15-6.)*

The *(investigating officer) (board)* finished gathering/hearing evidence at      1730       on    16 February 2008
*(Time)*                                   *(Date)*

and completed findings and recommendations at      1400       on    17 February 2008
*(Time)*                                   *(Date)*

### SECTION III - CHECKLIST FOR PROCEEDINGS

| A. COMPLETE IN ALL CASES | YES | NO[1] | NA[2] |
|---|---|---|---|
| 1 | Inclosures *(para 3-15, AR 15-6)* | | | |
| | Are the following inclosed and numbered consecutively with Roman numerals: *(Attached in order listed)* | | | |
| a. The letter of appointment or a summary of appointment data? | ☒ | | |
| n. Copy of notice to respondent, if any?(See item 9, below) | | | ☒ |
| c. Other correspondence with respondent or counsel, if any? | | | ☒ |
| d. All other written communications to or from the appointing authority? | | | ☒ |
| e. Privacy Act Statements (Certificate, if statement provided orally)? | | | ☒ |
| f. Explanation by the investigating officer or board of any unusual delays, difficulties, irregularities, or other problems encountered (e.g., absence of material witnesses)? | | | ☒ |
| g. Information as to sessions of a formal board not included on page 1 of this report? | | | ☒ |
| h. Any other significant papers (other than evidence) relating to administrative aspects of the investigation or board? | ☒ | | |

FOOTNOTES:  1/ Explain all negative answers on an attached sheet.
2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

| | | YES | NO[1] | NA[2] |
|---|---|---|---|---|
| 2 | Exhibits  (para 3-16, AR 15-6) | | | |
| | a.  Are all items offered (whether or not received)  or considered as evidence individually numbered or lettered as exhibits and attached to this report? | ☒ | ☐ | ☐ |
| | b.  Is an index of all exhibits offered to or considered by investigating officer or board attached before the first exhibit? | ☒ | ☐ | ☐ |
| | c.  Has the testimony/statement of each witness been recorded verbatim or been reduced to written form and attached as an exhibit? | ☒ | ☐ | ☐ |
| | d.  Are copies, descriptions, or depictions (if substituted for real or documentary evidence)  properly authenticated and is the location of the original evidence indicated? | ☒ | ☐ | ☐ |
| | e.  Are descriptions or diagrams included of locations visited by the investigating officer or board  (para 3-6b, AR 15-6)? | ☒ | ☐ | ☐ |
| | f.  Is each written stipulation attached as an exhibit and is each oral stipulation either reduced to writing and made an exhibit or recorded in a verbatim record? | ☐ | ☐ | ☒ |
| | g.  If official notice of any matter was taken over the objection of a respondent or counsel, is a statement of the matter of which official notice was taken attached as an exhibit  (para 3-16d, AR 15-6)? | ☐ | ☐ | ☒ |
| 3 | Was a quorum present when the board voted on findings and recommendations  (paras 4-1 and 5-2b, AR 15-6)? | ☐ | ☐ | ☒ |
| **B.** | **COMPLETE ONLY FOR FORMAL BOARD PROCEEDINGS  (Chapter 5, AR 15-6)** | | | |
| 4 | At the initial session, did the recorder read, or determine that all participants had read, the letter of appointment  (para 5-3b, AR 15-6)? | | | |
| 5 | Was a quorum present at every session of the board  (para 5-2a, AR 15-6)? | | | |
| 6 | Was each absence of any member properly excused  (para 5-2a, AR 15-6)? | | | |
| 7 | Were members, witnesses, reporter, and interpreter sworn, if required  (para 3-1, AR 15-6)? | | | |
| 8 | If any members who voted on findings or recommendations were not present when the board received some evidence, does the inclosure describe how they familiarized themselves with that evidence  (para 5-2d, AR 15-6)? | | | |
| **C.** | **COMPLETE ONLY IF RESPONDENT WAS DESIGNATED  (Section II, Chapter 5, AR 15-6)** | | | |
| 9 | Notice to respondents (para 5-5, AR 15-6): | | | |
| | a.  Is the method and date of delivery to the respondent indicated on each letter of notification? | | | |
| | b.  Was the date of delivery at least five working days prior to the first session of the board? | | | |
| | c.  Does each letter of notification indicate — | | | |
| |    (1)  the date, hour, and place of the first session of the board concerning that respondent? | | | |
| |    (2)  the matter to be investigated, including specific allegations against the respondent, if any? | | | |
| |    (3)  the respondent's rights with regard to counsel? | | | |
| |    (4)  the name and address of each witness expected to be called by the recorder? | | | |
| |    (5)  the respondent's rights to be present, present evidence, and call witnesses? | | | |
| | d.  Was the respondent provided a copy of all unclassified documents in the case file? | | | |
| | e.  If there were relevant classified materials, were the respondent and his counsel given access and an opportunity to examine them? | | | |
| 10 | If any respondent was designated after the proceedings began  (or otherwise was absent during part of the proceedings). | | | |
| | a.  Was he properly notified (para 5-5, AR 15-6)? | | | |
| | b.  Was record of proceedings and evidence received in his absence made available for examination by him and his counsel  (para 5-4c, AR 15-6)? | | | |
| 11 | Counsel  (para 5-6, AR 15-6). | | | |
| | a.  Was each respondent represented by counsel? | | | |
| |   Name and business address of counsel: | | | |
| |   (If counsel is a lawyer, check here [  ] ) | | | |
| | b.  Was respondent's counsel present at all open sessions of the board relating to that respondent? | | | |
| | c.  If military counsel was requested but not made available, is a copy (or, if oral, a summary)  of the request and the action taken on it included in the report (para 5-6b, AR 15-6)? | ☐ | ☐ | ☐ |
| 12 | If the respondent challenged the legal advisor or any voting member for lack of impartiality (para 5-7, AR 15-6): | | | |
| | a.  Was the challenge properly denied and by the appropriate officer? | | | |
| | b.  Did each member successfully challenged cease to participate in the proceedings? | | | |
| 13 | Was the respondent given an opportunity to  (para 5-8a, AR 15-6): | | | |
| | a.  Be present with his counsel at all open sessions of the board which deal with any matter which concerns that respondent? | | | |
| | b.  Examine and object to the introduction of real and documentary evidence, including written statements? | | | |
| | c.  Object to the testimony of witnesses and cross-examine witnesses other than his own? | | | |
| | d.  Call witnesses and otherwise introduce evidence? | | | |
| | e.  Testify as a witness? | | | |
| | f.  Make or have his counsel make a final statement or argument  (para 5-9, AR 15-6)? | | | |
| 14 | If requested, did the recorder assist the respondent in obtaining evidence in possession of the Government and in arranging for the presence of witnesses (para 5-8b, AR 15-6)? | ☐ | ☐ | ☐ |
| 15 | Are all of the respondent's requests and objections which were denied indicated in the report of proceedings or in an inclosure or exhibit to it  (para 5-11, AR 15-6)? | ☐ | ☐ | ☐ |

FOOTNOTES:  1/ Explain all negative answers on an attached sheet
        2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

SECTION IV - FINDINGS *(para 3-10, AR 15-6)*

The *(investigating officer) (board)* , having carefully considered the evidence, finds:

See attached memorandum.

SECTION V - RECOMMENDATIONS *(para 3-11, AR 15-6)*

In view of the above findings, the *(investigating officer) (board)* recommends:

See attached memorandum.

Page 3 of 4 pages, DA Form 1574, Mar 1983

APD PE v1.20

**SECTION VI - AUTHENTICATION**  *(para 3-17, AR 15-6)*

THIS REPORT OF PROCEEDINGS IS COMPLETE AND ACCURATE. *(If any voting member or the recorder fails to sign here or in Section VII below, indicate the reason in the space where his signature should appear.)*

(b)(3), (b)(6)

Investigating Officer

_____          _____
*(Recorder)*                          *(Investigating Officer) (President)*

_____          _____
*(Member)*                            *(Member)*

_____          _____
*(Member)*                            *(Member)*

**SECTION VII - MINORITY REPORT**  *(para 3-13, AR 15-6)*

To the extent indicated in inclosure _____ , the undersigned do(es) not concur in the findings and recommendations of the board.

*(In the inclosure, identify by number each finding and/or recommendation in which the dissenting member(s) do(es) not concur. State the reasons for disagreement. Additional/substitute findings and/or recommendations may be included in the inclosure.)*

_____          _____
*(Member)*                            *(Member)*

**SECTION VIII - ACTION BY APPOINTING AUTHORITY**  *(para 2-3, AR 15-6)*

The findings and recommendations of the *(investigating officer) (board)* are *(approved) (disapproved) (approved with following exceptions/ substitutions)*. *(If the appointing authority returns the proceedings to the investigating officer or board for further proceedings or corrective action, attach that correspondence (or a summary, if oral) as a numbered inclosure.)*

(b)(3), (b)(6)

APD PE v1.xx

# ENCLOSURE III



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 3D SQUADRON
2D STRYKER CAVALRY REGIMENT
FORWARD OPERATING BASE NORMANDY
APO AE 09324



Reply to
Attention of

AFZH-BAD                                                                     19 February 2008

MEMORANDUM FOR Commander, 4th Brigade, 2d Infantry Regiment, Forward Operating
Base Warhorse, Iraq, APO AE 09336

SUBJECT: Army Regulation 15-6 Investigation Report of Findings and Recommendations for
the House-Borne Improvised Explosive Device that Resulted in the Deaths of SFC Matthew
Pionk, SSG Sean M. Gaul, SGT Jonathan K. Dozier, SGT Christopher A. Sanders, SGT Zachary
W. McBride, SPC Todd E. Davis, and Interpreter Muhammed Amir Abd Al Latif

1.     At approximately 091235JAN08, SFC Matthew Pionk, SSG Sean M. Gaul, SGT Jonathan
K. Dozier, SGT Christopher A. Sanders, SGT Zachary W. McBride, SPC Todd E. Davis, and
Interpreter Muhammed Amir Abd Al Latif, an interpreter employed with the Titan Corporation,
died of wounds sustained during hostile action. The Soldiers and interpreter were members of a
recon platoon clearing a house to secure a neighborhood in the town of Sinsil, 38SMC 89560
63790. A House-Bourne Improvised Explosive Device (HBIED) detonated upon entry of an
interior room, killing the six U.S. Soldiers and the interpreter instantly (See exhibit B). During
the course of my investigation, I found no evidence of negligence or wrongdoing. The six
soldiers and one interpreter acted within their lines of duty, complied with accepted procedures
and guidelines, and used sound tactical methods during the course of their operation.

2.     Sergeant First Class Matthew J. Pionk was serving as the Reconnaissance Platoon Sergeant
for Reconnaissance Platoon, Hammer Company, 3d Squadron, 2d Stryker Cavalry Regiment
(Recon/HHC/3/2/SCR). His platoon was conducting clearance in the town of Sinsil. He was
positioned on the rooftop of the house when the HBIED detonated.

3. Staff Sergeant Sean M. Gaul was serving as the Bravo Team Leader for
Recon/HHC/3/2/SCR. His team was clearing the house on the first floor when the HBIED
detonated.

4.     Sergeant Jonathan K. Dozier was serving as the Alpha Team Leader for the Sniper Section
in Recon/HHC/3/2/SCR. He was on the first floor of the house with SSG Gaul, SGT Sanders,
SGT McBride, SPC Davis and the interpreter when the HBIED detonated.

5.     Sergeant Christopher A. Sanders was serving as a Scout in Bravo Team
Recon/HHC/3/2/SCR. He was on the first floor when the HBIED detonated.

6.     Sergeant Zachary W. McBride was serving as the Radio Telephone Operator in Bravo
Team, Recon/HHC/3/2/SCR. He was on the first floor when the HBIED detonated.

AFZH-BAD

SUBJECT: Army Regulation 15-6 Investigation Report of Findings and Recommendations for the House-Borne Improvised Explosive Device that Resulted in the Deaths of SFC Matthew Pionk, SSG Sean M. Gaul, SGT Jonathan K. Dozier, SGT Christopher A. Sanders, SGT Zachary W. McBride, SPC Todd E. Davis, and Interpreter Muhammed Amir Abd Al Latif

7.    Specialist Todd E. Davis was serving as the M203 Grenadier in Bravo Team, Recon/HHC/3/2/SCR.  He was on the first floor when the HBIED detonated.

8.    Muhammed Amir Abd Al Latif was an employee of the Titan Corporation, serving as an interpreter for Recon/HHC/3/2/SCR.  He was accompanying SSG Gaul's squad in the clearance of the house.  He was on the first floor when the HBIED detonated.

9.    On 09 Jan 08, the Recon Platoon was participating in        (b)(5)        of Operation Wolfpack Harvest,        (b)(5)
        (b)(5)        Their mission that day was to clear Sinsil, a town located in the southern portion of the valley.  Recon platoon was conducting a movement to contact in the neighborhood of Sinsil, south of Route Clara.  The platoon was led by  (b)(3), (b)(6)
 (b)(3), (b)(6)  the Platoon Leader, and SFC Matthew I. Pionk, the Platoon Sergeant.  Both leaders were experienced veterans and had conducted clearing operations in urban terrain for the previous five months.  The platoon's mission, to deliberately clear Sinsil, was a follow-up to operations on or about 30 December 2007 when the town was cleared by elements of Task Force Falcon (see Exhibit B).

10.   Recon Platoon established a blocking position on Route Clara in the town of Sinsil and disembarked from their vehicles at approximately 191200JAN08.  Upon dismounting they began moving south from Route Clara in three sections.  After questioning several local nationals in the town, they were able to identify the Muqtar,        (b)(6)        the town leader and were directed to his house.  Recon Platoon questioned the Muqtar regarding possible insurgent activity within the town (see Exhibit I).

11.   After several minutes of being interrogated and questioned by    (b)(3), (b)(6)    the Muqtar stated that he could show the platoon the location of a suspected Al Qaeda in Iraq (AQI) safe house.  However, the Muqtar became alarmed and would not proceed upon leaving his courtyard and seeing the Recon Platoon en masse.        (b)(3), (b)(6)        did not find this action unusual because many Iraqis often refrain from being openly associated with U.S. forces for fear of reprisals from locals associated with insurgents.        (b)(3), (b)(6)        then questioned the Muqtar in order to pinpoint the location of the suspected insurgent compound. The Muqtar identified the possible insurgent compound from his rooftop with    (b)(3), (b)(6)    and several other soldiers present.        (b)(3), (b)(6)        continued questioning the Muqtar through an interpreter concerning whether or not he knew if anyone was in the house and if the house was rigged with explosives.  The Muqtar repeatedly replied 'no' to these queries (see Exhibit I).

2

AFZH-BAD
SUBJECT: Army Regulation 15-6 Investigation Report of Findings and Recommendations for
the House-Borne Improvised Explosive Device that Resulted in the Deaths of SFC Matthew
Pionk, SSG Sean M. Gaul, SGT Jonathan K. Dozier, SGT Christopher A. Sanders, SGT Zachary
W. McBride, SPC Todd E. Davis, and Interpreter Muhammed Amir Abd Al Latif

12.  When    (b)(6)    was satisfied with the responses from the Muqtar, he moved his
platoon to the suspected house (38SMC 89560 63790). The gate leading into the courtyard was
open and unsecured. The words 'For Sale' were spray-painted in Arabic script on the stone wall
in front of the house. Staff Sergeant Gaul and his team (    (b)(6)    SPC McBride and SPC
Davis) moved into the house to investigate and determine any possible presence of insurgent
activity. Staff Sergeant Dozier and the sniper section (    (b)(6)
    (b)(6)    closely followed SSG Gaul's team into the structure. SFC Pionk
followed these teams in order to further assist and assess the situation.    (b)(6)
    (b)(6)    moved around the courtyard to further investigate the surrounding areas for evidence
of caches around the perimeter of the house and courtyard. He directed    (b)(6)    another team
leader, to move into an adjacent house in order to continue clearance operations within the town
of Sinsil (see Exhibit K).

13.  After approximately three to four minutes from the time SSG Gaul entered the house, an
explosion detonated across the southwestern portion of the structure (see Exhibit L). The entire
entrance of the building and roof collapsed as a result of the blast. The blast was directed toward
the entrance where the remainder of the Recon Platoon was positioned.

14.  Immediately after the dust and debris from the blast had settled,    (b)(6)    found (b)(6)
    (b)(6)    under some cinder blocks and pulled him from the rubble. He promptly instructed (b)(6)
    and other Recon platoon members to search for survivors and fellow platoon
members.    (b)(6)    then personally aided in the search. As a result of the
platoon's immediate efforts, the surviving members of Recon platoon were able to recover four
Soldiers wounded in action (see Exhibit M). The Soldiers requiring immediate first aid were
placed on a medical evacuation helicopter at 091319JAN08, which moved directly toward the
nearest Level III medical facility located at Logistical Support Area Anaconda. The four
Soldiers on this helicopter were:    (b)(6)    the Joint Tactical Air
Controller who was attached to the platoon,    (b)(6)
    (b)(6)

15.  The platoon continued to search and dig for fellow platoon members while the medical
evacuation of the wounded was occurring. A second medical evacuation helicopter was requested
to move the Killed in Action (KIA), Soldiers from the site of the HBIED to the Mortuary Affairs
Collection Point at LSA Anaconda. At 091633JAN09, the medical evacuation helicopter left the
HBIED site with all the KIA onboard (see Exhibit D).

16.  After the KIA had been evacuated, the Explosive Ordinance Disposal (EOD) team cleared
the site for the Weapons Intelligence Team (WIT) 12 and also for the 4th BDE, 2nd ID SBCT Law
Enforcement Personnel (LEP),    (b)(6)

3

AFZH-BAD
SUBJECT: Army Regulation 15-6 Investigation Report of Findings and Recommendations for
the House-Borne Improvised Explosive Device that Resulted in the Deaths of SFC Matthew
Pionk, SSG Sean M. Gaul, SGT Jonathan K. Dozier, SGT Christopher A. Sanders, SGT Zachary
W. McBride, SPC Todd E. Davis, and Interpreter Muhammed Amir Abd Al Latif

17.   During the EOD team's clearance of the site, they found a piece of crush wire outside the
compound and another piece near the blast location. One of the pieces retrieved had yellow
thread around the wire indicating the possibility that the crush wire was hidden underneath a pile
of clothes, blankets or carpets.

18.   The EOD team's post-blast analysis storyboard indicates that the HBIED consisted of
several containers with approximately 100 pounds of Unknown Bulk Explosive with a crush
wire initiator located near the center of the structure indicated by carpet fibers found on crush
wire (see Exhibit H).

19.   The WIT report describes the explosion as being caused by a Victim-Operated Improvised
Explosive Device (VOIED) located within the house. The VOIED used crush wire connected to
several thin sheet metal containers such as propane tanks with approximately 100 pounds of
Home Made Explosives (HME). The total evidence collected at the scene consisted of two
pieces of crush wire, two pieces of metal that may have been packed with HME, and a package
of pressure switches.

20.   The WIT report indicates that the 'For Sale' sign could have served as a warning to locals
to stay away. The report further states that Coalition Forces had visited the house around ten
days prior to this event. Two days after that visit, insurgents began hanging around the house
and warned local citizens and children to stay away from the structure (see Exhibit F).

21.   The WIT report is substantiated by the sworn statement made by the          (b)(6)
       (b)(6)      who stated that the children in the village were told by their parents to not play in
the abandoned house because it was a 'bad house' where insurgents entered and departed all the
time (see Exhibit I).

22.   On February 11th, 2008, the Squadron conducted Operation Recon, which consisted of a
revisitation of the HBIED site.                                 (b)(1)1.4a

(b)(1)1.4a

AFZH-BAD
SUBJECT: Army Regulation 15-6 Investigation Report of Findings and Recommendations for the House-Borne Improvised Explosive Device that Resulted in the Deaths of SFC Matthew Pionk, SSG Sean M. Gaul, SGT Jonathan K. Dozier, SGT Christopher A. Sanders, SGT Zachary W. McBride, SPC Todd E. Davis, and Interpreter Muhammed Amir Abd Al Latif

23. The LEP report (see Exhibit O) corroborates the reports previously made by EOD and WIT. The HBIED that caused the detonation "consisted of HME with propane tanks, connected to crush wire placed under a rug (hidden from sight) and initiated when weight was placed on the wire...The IED was located next to a ground floor load-bearing wall (right wall as you enter the house). When the explosive detonated, the explosive material decomposed and a large volume of gas generated...around the explosive and raised the pressure. The release of this pressure generated a seismic pulse inside of the house and the energy was radiated in a spherical pattern out from the seat of the blast...The resulting blast pattern/pressure blew out to the sides of the structure dropping the upper floor (roof) onto the members of the Reconnaissance Platoon."

24. Negligence neither contributed to nor caused the deaths of SFC Pionk, SSG Gaul, SSG Dozier, SGT Sanders, SGT McBride, SPC Davis and interpreter Muhammed Amir Abd Al Latif. The enemy appears to have used a well-hidden trigger mechanism to initiate a massive explosion. This trigger mechanism and initiator was placed in the center of the room in order to further entrap Coalition Forces who might be searching the house.                     (b)(6)
took the necessary precautions before having a team move into and search the suspected house. He asked Muqtar                (b)(6)                specifically whether or not the house was rigged with bombs. Sergeant First Class Pionk and SSG Gaul were highly-trained Non-Commissioned Officers who would have acted in accordance to the military threat. There is nothing I discovered in the course of my investigation that indicates that they acted negligently, irresponsibly or outside accepted tactics, techniques or procedures.

25. The amount of explosives used in the HBIED produced devasting effects upon the Soldiers and offered very little chance of survival given their proximity to the explosion. The soldiers and interpreter on the first floor of the building most likely experienced a severe shock which killed them instantaneously. Morever, the explosive power of the explosives emplaced within the house would have further diminished any chance of survival for those within the house. All of the KIA soldiers died instantaneously.

26. No procedures developed and adopted for extracting casualties from confined spaces could have made a difference in preventing the deaths of SFC Pionk, SSG Gaul, SSG Dozier, SGT Sanders, SGT McBride, SPC Davis and interpreter Muhammed Amir Abd Al Latif.

(b)(5)

AFZH-BAD

SUBJECT: Army Regulation 15-6 Investigation Report of Findings and Recommendations for the House-Borne Improvised Explosive Device that Resulted in the Deaths of SFC Matthew Pionk, SSG Sean M. Gaul, SGT Jonathan K. Dozier, SGT Christopher A. Sanders, SGT Zachary W. McBride, SPC Todd E. Davis, and Interpreter Muhammed Amir Abd Al Latif

(b)(5)

28. As a result of the HBIED, several Organization and Theater Property Equipment (TPE) Property Book items were lost (see Exhibit P and Q):

| H-R | LIN/SUBLIN | NSN | NOMENCLATURE | QTY. | SN |
|---|---|---|---|---|---|
| | | | **Organization Property** | | |
| Arms Rm | A20044 | 1005-01-452-3527 | Adapter Rail 5.56MM | 1 | None |
| Arms Rm | A34938/ZA05SS | 5855-01-534-5931 | Illuminator, Integra | 1 | D70748 |
| Arms Rm | A34938/ZA05SS | 5855-01-534-5931 | Illuminator, Integra | 1 | D70754 |
| Arms Rm | AA0630 | 5855-01-Z02-0671 | Tac Lights M6X | 2 | None |
| Trng Rm | B28123 | 8470-01-526-7686 | Body Armor OTV | 1 | None |
| Trng Rm | B60315 | 8430-01-514-5084 | Boots Combt 8IV | 1 | None |
| Trng Rm | C10345 | 8415-01-519-8508 | Coat ACU M-S | 2 | None |
| Trng Rm | DA1520 | 8415-01-524-6027 | Cover, Helmet Univer | 1 | None |
| Rec | E63317 | 6605-01-196-6371 | Compass Magnetic Unmtd | 5 | None |
| Trng Rm | G08171 | 8415-01-448-9254 | Gloves Flyers 9 | 1 | None |
| Trng Rm | G39744 | 8440-01-387-8509 | Gaiter Neck Dk Brn | 1 | None |
| Arms Rm | GA4057 | 1240-01-517-1791 | Sight, Holographic - (EO Tech) | 1 | 178849 |
| Trng Rm | J10257 | 8470-01-497-6709 | Insert Small Arms P | 2 | None |
| Trng Rm | J71304 | 8465-01-329-8269 | Goggle SVGD Ballistic | 1 | None |
| Trng Rm | K34733 | 8470-01-092-7527 | Helmet Gnd/Prc'ubst M | 1 | None |
| Arms Rm | M79876 | 5965-01-432-0524 | Mono N VIS AN/PVS-14 | 1 | 15961 |
| Arms Rm | N05482/M79878 | 5855-01-432-0524 | Mono N VIS AN/PVS-14 | 1 | 15910 |
| Arms Rm | N05482/M79878 | 5855-01-432-0524 | Mono N VIS AN/PVS-14 | 1 | 15932 |
| Trng Rm | P12070 | 8415-01-519-5115 | Patrol Cap Sz 7 | 1 | None |
| Trng Rm | P68767 | 8415-01-470-1954 | Parka OW Med/Long | 1 | None |
| Trng Rm | T85914 | 8415-01-518-8429 | Trsrs Army Cmbt Md Lg | 2 | None |
| | | | | | |
| | | | **TPE Property** | | |
| Rec | FA7012 | 5820-01-487-0973 | Receiver-Transmitter, Radio - (PRC-148) | 1 | 68335 |

AFZH-BAD
SUBJECT: Army Regulation 15-6 Investigation Report of Findings and Recommendations for the House-Borne Improvised Explosive Device that Resulted in the Deaths of SFC Matthew Pionk, SSG Sean M. Gaul, SGT Jonathan K. Dozier, SGT Christopher A. Sanders, SGT Zachary W. McBride, SPC Todd E. Davis, and Interpreter Muhammed Amir Abd Al Latif

29. All attempts were made to recover all Army and Soldiers' personal equipment lost due to the HBIED incident. Attempts were made immediately on the site after the HBIED. A majority of the Soldier's weapons, IBA, kit, and clothing were recovered during this initial search for the human remains. The following Summary Court Martial Officers (SCMOs) were appointed for the following Killed in Action Soldiers:

| Injury | Company | Last | First | Rank | SCMO | date assigned | date complete |
|--------|---------|------|-------|------|------|---------------|---------------|
| KIA | HHC | Pionk | Matthew | SFC | | 9-Jan-08 | 15-Jan-08 |
| KIA | HHC | Dozier | Jonathan | SSG | | 9-Jan-08 | 15-Jan-08 |
| KIA | HHC | Gaul | Sean | SSG | | 9-Jan-08 | 15-Jan-08 |
| KIA | HHC | Mcbride | Zachary | SGT | (b)(6) | 9-Jan-08 | 15-Jan-08 |
| KIA | HHC | Sanders | Christopher | SGT | | 9-Jan-08 | 15-Jan-08 |
| KIA | HHC | Davis | Todd | CPL | | 9-Jan-08 | 15-Jan-08 |
| KIA | INTERP | Roy | | | | 9-Jan-08 | 15-Jan-08 |

For all Army equipment lost in the HBIED, (b)(6) , the Company Executive Officer, along with (b)(6) the Company Supply Sergeant, ensured 100% accountability of all sensitive items and Army equipment associated with the recon platoon and the HBIED were identified. (b)(6) initiated two Financial Liability Investigation of Property Loss (FLIPLs) for the items identified that were lost. The organizational property book FLIPL was amended after Operation Recon due to the recovery of three items that were found during revisitation of the HBIED site. The Engineering Company that was on site during Operation Recon worked "constantly…moving rubble from the site. In addition to the backhoe and Bobcat, the use of a jackhammer and concrete saw were available and implemented." All efforts were made by HHC to recover equipment from the site.

7

AFZH-BAD
SUBJECT: Army Regulation 15-6 Investigation Report of Findings and Recommendations for the House-Borne Improvised Explosive Device that Resulted in the Deaths of SFC Matthew Pionk, SSG Sean M. Gaul, SGT Jonathan K. Dozier, SGT Christopher A. Sanders, SGT Zachary W. McBride, SPC Todd E. Davis, and Interpreter Muhammed Amir Abd Al Latif

30.   The Point of Contact for this memorandum is the undersigned. I may be reached at (b)(6) or SIPR at (b)(6)

(b)(6)
Investigating Officer

8



**DEPARTMENT OF THE ARMY**
HEADQUARTERS 3D SQUADRON
2D STRYKER CAVALRY REGIMENT
FORWARD OPERATING BASE NORMANDY
APO AE 09324



REPLY TO
ATTENTION OF:

AFZH-BAD

19 February 2008

MEMORANDUM FOR Commander, 4th Brigade, 2d Infantry Regiment (SBCT), Forward
Operating Base Warhorse, Iraq, APO AE 09336

SUBJECT:  Squadron Commander Comments of Report of Findings for AR 15-6 Investigation
Report for the House-Borne Explosive Device that Resulted in the Deaths of SFC Matthew Pionk,
SSG Sean M. Gaul, SGT Jonathan K. Dozier, SGT Christopher A. Sanders, SGT Zachary W.
McBride, SPC Todd E. Davis and Interpreter Muhammed Amir Abd Al Latif   (b)(6)

1.  I have reviewed the attached 15-6 Investigation and:

    (✓)  I concur with the findings and recommendations.

    (  )  I concur with the findings and recommendations and make the following comments:

    _____

    _____

    _____

    (  )  I do not concur with the findings and recommendations for the following reason(s):

    _____

    _____

    _____

2.  The point of contact for this memorandum is        (b)(6)        Squadron Executive Officer at
    (b)(6)

                                        (b)(6)

                                    Commanding

# ENCLOSURE IV

## INVESTIGATION TIMELINE

| | |
|---|---|
| 11-Jan-08 | Notified by 3rd Squadron, 2nd SCR XO appointing (b)(6) as AR 15-6 Investigation Officer |
| 19-Jan-08 | Received from Squadron (b)(6) , the WIT Report along with the HBIED storyboard |
| 20-Jan-08 | Received from (b)(6) the Detainee packet |
| 21-Jan-08 | Discussed AR 15-6 Investigation with Recon platoon leader, (b)(6) |
| 26-Jan-08 | Requested and received recon platoon roster from HHC, 3rd Squadron, 2nd SCR training room<br>Requested additional information concerning HBIED incident from 717th EOD Commander |
| 30-Jan-08 | Received Brigade SIGACT and Brigade Duty Log from 4/2 SBCT TOC |
| 2-Feb-08 | HHC, 3/2 SCR submits two Financial Liability Investigation of Property Loss to the 15-6 officer to incorporate loss of equipment into the 15-6 investigation |
| 4-Feb-08 | Turned in AR 15-6 Findings to Squadron Legal NCO. (b)(6) |
| 7-Feb-08 | Received feedback from initial AR 15-6 submission and told to complete the report upon the completion of Operation Recon's findings |
| 11-Feb-08 | Operation Recon, HBIED revisitation of the site by Hammer, Engineers, EOD, Law Enforcement Personnel, and Air Force Canine unit |
| 16-Feb-08 | Was given a hard copy report of the Law Enforcement Personnel's findings concerning the HBIED revisitation operation, Operation Recon |
| 17-Feb-08 | Turned in revised AR 15-6 Findings to Squadron Legal NCO, (b)(6) |

# ENCLOSURE V

# EXHIBIT A

EXHIBIT A



# EXHIBIT B

(b)(1)1.4a

# EXHIBIT C



**BOOBYTRAP   Hostile**
**UNKNOWN    EFFECTIVE**
01/09/08 12:

Diyala Province, Sinsli
2/2 SCR          1

INITIAL REPORT

WHO: HHC 3/2 SCR

WHEN: 091235JAN08

WHERE: 38SMC 09560 62790

WHAT: IBIED

HOW: 091235JAN08. During OPN
Faldor Harvest, HHC 3/2 SCR reports
an HBIED strike at 38SMC 09560
62790. 6x CF KIA, 1x LN KTA, and 4 X
US WIA medevac was called and bird
was on the ground and picked up WIA
at 091319JAN08.

UPDATE: 091410JAN08 Current
location of casualties is Balad. 1st
casualty has burns to the face, fracture
left arm, internal bleeding and stable.
2nd casualty bi lateral lower extremity
fracture, shrapnel, stable. 3rd casualty
sprained ankle, superficial shrapnel
stable. 4th casualty burns to the face
stable.

UPDATE: 091520JAN08 EOD cleared
the site and the area is secured. 3/2
SCR reports other Soldiers WIA which
may have possible concussion.

UPDATE: 091625JAN08 Bird's on
ground to drop off WTT and LEP. They
are also going to pick up the KIA and
take them to Normandy. One casualty
is being seen at the Normandy aid
station for shrapnel to his face: RTD

UPDATE: 091645JAN08 The birds left
site and heading to ballad with the
KIA's

UPDATE: 091650JAN08 the birds
arrived to BALAD with the KIA's

UPDATE: 092000JAN08 During the
commander update brief
CDR/HHC/2/2SCR reported the house
had structures with multi drums of hme

BDA:

KIA: 6 x CF LTA 1 x LN (TFRP)

WIA: 3 x CF WIA TOTAL

4 x CF WIA (Medevac'd to Balad)
1st casualty - (Burns to the face,
fracture left arm, internal bleeding and
stable.)
2nd Casualty - (bi lateral lower
extremity fracture, shrapnel, stable.)
3rd casualty - (sprained ankle,
superficial shrapnel stable.)
4th casualty (Burns to the face stable.)

5 x CF WIA (Concussions FOB
Normandy)

Meets MNC-I CCIR #6 and MND-N

EXHIBIT C

# EXHIBIT D

| Organization 4-2 HHC S-3 | | | Date Jan7 | Time in 0900 | Time out |
|---|---|---|---|---|---|

| # | time | Description | Actions taken | Signature |
|---|---|---|---|---|
| 1 | 0923 | I (b)(6) HAVE ASSUMED ALL DUTIES AS RTO | LOGGED | |
| 2 | 0930 | CONDUCTED RADIO CHECKS WITH ALL ELEMENTS | LOGGED | |
| 3 | 0932 | KBS ROZ IS ACTIVE | LOGGED | |
| 4 | 0952 | 3/2 IN A TIC REQUEST FIRE MISSION | LOGGED | |
| 5 | 1000 | CONDUCTED RADIO CHECKS WITH ALL ELEMENTS | LOGGED | |
| 6 | 1054 | IRON 6 wheels down at iron tac | LOGGED | |
| 7 | 1104 | CONDUCTED RADIO CHECKS WITH ALL ELEMENTS | LOGGED | |
| 8 | 1156 | CONDUCTED RADIO CHECKS WITH ALL ELEMENTS/ IRON MAIN | LOGGED | |
| 9 | 1435 | 1-38 REQUEST CON DET MC 620 350 | LOGGED | |
| 10 | 1500 | CONDUCTED RADIO CHECKS WITH ALL ELEMENTS | LOGGED | |
| 11 | 1600 | CONDUCTED RADIO CHECKS WITH ALL ELEMENTS | LOGGED | (b)(6) |
| 12 | 1633 | Nightmare is on the ground for casualty | LOGGED | |
| 13 | 1658 | AT 1640 NIGHTMARE 21 DEPARTED FOR HERO FLIGHT | LOGGED | |
| 14 | 1701 | HERO FLIGHT HAS ARRIVED AT BALAD | LOGGED | |
| 15 | 1704 | CONDUCTED RADIO CHECKS WITH ALL ELEMENTS/ IRON MAIN | LOGGED | |
| 16 | 1950 | 1946 RAIDER STRIKE ARRIVED IN BALAT TO PICK UP RAIDER 6 | LOGGED | |
| 17 | 2000 | RAIDER 6 BIRDS DEPART BALAD | LOGGE | |
| 18 | 2100 | I (b)(6) HAVE ASSUMED ALL RTO DUTIES | LOGGED | |
| 19 | 2138 | RADIO CHECKS CONDUCTED WITH ALL ELEMENTS | LOGGED | |
| 20 | 2235 | RADIO CHECKS CONDUCTED WITH ALL ELEMENTS | LOGGED | |

| | | | | |
|---|---|---|---|---|
| 21 | 2356 | RADIO CHECKS WITH ALL ELEMENTS CONDUCTED | LOGGED | |
| 22 | 0039 | FIRE MISSION G 3/2 MC96489 69328 120 ILLUM | LOGGED | |
| 23 | 0051 | RADIO CHECKS CONDUCTED WITH ALL ELEMENTS | LOGGED | |
| 24 | 0138 | TERRAIN DENIAL 2-23 HE MC91137 55346 | LOGGED | |
| 25 | 0145 | RADIO CHECKS CONDUCTED WITH ALL ELEMENTS | LOGGED | |
| 26 | 0252 | RADIO CHECKS CONDUCTED WITH ALL ELEMENTS | LOGGED | (b)(6) |
| 27 | 0336 | TERRAIN DENIAL 3/2 9378 6556 MAX ORD 2500FT | LOGGED | |
| 28 | 0448 | RADIO CHECKS CONDUCTED WITH ALL ELEMENTS | LOGGED | |
| 29 | 0540 | RADIO CHECKS CONDUCTED WITH ALL ELEMENTS | LOGGED | |
| 30 | 0637 | RADIO CHECKS CONDUCTED WITH ALL ELEMENTS | LOGGED | |
| 31 | 0750 | RADIO CHECKS CONDUCTED WITH ALL ELEMENTS | LOGGED | |
| 32 | | | | |
| 33 | | | | |
| 34 | | | | |
| 35 | | | | |
| 36 | | | | |
| 37 | | | | |
| 38 | | | | |
| 39 | | | | |
| 40 | | | | |

# EXHIBIT E

IED-20080109131538SMC8972362583                                                     Page    . 6

EXHIBIT E

**CLASSIFICATION:** ~~Secret//REL USA, MCFI~~

TRACKING NUMBER: IED-20080109131538SMC8972362583

DATE DISCOVERED: 2008-01-09 13:15:00.0

MGRS: 38SMC8972362583

SAFE AREA MGRS: Not Reported

CALL SIGN: None Selected

REPORTING UNIT: 717TH EOD CO

EVENT TYPE: Explosion

**TEAM DATA**

WIT TEAM: Team 12

WIT DTG ARRIVAL: 2008-01-09 17:00:00.0

EOD TEAM: Team 2-2

EOD NOTIFICATION: 2007-01-09 15:51:00.0

EOD FOB DEPARTURE: 2008-01-09 15:51:00.0

EOD SCENE ARRIVAL: 2008-01-09 16:36:00.0

EOD SCENE DEPARTURE: 2008-01-09 16:51:00.0

EOD MISSION COMPLETE: 2008-01-09 16:51:00.0

**SITE DATA**

SITE MARKED: Yes

MARKING DETAILS: Site marked by enemy forces with 'For Sale' sign which was spray painted on wall outside by the gate.

CIVILIAN ACTIVITY: Normal Activity

REFERENCE POINT: None Selected

AIMING POINT DETAILS: None Selected

FIRING POINT DETAILS: None Selected

LIGHT CONDITIONS: Daytime

WEATHER: Clear

ROUTE PATROL: Unknown

LAST TIME ROUTE CLEARED: None Selected

ANALYSIS: Facts: On 9 January 08 CF were providing a presence patrol in the town of Little Sinsil when they received intel from the Muktar about AQI living in a house at MGRS 8972362583. Around 1315-1330 on 9 January 08 members from the 32 SCR and 1 LN interpreter went to investigate the house when the IED detonated. The outside of the house was marked with a freshly painted For Sale sign which was an indicator to locals to stay away.

CF followed normal TTPs while clearing the house; one squad along with the interpreter entered the house and cleared the first floor while the second squad entered and cleared the second floor. Once the house was cleared they started investigating looking for any evidence or intel on AQI. The individuals were in the house approximately 4-5 minutes when prior to the explosion.

EOD retrieved crush wire at the scene which indicates the explosion may have been victim operated. One piece of crush wire was found outside the compound while another was found near the blast location. One of the pieces retrieved had some sort of yellow thread indicating that the crush wire was hidden under a pile of clothes, blankets, or carpet. The crush wire was connected to some sort of thin sheet metal containers such propane tanks or something similar with approximately 100lbs of HME.

Analysis: This same house was visited around ten days ago by CF. Around two days afterwards, AQI started hanging out at this house. Local citizens were warned by AQI not to look at the activity taking place at that residence. Children who normally play in abandoned houses were told not to go in this one.

A similar incident took place at MGRS 385 MC92696165079 in Hinlms where CF investigated a suspicious house and two weeks later the house was booby trapped with crush wire connected to propane tanks which would activate once the door was opened. This house did not

have a For Sale sign but the locals did warn CF not to go in. EOD cleared this house first before troops went in.
It is recommended that CF look for indicators such as freshly painted For Sale signs, or any signs warning locals to stay away. Enemy forces continuously try to capitalize on our TTPs to include placing items of interest out in the open i.e. such as suspicious containers knowing that we will investigate such items. It is also recommended that EOD clear any house that may be suspected of being booby trapped. The enemy forces have so far been booby trapping abandoned houses that were already visited by CF. It is also recommended CF look very closely before stepping on rugs or carpeted areas for crushed wire. Suspicious items, like explosives, or metal containers that are placed out in the open may be booby trapped themselves or lead to another type of VOIED.

### DEVICE DATA

DEVICE DESCRIPTION: 100lb UBE total divided in seperate containters, crush wire.

MGRS: Not Reported

PLACEMENT: None Selected

LOCATION: Building - Unoccupied

CONTAINER: None Selected

ACTION TAKEN: Post Blast

HOW DEVICE WAS FOUND: Detonation

WHO FOUND DEVICE: Dismounts

EXPLOSIVE EFFECT: Blast

CASUALTIES: Yes

SUICIDE DEVICE: No

FIRST RESPONDER TARGETED: No

POST BLAST: Yes

PARTIAL BUILD: No

**NONE SELECTED TARGET**

AFFILIATION: None Selected

COUNTRY: None Selected

TARGET TYPE: None Selected

DETAILS: None Selected

INTENDED EFFECT: Anti-Personnel

DESCRIPTION: Not Reported

**VICTIM OPERATED INITIATOR**

INITIATION SUB-TYPE: Pressure

INITIATION DETAIL: Not Reported

INITIATOR: None Selected

ARMING: None Selected

DTMF: None Selected

MAKE: None Selected

MODEL: None Selected

RECEIVER REMOTED: None Selected

RECEIVER REMOTED DISTANCE (M): Not Reported

Media

file://E:\IBIED 15-6\IBIED-9JAN08.htm                                          2/4/2008

# EXHIBIT F

SECRET//REL TO MCFI//10X1
THIS IS A DRAFT-NOT FOR DISTRIBUTION

Submitting Agency: WIT 12 / MND-N

Intersection: Route Clara

TRACKING NUMBER: IED-20080109131538SMC89//736//58J

IED Description: VOIED using crushed wire connected to several thin sheet metal containers such as propane tanks or something similar with approximately 100lbs of HME.

Aim Point: NONE OBSERVED.

Firing Point: NONE OBSERVED.

VEHICLE DATA: N / A

Facts: On 9 January 08 CF were providing a presence patrol in the town of Little Sinsil when they received intel from the Muktar about AQI living in a house at MGRS 8972362583. Around 1315-1330 on 9 January 08 members from the 32 SCR and 1 LN interpreter went to investigate the house when the IED detonated. The outside of the house was marked with a freshly painted 'For Sale' sign which was an indicator to locals to stay away.

CF followed normal TTP's while clearing the house; one squad along with the interpreter entered the house and cleared the first floor while the second squad entered and cleared the second floor. Once the house was cleared they started investigating looking for any evidence or intel on AQI. The individuals were in the house approximately 4-5 minutes when prior to the explosion.

EOD retrieved crush wire at the scene which indicates the explosion may have been victim operated. One piece of crush wire was found outside the compound while another was found near the blast location. One of the pieces retrieved had some sort of yellow thread indicating that the crush wire was hidden under a pile of clothes, blankets, or carpet. The crush wire was connected to some sort of thin sheet metal containers such propane tanks or something similar with approximately 100lbs of HME.

Analysis: This same house was visited around ten days ago by CF. Around two days afterwards, AQI started hanging out at this house. Local citizens were warned by AQI not to look at the activity taking place at that residence. Children who normally play in abandoned houses were told not to go in this one.

A similar incident took place at MGRS 385 MC92696165079 in Hinbus where CF investigated a suspicious house and two weeks later the house was booby trapped with crush wire connected to propane tanks which would activate once the door was opened. This house did not have a 'For Sale' sign but the locals did warn CF not to go in. EOD cleared this house first before troops went in.

It is recommended that CF look for indicators such as freshly painted 'For Sale' signs, or any signs warning locals to stay away. Enemy forces continuously try to capitalize on our TTP's to include placing items of interest out in the open i.e. such as

SECRET/REL TO MCFI//10X1
THIS IS A DRAFT-NOT FOR DISTRIBUTION

EXHIBIT F

SECRET/REL TO MCFI//10X1
THIS IS A DRAFT-NOT FOR DISTRIBUTION

suspicious containers knowing that we will investigate such items. It is also recommended that EOD clear any house that may be suspected of being booby trapped. The enemy forces have so far been booby trapping abandoned houses that were already visited by CF. It is also recommended CF look very closely before stepping on rugs or carpeted areas for crushed wire. Suspicious items, like explosives, or metal containers that are placed out in the open may be booby trapped themselves or lead to another type of VOIED.

EVIDENCE: 2 each pieces of crushed wire, 2 each pieces of metal that may have been packed with HME, and 1 each packaging for pressure switches.

SECRET/REL TO MCFI//10X1
THIS IS A DRAFT-NOT FOR DISTRIBUTION

# EXHIBIT G

Pages 50 through 57 redacted for the following reasons:
- - - - - - - - - - - - - - - - - - - - - - - - - - -
(b)(1)1.4a

# EXHIBIT H

EXHIBIT H



OLD IRONSIDES

SECRET // REL TO USA, AUS, CAN AND GBR//20170713

# 184th ORD BN (EOD)
# (717th EOD/ TM 2-2)



WITHOUT EQUAL

1. HHC 3/2 SCR / **(b)(6)**

2. 091235JAN08 , PBA/Booby Trapped House, 38S MC 89560 62790

DATE TIME GROUP    TYPE OF REPORT / ATTACK    MGRS GRID LOCATION

3. **SIGACT#:** 4/2 01:127    **CIDNE#:**    **CCIR#:**

4. **KIA:** 6 x CF, 1 x LN (Interpreter)  **WIA:** 5 x CF

5. **HBIED attack on CF**.

| # | Type | Interval Distance | Distance from IED Site | CREW Type | CREW Status | Additional Armor | PIR Defeat | Other Sign. Equip. |
|---|------|-------------------|------------------------|-----------|-------------|------------------|------------|--------------------|
| 1 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

SECRET // REL TO USA, AUS, CAN AND GBR//20170713



# Narrative/Background



- Team 2-2 FOB Warhorse ISO 3/2 SCR responded to a Post Blast at 38SMC 89560 62790
- On 9 Jan 08, the Recon PLT from 3/2 SCR conducted Search and Attack IVO Sinsil. The PLT followed RTE Clearance and the CO TAC NE along route Clara. When they reached Sinsil, they engaged LNs on the west side of town, but got very little information (their assessment was that the locals feared reprisal for working with CF).
- At approximately 1200, they dismounted and began moving south along the centerline footpath. They identified the Muqtar by talking to local nationals and asked him questions about the town and the location of any AQIZ in the area. The Muqtar, **(b)(6)** was adamant that there were no AQIZ in the area and that the town had no problems. **(b)(6)** the Muqtar's neighbor initially corroborated this report, but after further questioning said he knew of one house that AQIZ was using as a "safe house / training area". He said that he would lead Recon to the house, but once he saw the PLT standing outside, he got nervous and refused to guide them to the house. This behavior is not abnormal in areas where AQIZ has a persistent presence, so it was not seen as suspicious. Recon asked if **(b)(6)** could point out the house from where they were and he said he could from a rooftop. He pointed out the house to an interpreter from the rooftop of his residence and did not accompany the PLT to the AQIZ house. Recon moved to the house that **(b)(6)** pointed out and noticed writing on the wall that said the house was for sale. Recon entered and cleared the house at 38SMC 89560 62790 and were preparing to expand the search when the house exploded.

# Conclusion

- Team Leader estimates that the IED consisted of several containers with approximately 100 lbs of UBE total with a crush wire initiator located near the center of the structure due to carpet fibers found on crush wire.

XX JX X X REL TO USA, AUS, CAN, AND GBR/X01787-9

# EXHIBIT I

Pages 70 through 96 redacted for the following reasons:
- - - - - - - - - - - - - - - - - - - - - - - - - - -
(b)(1)1.4a
Illegible, unreadable.




UNCLASSIFIED//~~FOUO~~

**DOCEX Brigade Support Team**
**FOB Warhorse**
**SVOIP: 773-1004**
**13 January 2008**

## DOCUMENT EXPLOITATION (DOCEX) REPORT

The MND-I Brigade Support Team (BST) reviewed the enclosed materials for items pertaining to PIRs, actionable intelligence requirements, the reason for capture, and any other intelligence value.

| Batch # | Detainee Name | Detainee # |
|---------|---------------|------------|
| MJ3805-01 | (b)(6) | |

Batch Contents: (U//FD)

Circumstances of Capture: ON 8 JAN, THIS MAN DIRECTED COALITION FORCES TO A HOUSE RIGGED WITH EXPLOSIVES, WHILE HIMSELF REMAINING CLEAR. THIS RESULTING EXPLOSION INSS KILLED SIX SOLDIERS.

DOCEX Summary:
The BST DOCEX BST imaged all of the detainee's possessions. A pdf copy of an IED was one item deemed worthy of document exploitation.



UNCLASSIFIED//~~FOUO~~

| Report Prepared By | (b)(6) |
| Date of Report | 13 JAN 08 |
| Batch | M48012-01 |
| Batch Priority Requested | Normal |
| Batch Contents | 1 x photocopy of an ID |
| Date Arrived DOCEX | 12 Jan 08 |
| Harmony Number(s) | MNF4-2007-000076 |
| Capture Source Name | (b)(6) |
| Detainee Number | 2-0 |
| Capture Location | SINSIL |
| Capture Country | IRAQ |
| Capture Coordinates | 38S MC 895 627 |
| Capture Date | 9 JAN 08 |
| Capturing Unit | HHC 3 2 SCR |
| Capture Circumstances | ON 9 JAN, THIS MAN DIRECTED COALITION FORCES TO A HOUSE RIGGED WITH EXPLOSIVES. WHILE HIMSELF REMAINING CLEAR  THE RESULTING EXPLOSIONS KILLED SIX SOLDIERS. |
| Exploitation Instructions | EXPLOIT FOR INFORMATION ON INSURGENT ACTIVITY |
| DOCEX POC POC Email (SIPR) POC Phone | (b)(6) |

---

REPORT CONTENTS

Report contains property of detainee            (b)(6)

---

TRANSLATION

MNF4-2008-000076
"Copy of Iraqi Identification Card for                (b)(6)                Captured with Detainee
2-0223"
Full Translation
Batch M48012-01
Document Date 20080728
Date of Translation  20080112
Pages 1

Translation's Notes
* The online document for this translation is a Adobe profile document consisting of 1 pages.  Translation's notes likew are in a full translation of pages 1 through 1.
* Page breaks in the actual document are indicated in the translation as transcribed by the corresponding page number at the page header

* Translator's comments will be indicated with brackets [ ] in a formula [ ]  translatable text in the source document, whether from poor scanning or poor handwriting, is indicated by [U/I], followed by a number indicating the approximate number of words that are untranslatable, i.e. [U/I-5] for three untranslatable words.  Areas for which no translation can be found are indicated by a [N/I-6], followed by a number indicating the number of unknown words, i.e. [N/I-3] for three unknown words.  A footnote may be included that gives additional information.

----------BEGINNING OF TRANSLATION----------
[Page 1-2 of the PDF/Source Document]

Iraqi Personal Identification Card

[illegible]
ID number: Not Clear
Name:                        (b)(6)
Father's Grandfather's Name          (b)(6)                                              (b)(6)
Mother's Grandfather's Name
Tribe:
Gender: Male
Date issued: 29/7/2006
Authorization Name: Wasan Brunet: Twan
[illegible]
Occupation:
Religion: Muslim
Date of Birth:       (b)(6)
Place of Birth: Maysan with Khaki Diyali
[illegible] by Inducer: None
[illegible]
[illegible]                  (b)(6)
[illegible]
[illegible]
[illegible]
[illegible]
[illegible]
Blood type:

----------END OF SOURCE DOCUMENT----------
----------END OF FULL TRANSLATION----------

ages 100 through 102 redacted for the following reasons:
- - - - - - - - - - - - - - - - - - - - - - - - - -
legible, unreadable.