# **Exhibit 204**

FA-17-0173 Graham Pautsch



**DEPARTMENT OF THE ARMY**
**HEADQUARTERS, 3D HEAVY BRIGADE COMBAT TEAM**
**1ST CAVALRY DIVISION**
**FORWARD OPERATING BASE MAREZ, IRAQ, APO AE 09334**

REPLY TO
ATTENTION OF:

AFVA-3HBCT-CDR

MAY 0 9 2009

MEMORANDUM FOR RECORD

SUBJECT: Action, AR 15-6 Investigation into the Hostile Fire Incident Resulting in the Deaths of Five US Soldiers, Involving 1st Combined Arms Battalion, 67th Armor Regiment on 10 April 2009

1. I have carefully reviewed the subject investigation, to include the Investigative Officer's (IO) memorandum and attached exhibits. I take the following action:

2. Findings.

   a. While the Soldiers' actions were exemplary, they did not stop the dump truck from striking its intended target. After reviewing the evidence, including the video, I find that the dump truck drove through the Iraqi checkpoint, around the five coalition vehicles, and directly to its intended detonation point adjacent to the National Police Headquarters building.

   b. Although all vehicles in the patrol engaged the dump truck at the appropriate times, the patrol's efforts were unsuccessful. The dump truck was likely armored, limiting the effectiveness of the patrol's fire and allowing the dump truck to detonate at the intended location. Use of an armored dump truck SVBIED is a known insurgent technique in this area, and this armor permitted the suicide bomber to reach his intended target despite engagement by Coalition and Iraqi forces.

   c. All findings by the IO inconsistent with my determinations are disapproved. The remainder of the IO's findings are approved.

3. Recommendations.

(b)(5)

AFVA-3HBCT-CDR
SUBJECT: Action, AR 15-6 Investigation into the Hostile Fire Incident Resulting in the Death of Five US Soldiers, Involving 1st Combined Arms Battalion, 67th Armor Regiment on 10 April 2009

(b)(5)

Commanding

2



**DEPARTMENT OF THE ARMY**
HEADQUARTERS AND HEADQUARTERS COMPANY
1ST COMBINED ARMS BATTALION, 67TH ARMOR REGIMENT
3RD HEAVY BRIGADE COMBAT TEAM, 1ST CAVALRY DIVISION
FOB MAREZ, IRAQ APO AE 09334

REPLY TO
ATTENTION OF

AFZC-DIA-HHC                                                    17 April 2009

(b)(3)(b)(6)

MEMORANDUM THRU Commander, 1st Combined Arms Battalion, 67th Armor Regiment,
FOB Marez, Iraq APO AE 09334

FOR Commander, 3rd "Greywolf" Heavy Brigade Combat Team (HBCT), 1st Cavalry Division
(CD) Multi National Division – North, FOB Marez, Iraq APO AE 09334

SUBJECT: AR 15-6 Investigation Findings and Recommendations for the Friday 10 April 2009
suicide vehicle borne improvised explosive device (SVBIED) attack on 2/A/1-67 AR.


1. Purpose. The purpose of this memorandum is to provide the investigating officer's findings
and recommendations for the AR 15-6 investigation into the 10 April 2009 SVBIED attack on
2nd Platoon, Alpha Company, 1st Combined Arms Battalion, 67th Armor Regiment (2/A/1-67
AR) that resulted in 5 American Soldiers killed.

2. Background. 2/A/1-67 AR BN attached to D/1-67 AR and under the tactical control
(TACON) of A/3/8 CAV departed Forward Operating Base (FOB) Marez using    (b)(1)1.4a
Road on 10 April 09 at 1000 hours in order to conduct an area reconnaissance patrol of the Borsa    (b)(1)1.4a
Market, Ras al Koor, and Bab al Toob in western Mosul. While traveling on    (b)(1)1.4a
in vicinity of the Knights Raid Brigade Headquarters (    (b)(3)    ), a SVBIED dump
truck detonated. This SVBIED detonation resulted in the deaths of Staff Sergeant (SSG) Bryon
Hall, SSG Gary Woods Jr, Sergeant (SGT) Edward Forrest, Corporal (CPL) Jason Pautsch, and
Private (PV2) Bryce Gautier. The Commander, 3rd HBCT, 1st CD, appointed the investigating
officer on 10 April 2009. The investigating concluded on 17 April 2009.

3. Determination. The crew members of Navistar International Military Group Max Pro Mine
Resistant Ambush Protected (MRAP) D304, the fifth vehicle in the order of movement, SSG
Hall, SSG Woods, SGT Forrest, CPL Pautsch, and PV2 Gautier did everything in their power to
prevent the SVBIED from striking its intended target and likely saved the lives of dozens of Iraqi
Soldiers and Iraqi National Policemen. Specifically, SSG Hall (vehicle commander), SSG
Woods (vehicle driver), and SGT Forrest (vehicle gunner) acted with conspicuous gallantry
above and beyond the call of duty while maneuvering to engage the SVBIED to prevent
detonation inside the Knights Raid Headquarters. The massive overpressure that resulted from
the SVBIED's detonation caused the immediate deaths of the crew of vehicle D304. Multiple
American Soldiers acted with valor immediately following the SVBIED detonation while
attempting to rescue their fellow Soldiers. First Lieutenant    (b)(3)(b)(6)    and
(b)(3)(b)(6)   made multiple attempts to retrieve personnel from inside the burning vehicle D304
and extinguish the fire.   (b)(3)(b)(6)   and   (b)(3)(b)(6)   both assisted wounded Iraqi Security

AFZC-DIA-HHC
SUBJECT: AR 15-6 Investigation Findings and Recommendations for the Friday 10 April 2009
suicide vehicle borne improvised explosive device (SVBIED) attack on 2/A/1-67 AR

force personnel that were trapped in debris caused by the SVBIED detonation. All personal
military equipment and sensitive items belonging to SSG Woods, SGT Forrest, and CPL Pautsch
were destroyed as a result of the detonation of the SVBIED. The majority of the personal
military equipment and sensitive items belonging to SSG Hall and PV2 Gautier were not
recovered and assumed destroyed. Vehicle D304 was a total battle loss as a result the SVBIED
detonation. All crew members of vehicle D304 were killed instantly due to the proximity of the
blast.

4. Findings.

   A. 2/A/1-67 AR has been attached to Delta Company, 1-67 AR since the beginning of the
battalion's deployment to Iraq. Within Delta Company, 2/A/1-67 AR was referred to as 3rd
Platoon, 3/D/1-67AR. 3/1 HBCT FRAGO # 102, dated 4 April 2009, tasked 1-67 AR to provide
1 Mechanized Infantry Platoon to Task Force 3-8 Cavalry in support of 3HBCT's clearing
operations in Mosul (exhibit 4). 1-67 AR FRAGO 44, dated 5 April 09, tasked D/1-67 AR to
provide their attached Mechanized Infantry Platoon (2/A/1-67 AR) to Task Force (TF) 3-8
Cavalry Regiment (CAV) in order to meet this requirement (exhibit 5).

   B. 2/A/1-67 AR's task on 10 April 2009 was to conduct an area reconnaissance patrol of
the Borsa Market, Ras al Koor, and Bab al Toob sections of Mosul, Iraq under the tactical
control of Alpha Company, 3-8 CAV (A/3-8 CAV). The purpose of this mission was for the
A/3-8 CAV Commander, Captain ⎮  (b)(3)(b)(6)    to orient 2/A/1-67 AR with the terrain for an
upcoming mission in which the platoon would participate. On the morning of 10 April 2009 3rd
Platoon conducted a Platoon Operations Order, conducted mission rehearsals, and test fired their
crew served weapon systems. The patrol consisted of four MRAP vehicles from 2/A/1-67 AR
and one M1151 HMMWV belonging to the A/3-8 CAV Commander.

   C. The patrol moved from FOB Marez west on    (b)(1)1.4a    en route to their
mission. While moving west on    (b)(1)1.4a    road the patrol came into contact with a Dump
Truck Suicide Vehicle Borne Improvised Explosive Device (SVBIED) traveling east on (b)(1)1.4a
   (b)(1)1.4a    (exhibit 6).

   D. A man wearing an Iraqi Police (IP) uniform with 2nd Lieutenant Rank reportedly was the
SVBIED driver (exhibit 7). The SVBIED bypassed an Iraqi Army (IA) checkpoint on (b)(1)1.4a
   (b)(1)1.4a    and    (b)(1)1.4a    ⎮    (b)(3)    and moved at a high rate of speed towards
the 3rd Iraqi National Police Division, Knights Raid Brigade Headquarters complex at Combat
Outpost (COP) Eagle (exhibit 8). When the SVBIED bypassed the IA checkpoint south of the
patrol, the two IA Soldiers manning the checkpoint engaged the SVBIED with ineffective AK-47
rifle fire.

   E. When the Iraqi Soldiers engaged the SVBIED,    (b)(3)(b)(6)    the 2/A/1-67 AR Platoon
Leader, gained positive identification (PID) of the vehicle as a threat to his element.    (b)(3)(b)(6)
ordered over his Platoon FM Radio that his vehicles "stop the red dump truck" he also ordered
his vehicle's machine gunner,    (b)(3)(b)(6)    to engage the dump truck with the M240B

2

AFZC-DIA-HHC
SUBJECT: AR 15-6 Investigation Findings and Recommendations for the Friday 10 April 2009
suicide vehicle borne improvised explosive device (SVBIED) attack on 2/A/1-67 AR

machine gun (exhibit 7). Simultaneously,  (b)(3)(b)(6)  called "contact" to his Company
Command Post (CP) over his Company FM Radio.  (b)(3)(b)(6)  ordered his vehicle gunner to
engage the dump truck (exhibit 8).

   F.  The first four vehicles in the patrol engaged the dump truck with M240B machine guns,
but their fire did not prevent the SVBIED from continuing on course towards COP Eagle. The
fifth patrol vehicle, D304, crewed by SSG Hall (Truck Commander, TC), SSG Woods (Vehicle
Driver), SGT Forrest (vehicle machine gunner), CPL Pautsch (dismounted infantrymen) and
PV2 Gautier (platoon medic) did not have a clear shot at the SVBIED during the initial contact
report because the patrol's other vehicles masked their position further east on  (b)(1)1.4a
(b)(1)1.4a While the SVBIED moved past and eventually through a gap in between the third and
fourth vehicles of the patrol, SSG Hall and SSG Woods maneuvered their vehicle into a stable
firing position where the machine gunner, SGT Forrest, could accurately engage the SVBIED
using the M2 .50 caliber machine gun. Once the SVBIED cleared the fourth vehicle, SGT
Forrest engaged the SVBIED with 20 to 50 rounds of accurate M2 .50 caliber fire. SGT
Forrest's withering machine gun fire appears to have caused the SVBIED to slow down and
prevented the SVBIED from having sufficient speed to potentially breach the perimeter wall of
COP Eagle. Once the SVBIED coasted to a halt near the perimeter wall it detonated by an
unknown means (exhibit 9 and 10). Inspection of D304's hull following recovery operations
revealed 20-50 expended .50 caliber casings inside the vehicle compartment (personal inspection
of I.O.). SSG Hall, SSG Woods, and SGT Forrest reacted heroically in the face of an immediate
threat. Their actions hindered the attacker's ability to strike his intended target, and potentially
saved the lives of dozens of Iraqi National Policemen and Coalition Soldiers.

   G.  Team 1-2, 749th Explosive Ordnance Disposal Company (EOD) assesses the SVBIED
consisted of approximately 10,000 pounds of unidentified bulk explosive (UBE) (exhibit 11).
SSG Hall's vehicle was approximately 10 meters from the SVBIED blast site when the
detonation occurred. The blast resulted in the immediate deaths of SSG Hall, SSG Woods, SGT
Forrest, CPL Pautsch, and PV2 Gautier. The SVBIED's explosion created a massive amount of
blast overpressure that penetrated the hull of D304 due to the vehicle's proximity. The
overpressure caused a wave which tipped D304 onto the driver's side of the vehicle and tore the
roof from the vehicle hull (exhibits 9 & 12). When the vehicle tipped on its side SSG Hall, SGT
Forrest, and CPL Pautsch were ejected from the vehicle. The blast was also responsible for the
death of 3 Iraqi Security force personnel, the destruction of 2 buildings inside COP Eagle, the
destruction of multiple Iraqi Security Forces vehicles, and injuring over two dozen Iraqi Security
forces and US Army personnel (exhibit 6).

   H.  (b)(3)(b)(6)  , the Platoon Leader of 2/A/3-8 CAV, was exiting the FOB Marez test fire
pit with his platoon and moving to conduct an area recon of the Zinjalli Neighborhood of Mosul
when  (b)(3)(b)(6)  contact report came over the radio.  (b)(3)(b)(6)  heard the FM call and
directed his platoon to his Company Commander's location (exhibit 13).  (b)(3)(b)(6)  platoon
arrived on the scene as  (b)(3)(b)(6)  was establishing security and attempting to get
accountability of his platoon.

3

AFZC-DIA-HHC
SUBJECT: AR 15-6 Investigation Findings and Recommendations for the Friday 10 April 2009
suicide vehicle borne improvised explosive device (SVBIED) attack on 2/A/1-67 AR

I.  When 2/A/3-8 CAV arrived at the scene of the SVBIED explosion, Soldiers from the platoon immediately moved to assist the wounded American Soldiers and Iraqi National Policemen (exhibit 14).  (b)(3)(b)(6)  and  (b)(3)(b)(6)  identified that vehicle D304 was on fire and that there were Soldiers still inside the MRAP.  (b)(3)(b)(6)  ran into the burning MRAP and attempted to pull PV2 Gautier out of the vehicle.  (b)(3)(b)(6)  immediately followed (b)(3)(b)(6) (b)(3)(b)(6) into D304's burning hull. The two Soldiers were unable to pull PV2 Gautier out of the burning MRAP until  (b)(3)(b)(6)  came to assist them.  (b)(3)(b)(6)  and (b)(3)(b)(6)  (b)(3)(b)(6)  worked together to pull PV2 Gautier out of the MRAP as .50 caliber and M203 rounds exploded inside of the burning vehicle (exhibits 8, 13, 15, & 16).

J.  Multiple Soldiers stated in sworn statements that PV2 Gautier had survived the blast. However, I found no evidence to support their view.  (b)(3)(b)(6)  stated that there was no way that PV2 Gautier could have survived the blast given the extensive trauma he sustained (exhibit 17).  (b)(3)(b)(6)  was approximately 10 feet away from PV2 Gautier when he made that assessment as he was establishing security at the site.  (b)(3)(b)(6)  second statement concurs with the statement made by Dr  (b)(3)(b)(6)  that none of the Soldiers in D304 survived the SVBIED blast.

K.  While  (b)(3)(b)(6)  and  (b)(3)(b)(6)  and (b)(3)(b)(6) retrieved PV2 Gautier from the MRAP,  (b)(3)(b)(6)  and  (b)(3)(b)(6)  directed evacuation of the wounded to the CASH, recovered the remaining Soldiers from D304, and established security of the blast sight. All crew members of D304 and  (b)(3)(b)(6)  were evacuated to the CASH. After  (b)(3)(b)(6)  completed recovering all of his Soldiers, he returned to FOB Marez to be examined at the 1-67 AR Battalion Aid Station (exhibit 7).

L.  The crew members from D304 and  (b)(3)(b)(6)  were evacuated from the blast sight to the Combat Area Support Hospital (CASH) located on Camp Diamondback adjacent to FOB Marez. Upon arrival at the CASH the Soldiers were medically evaluated by Dr.  (b)(3)(b)(6) (b)(3)(b)(6) taken into surgery upon arrival at the CASH. Dr.  (b)(3)(b)(6)  pronounced PV2 Gautier dead in the vehicle which had brought him from the scene.  (b)(3)(b)(6)  pronounced SSG Hall, SSG Woods, SGT Forrest, and CPL Pautsch dead at the mortuary adjacent to the CASH (exhibit 3). SSG Hall, SSG Woods, SGT Forrest, CPL Pautsch, and PV2 Gautier were all moved to mortuary affairs where mortuary affairs personnel inventoried their personal effects and military equipment (exhibit 18).

M.  The cause of death for SSG Hall, SSG Woods, SGT Forrest, CPL Pautsch, and PV2 Gautier was their proximity to the SVBIED detonation.  (b)(3)(b)(6)  states in his sworn statement, "All 5 service members were killed instantaneously based upon proximity of blast and injuries I witnessed. Immediate access to the most advance medical care could not change the outcome for any of the listed Soldiers." (exhibit 3)

N.  After 2/A/1-67 AR Soldiers returned to FOB Marez Medics from the 1-67 AR Battalion Aid Station (BAS) administered a Military Assessment for Concussion Exposure (MACE) test to everyone in the patrol. Following the screening of all personnel  (b)(3)(b)(6)  1-67 AR BN

4

AFZC-DIA-HHC
SUBJECT: AR 15-6 Investigation Findings and Recommendations for the Friday 10 April 2009
suicide vehicle borne improvised explosive device (SVBIED) attack on 2/A/1-67 AR

Physicians Assistant, determined that 3 Soldiers,      (b)(3)(b)(6)      and      (b)(3)(b)(6)
needed to receive a CT scan.   (b)(3)(b)(6)   referred 1 Soldier,   (b)(3)(b)(6)   for an x-ray of his left
wrist. Finally   (b)(3)(b)(6)   ordered 2 Soldiers,   (b)(3)(b)(6)   and   (b)(3)(b)(6)   to return to the
BAS for re-evaluation at a later time (exhibit 19 and 20). The 3-8 CAV BN Chaplain was at the
BAS during the MACE testing supporting the Soldiers from 2/A/1-67 AR. Following MACE
testing, the platoon moved to the CASH on Camp Diamondback to receive further medical
treatment and check on the status of   (b)(3)(b)(6)

     O. Two factors contributed to the detonation of this SVBIED on 10 April - the poor
construction of the Iraqi Army checkpoint at the intersection of   (b)(1)1.4a   and   (b)(1)1.4a
(      (b)(3)      and the lack of an overwatch position with a manned crew served or anti-
armor weapon system at the checkpoint. Both of these deficiencies are currently being corrected
by the Iraqi Security Forces units in the immediate area. The checkpoint is being re-enforced
with a Hesko Baston wall which, when completed, will prevent any vehicle or foot traffic from
bypassing the checkpoint at   (b)(1)1.4a   and   (b)(1)1.4a

     (1) Brigadier General Hamed, Commander of the Knights Raid Brigade, 3rd Iraqi
National Police Division, stationed at COP Eagle stated in his sworn statement, "I believe, the
enemy did a reconnaissance of the area and his job beforehand and saw the weakness in our
CP…" (exhibit 21). The weakness that BG Hamed referred to is the area along   (b)(1)1.4a
where the SVBIED was able to bypass the checkpoint and gain access to   (b)(1)1.4a
This area is now blocked by the Hesco Baston wall.

     (2) BG Hamed further speculated in his sworn statement that the checkpoint had been
infiltrated by insurgents which caused the checkpoint to fail. I found nothing to prove BG
Hamed's assertion during this investigation. The Iraqi Soldiers manning the checkpoint saw the
SVBIED bypass their position and immediately fired upon it. Their actions prove that the Iraqi
Soldiers on duty at the checkpoint were not involved in assisting this attack.

     (3) The   (b)(1)1.4a   and   (b)(1)1.4a   checkpoint   (b)(3)   now
has an Iraqi National Police HMMWV with a crew served weapon system over watching the
checkpoint. The Iraqi Army has added a Badger (Iraqi Army MRAP vehicle) with a crew served
weapon to the checkpoint as well. These vehicles with their crew-served weapon systems
provide overwatch to the Soldiers and National Policemen manning the checkpoint. I physically
saw these improvements being made and observed the overwatch vehicles with crew served
weapons at the checkpoint during my visit to the Knights Raid Brigade Headquarters on 16 April
09. BG Hamed told me his force will overwatch the checkpoint at   (b)(1)1.4a   and (b)(1)1.4a
(b)(1)1.4a with a vehicle and a crew served weapon system. He also stated that his policemen
would have a RPG at their overwatch position from now forward.

     P. I found no safety precautions that could have been taken that would have prevented this
incident. I found only the force protection deficiency at the   (b)(1)1.4a   and   (b)(1)1.4a
checkpoint, specifically the ability for a large truck to avoid the checkpoint and gain access to

AFZC-DIA-HHC
SUBJECT: AR 15-6 Investigation Findings and Recommendations for the Friday 10 April 2009 suicide vehicle borne improvised explosive device (SVBIED) attack on 2/A/1-67 AR

      (b)(1)1.4a     from     (b)(1)1.4a     This Force Protection deficiency has been corrected with the addition of the Hesco Baston wall blocking this access point.

Q. The only corrective actions that can be taken to prevent a similar incident are being taken at COP Eagle currently by the Iraqi National Police Knights Raid Brigade.

R. This was a tragic incident may have been much worse had SSG Hall's vehicle not had a M2 .50 caliber machine gun in operation. The machine guns of every truck in the patrol engaged the SVBIED, the Iraqi Soldiers at the  (b)(1)1.4a  and  (b)(1)1.4a  checkpoints engaged the SVBIED, but their fire did not stop the SVBIED. When the crew of D304 engaged the SVBIED with withering .50 caliber machine gun fire, the SVBIED slowed down and did not breach COP Eagle's wall. The .50 caliber machine gun was able to establish a significant enough volume of fire to arrest the momentum of the SVBIED.

S. All sensitive items and military equipment belonging to SSG Woods, SGT Forrest, and CPL Pautsch were destroyed as a result of the SVBIED attack. The majority of the personal military equipment and sensitive items belonging to SSG Hall and PV2 Gautier was not recovered and assumed destroyed (exhibit 22). The DD Form 1076, Military Operations Record of Personal Effects of Deceased Personnel, DD Form 890 Record of Identification Processing, DD Form 565 Statement of Recognition of Deceased, and DD Form 2064 Certificate of Death were completed for each Soldier. These forms were completed by the 111th Quartermaster Company (Mortuary Affairs) located at Camp Diamondback, Iraq (exhibit 18). The personal protective equipment that was worn by SSG Woods, SGT Forrest, CPL Pautsch, and PV2 Gautier is only partially listed on their DD 1076. The missing equipment that was not inventoried was destroyed in the explosion and was not recovered at the scene. The MRAP vehicle was also destroyed as a result of this SVBIED explosion. The Estimated Cost of Damages (ECOD) and photos of the MRAP are listed in exhibits 22 and 12 respectively. The Equipment Inspection and Maintenance Worksheet (DA 2404)for the weapons and equipment recovered at the scene is included as exhibit 24.

T. SSG Hall and PV2 Gautier were posthumously promoted to Sergeant First Class and Private First Class respectively on 10 April 2009 by order of the Adjutant of the Army (exhibit 25).

5. Recommendations

(b)(3)(b)(6), (b)(5)

AFZC-DIA-HHC
SUBJECT: AR 15-6 Investigation Findings and Recommendations for the Friday 10 April 2009
suicide vehicle borne improvised explosive device (SVBIED) attack on 2/A/1-67 AR

(b)(3)(b)(6), (b)(5)

6.  POC for this action is the undersigned at                    (b)(3)(b)(6)

(b)(3)(b)(6)

Encl.
1. Appointment orders
2. Key personnel                              Commanding
3. Statement of Dr.        (b)(3)(b)(6)
4. 3HBCT FRAGO #102
5. 1-67 AR BN FRAGO 44
6. 3-8 CAV SIGACT 04:077 10 1020 APR 09
7. Statement of
8. Statement of          (b)(3)(b)(6)
9. Statement of
10. Constant Hawk Video footage
11. CJTF MND-N, 749th EOD post-blast analysis report
12. Vehicle D304 post-blast pictures
13. Statement of          (b)(3)(b)(6)

7

AFZC-DIA-HHC
SUBJECT: AR 15-6 Investigation Findings and Recommendations for the Friday 10 April 2009
suicide vehicle borne improvised explosive device (SVBIED) attack on 2/A/1-67 AR

14. Predator Unmanned Arial Vehicle video feed
15. Statement of
16. Statement of      (b)(3)(b)(6)
17. Statement 2 of      (b)(3)(b)(6)
18. DD Form 1076 Military Operations Record of Personal Effects of Deceased Personnel
    DD Form 890 Record of Identification Processing
    DD Form 565 Statement of recognition of deceased
    DD Form 2064 Certificate of Death
19. Statement of
20. Statement of      (b)(3)(b)(6)
21. Statement of (INP) BG Hamed Muhssan Awed
22. Photos of destroyed equipment and sensitive items
23. ECOD for vehicle D304
24. DA 2404s for weapons and equipment recovered
25. Promotion Orders for SSG Hall and PV2 Gautier

## REPORT OF PROCEEDINGS BY INVESTIGATING OFFICER/BOARD OF OFFICERS

For use of this form, see AR 15-6; the roponent agency is OTJAG.

*IF MORE SPACE IS REQUIRED IN FILLING OUT ANY PORTION OF THIS FORM, ATTACH ADDITIONAL SHEETS*

### SECTION I - APPOINTMENT

Appointed by    (b)(3)(b)(6)    CDR 3HBCT, 1CD

*(Appointing authority)*

on    10 April 2009    *(Attach inclosure 1: Letter of appointment or summary of oral appointment data.) (See para 3-15, AR 15-6.)*
*(Date)*

### SECTION II - SESSIONS

The *(investigation) (board)*    commenced at    FOB Marez, Iraq    at    2200
*(Place)*    *(Time)*

on    10 April 2009    *(If a formal board met for more than one session, check here ☐ . Indicate in an inclosure the time each session began and*
*(Date)*
ended, the place, persons present and absent, and explanation of absences, if any.) The following persons *(members, respondents, counsel)* were
present: *(After each name, indicate capacity, e.g., President, Recorder, Member, Legal Advisor.)*

(b)(3)(b)(6)    - Investigating Officer
(b)(3)(b)(6)    - 3HBCT JAG

The following persons *(members, respondents, counsel)* were absent: *(Include brief explanation of each absence.) (See paras 5-2 and 5-8a, AR 15-6.)*

N/A

The *(investigating officer) (board)*  finished gathering/hearing evidence at    1700    on    16 April 2009
*(Time)*    *(Date)*

and completed findings and recommendations at    2200    on    17 April 2009
*(Time)*    *(Date)*

### SECTION III - CHECKLIST FOR PROCEEDINGS

| A. COMPLETE IN ALL CASES | YES | NO[1] | NA[2] |
|---|---|---|---|
| 1 Inclosures *(para 3-15, AR 15-6)* | | | |
| Are the following inclosed and numbered consecutively with Roman numerals: *(Attached in order listed)* | | | |
| a. The letter of appointment or a summary of oral appointment data? | | ☒ | |
| b. Copy of notice to respondent, if any? *(See item 9, below)* | | | |
| c. Other correspondence with respondent or counsel, if any? | ☒ | | |
| d. All other written communications to or from the appointing authority? | ☒ | | |
| e. Privacy Act Statements *(Certificate, if statement provided orally)?* | | | |
| f. Explanation by the investigating officer or board of any unusual delays, difficulties, irregularities, or other problems encountered *(e.g., absence of material witnesses)?* | ☒ | ☐ | ☐ |
| g. Information as to sessions of a formal board not included on page 1 of this report? | ☒ | | |
| h. Any other significant papers *(other than evidence)* relating to administrative aspects of the investigation or board? | ☒ | | |

FOOTNOTES:  1/ Explain all negative answers on an attached sheet.
2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation
or board.

DA FORM 1574, MAR 1983    EDITION OF NOV 77 IS OBSOLETE.    *Page 1 of 4 pages*    APD PE v1.30

| | | YES | NO[1] | NA[2] |
|---|---|---|---|---|
| 2 | Exhibits *(para 3-16, AR 15-6)* | | | |
| | a. Are all items offered *(whether or not received)* or considered as evidence individually numbered or lettered as exhibits and attached to this report? | ☒ | ☐ | ☐ |
| | b. Is an index of all exhibits offered to or considered by investigating officer or board attached before the first exhibit? | ☒ | ☐ | ☐ |
| | c. Has the testimony/statement of each witness been recorded verbatim or been reduced to written form and attached as an exhibit? | ☒ | ☐ | ☐ |
| | d. Are copies, descriptions, or depictions *(if substituted for real or documentary evidence)* properly authenticated and is the location of the original evidence indicated? | ☒ | ☐ | ☐ |
| | e. Are descriptions or diagrams included of locations visited by the investigating officer or board *(para 3-6b, AR 15-6)*? | ☒ | ☐ | ☐ |
| | f. Is each written stipulation attached as an exhibit and is each oral stipulation either reduced to writing and made an exhibit or recorded in a verbatim record? | ☒ | ☐ | ☐ |
| | g. If official notice of any matter was taken over the objection of a respondent or counsel, is a statement of the matter of which official notice was taken attached as an exhibit *(para 3-16d, AR 15-6)*? | ☒ | ☐ | ☐ |
| 3 | Was a quorum present when the board voted on findings and recommendations *(paras 4-1 and 5-2b, AR 15-6)*? | ☐ | ☐ | ☒ |
| **B. COMPLETE ONLY FOR FORMAL BOARD PROCEEDINGS** *(Chapter 5, AR 15-6)* | | | | |
| 4 | At the initial session, did the recorder read, or determine that all participants had read, the letter of appointment *(para 5-3b, AR 15-6)*? | ☒ | ☐ | ☐ |
| 5 | Was a quorum present at every session of the board *(para 5-2b, AR 15-6)*? | ☐ | ☒ | ☐ |
| 6 | Was each absence of any member properly excused *(para 5-2a, AR 15-6)*? | ☐ | ☐ | ☒ |
| 7 | Were members, witnesses, reporter, and interpreter sworn, if required *(para 3-1, AR 15-6)*? | ☐ | ☐ | ☒ |
| 8 | If any members who voted on findings or recommendations were not present when the board received some evidence, does the inclosure describe how they familiarized themselves with that evidence *(para 5-2d, AR 15-6)*? | ☐ | ☐ | ☒ |
| **C. COMPLETE ONLY IF RESPONDENT WAS DESIGNATED** *(Section II, Chapter 5, AR 15-6)* | | | | |
| 9 | Notice to respondents *(para 5-5, AR 15-6)*: | | | |
| | a. Is the method and date of delivery to the respondent indicated on each letter of notification? | ☐ | ☐ | ☐ |
| | b. Was the date of delivery at least five working days prior to the first session of the board? | ☐ | ☐ | ☐ |
| | c. Does each letter of notification indicate — | | | |
| |   (1) the date, hour, and place of the first session of the board concerning that respondent? | ☐ | ☐ | ☐ |
| |   (2) the matter to be investigated, including specific allegations against the respondent, if any? | ☐ | ☐ | ☐ |
| |   (3) the respondent's rights with regard to counsel? | ☐ | ☐ | ☐ |
| |   (4) the name and address of each witness expected to be called by the recorder? | ☐ | ☐ | ☐ |
| |   (5) the respondent's rights to be present, present evidence, and call witnesses? | ☐ | ☐ | ☐ |
| | d. Was the respondent provided a copy of all unclassified documents in the case file? | ☐ | ☐ | ☐ |
| | e. If there were relevant classified materials, were the respondent and his counsel given access and an opportunity to examine them? | ☐ | ☐ | ☐ |
| 10 | If any respondent was designated after the proceedings began *(or otherwise was absent during part of the proceedings)*: | | | |
| | a. Was he properly notified *(para 5-5, AR 15-6)*? | ☐ | ☐ | ☐ |
| | b. Was record of proceedings and evidence received in his absence made available for examination by him and his counsel *(para 5-4c, AR 15-6)*? | ☐ | ☐ | ☐ |
| 11 | Counsel *(para 5-6, AR 15-6)*: | | | |
| | a. Was each respondent represented by counsel? | ☐ | ☐ | ☐ |
| | Name and business address of counsel: | | | |
| | *(If counsel is a lawyer, check here ☐ )* | | | |
| | b. Was respondent's counsel present at all open sessions of the board relating to that respondent? | ☐ | ☐ | ☐ |
| | c. If military counsel was requested but not made available, is a copy *(or, if oral, a summary)* of the request and the action taken on it included in the report *(para 5-6b, AR 15-6)*? | ☐ | ☐ | ☐ |
| 12 | If the respondent challenged the legal advisor or any voting member for lack of impartiality *(para 5-7, AR 15-6)*: | | | |
| | a. Was the challenge properly denied by the appropriate officer? | ☐ | ☐ | ☐ |
| | b. Did each member successfully challenged cease to participate in the proceedings? | ☐ | ☐ | ☐ |
| 13 | Was the respondent given an opportunity to *(para 5-8a, AR 15-6)*: | | | |
| | a. Be present with his counsel at all open sessions of the board which deal with any matter which concerns that respondent? | ☐ | ☐ | ☐ |
| | b. Examine and object to the introduction of real and documentary evidence, including written statements? | ☐ | ☐ | ☐ |
| | c. Object to the testimony of witnesses and cross-examine witnesses other than his own? | ☐ | ☐ | ☐ |
| | d. Call witnesses and otherwise introduce evidence? | ☐ | ☐ | ☐ |
| | e. Testify as a witness? | ☐ | ☐ | ☐ |
| | f. Make or have his counsel make a final statement or argument *(para 5-9, AR 15-6)*? | ☐ | ☐ | ☐ |
| 14 | If requested, did the recorder assist the respondent in obtaining evidence in possession of the Government and in arranging for the presence of witnesses *(para 5-8b, AR 15-6)*? | ☐ | ☐ | ☐ |
| 15 | Are all of the respondent's requests and objections which were denied indicated in the report of proceedings or in an inclosure or exhibit to it *(para 5-11, AR 15-6)*? | ☐ | ☐ | ☐ |

FOOTNOTES: 1/ Explain all negative answers on an attached sheet.
2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

APD PE v1.30

| SECTION IV - FINDINGS    *(para 3-10, AR 15-6)* | |
|---|---|
| The *(investigating officer) (board)* , having carefully considered the evidenc . finds: <br><br> E ATTACHED SHEET -- | |

| SECTION V - RECOMMENDATIONS    *(para 3-11, AR 15-6)* | |
|---|---|
| In view of the above findings, the *(investigating officer) (board)* recommends: <br><br> -- SEE ATTACHED SHEET -- | |

| SECTION VI - AUTHENTICATION *(para 3-17, AR 15-6)* |
|---|

THIS REPORT OF PROCEEDINGS IS COMPLETE AND ACCURATE. *(If any voting member or the recorder fails to sign here or in Section VII below, indicate the reason in the space where his signature should appear.)*

(b)(3)(b)(6)

_____
*(Recorder)*

_____                    _____
*(Member)*                                              *(Member)*

_____                    _____
*(Member)*                                              *(Member)*

| SECTION VII - MINORITY REPORT *(para 3-13, AR 15-6)* |
|---|

To the extent indicated in Inclosure _____ , the undersigned do(es) not concur in the findings and recommendations of the board.
*(In the inclosure, identify by number each finding and/or recommendation in which the dissenting member(s) do(es) not concur. State the reasons for disagreement. Additional/substitute findings and/or recommendations may be included in the inclosure.)*

_____                    _____
*(Member)*                                              *(Member)*

| SECTION VIII - ACTION BY APPOINTING AUTHORITY *(para 2-3, AR 15-6)* |
|---|

The findings and recommendations of the *(investigating officer) (board)* are *(approved) (disapproved) (approved with following exceptions/ substitutions)*. *(If the appointing authority returns the proceedings to the investigating officer or board for further proceedings or corrective action, attach that correspondence (or a summary, if oral) as a numbered inclosure.)*

(b)(3)(b)(6)

Commanding



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 3D HEAVY BRIGADE COMBAT TEAM
1ST CAVALRY DIVISION
FORWARD OPERATING BASE MAREZ, APO AE 09334

REPLY TO
ATTENTION OF:

AFVA-3HBCT-CDR                                                    10 April 2009

MEMORANDUM FOR          (b)(3)(b)(6)          Headquarters and Headquarters
Company, 1st Combined Arms Battalion, 67ᵗʰ Armor Regiment, Multi-National Division –
North, Forward Operating Base Marez, Iraq, APO AE 09334

SUBJECT: Appointment as AR 15-6 Investigating Officer – Hostile Fire Incident on 10 April
2009

1. You are hereby appointed as an investigating officer pursuant to AR 15-6 to conduct an
informal investigation into the deaths of Staff Sergeant (SSG) Bryan Hall, Staff Sergeant (SSG)
Gary Woods, Sergeant (SGT) Edward Forest, Corporal (CPL) Jason Pautsch, and Private Second
Class (PV2) Bryce Gautier, D Company, 1st Combined Arms Battalion, 67th Armor Regiment,
on 10 April 2009, as detailed in the enclosed Significant Activity (SIGACT) report.

2. The purpose of your investigation is to determine the pertinent facts and circumstances
surrounding the incident. In particular, you will address the following issues in your
investigation:

    a. The cause of the deaths;

    b. An explanation of the unit's mission, highlighting the contributions of the above-named
Soldiers to the mission;

    c. What factor or series of factors contributed to the incident;

    d. Any safety precautions not taken that would have impacted on the incident;

    e. An explanation of potential corrective action which could preclude similar incidents; and

    f. Any other issues relating to this incident which would provide insight into the deaths or
future operations.

3. Your findings will be supported by a preponderance of the evidence. Based on your findings,
you will make recommendations on any other matter under the control of this command that you
deem appropriate.

4. You will conduct your investigation in accordance with the informal procedures of Chapter 4,
AR 15-6. All witness statements will be sworn using DA Form 2823, unless impracticable or

AFVA-3HBCT-CDR
SUBJECT:  Appointment as AR 15-6 Investigating Officer – Hostile Fire Incident on 10 April 2009

otherwise directed by your legal advisor.  You will interview all witnesses in person, unless impracticable or otherwise directed by your legal advisor.

5.  If, in the course of your investigation, you come to suspect an individual may have committed a criminal offense under the Uniform Code of Military Justice (UCMJ), you will advise that person of his or her rights under Article 31, UCMJ, using DA Form 3881.  You will proceed with questioning only if the individual waives his or her rights.

6.  If you discover that the completion of your investigation requires examining the conduct or performance of duty of, or may result in findings or recommendations adverse to, a person senior to you, you will immediately report this fact to me through your legal advisor.

7.        (b)(3)(b)(6)          Brigade Judge Advocate     (b)(3)(b)(6)     , or his designee, is your legal advisor and you will consult with him prior to beginning your investigation and on all aspects of this investigation.

8.  Submit your findings and recommendations in memorandum format and attach it to DA Form 1574.  Additionally, your completed investigation should include:

   a.  This letter of appointment as Exhibit I;

   b.  A listing of all parties to the incident, with a brief explanation of the role they played, as Exhibit II; and

   c.  All exhibits numbered consecutively.

9.  Submit your complete report, with all enclosures and exhibits, to me through your legal advisor no later than 7 days after receipt of this memorandum.  Submit any requests for extension to me in writing through your legal advisor.  This is your primary duty until completion of the investigation or you have been relieved by me in writing.


                              (b)(3)(b)(6)


                           Commanding


2

3/1 04:077 (3-8 AO)
INITIAL REPORT:
WHO: PSD/HHC/3-8
WHEN: 101020APR09
WHERE: Ninewah Province, Mosul COP Eagle, 38SLF 30954 20062
WHAT: SVBIED -Confirmed (PSD/HHC/3-8) -effective
HOW: 1020 PSD/HHC/3-8 reported a large explosion just outside of FOB Marez gate        **(b)(3)**        Several ISF
vehicles were on fire inside the COP Eagle Motor pool. RPG rounds were cooking off from vehicles in the motor pool. 2/A/3-8 and
3/D/1-67 reports the SVBIED targeted their patrol as it was moving into sector. The blast crater was at   **(b)(2)High**   The 3/D/1-
67 MRAP that was targeted was at        **(b)(3)**
1045 Blackfoot reports a possible spotter dropping a black bag into a trash can at        **(b)(3)**        Individual was described as
wearing a pink shirt, black jacket and green pants.
1049 elements on scene 3/D/1-67, 1/A/3-8, 2/A/3-8, 3/A/3-8, HQ/A/3-8, PSD/HHC/3-8 and 2/B/3-8, SCT/HHC/3-8
1059 Warhorse gate is closed.
1100 CDR/3-8 reports 5 x CF KIA. WH6 reported a VBIED that targeted CF convoy at the FOB Marez Gate.
1128 C/3-8 detained 3 x MAM matching the description, 1 x cell phone, 1 x AK-47 matching the description of the runners at grid LF
   **(b)(3)**
1204 B/4-9 reported finding an improvised hand grenade in the trash can at grid        **(b)(3)**        EOD was notified. This is the same
trash can that the detainees were seen dropping a black bag into at 1045.
1256 EOD requested blast window for Grenade.   1311 controlled detonation complete.
BDA: 5 x CF KIA, 2 x CF WIA, 1 x MRAP destroyed, 11 x ISF Vehicles destroyed, 1xEKIA
EOD Assessment: 1122 Crater is reported to be just outside the compound. 1200: 10,000lbs HME dump truck SVBIED.
S2 Assessment:
PAO Assessment:
IO Assessment:
MEETS MNC-I CCIR#6, 20

Exhibit 2: The following exhibit is a listing of all key individuals related this incident

The following Soldiers played key roles in the incident on 10 April 09.

(1)     SSG Bryan Edward Hall was the Platoon Sergeant of 2/A/1-67 AR and the TC of D304 on 10 April 09.
(2)     SSG Gary Lee Woods Jr. was a Squad Leader in the Headquarters section of Delta Company. On 10 April he was the driver of D304 on 10 April 09.
(3)     SGT Edward Watson Forrest Jr. was a Team Leader in 2/A/1-67 AR and the M2 .50 caliber machine gunner in D304 on 10 April 09.
(4)     CPL Jason Graham Pautsch was a Team Leader in 2/A/1-67 AR and dismount in D304 on 10 April 09.
(5)     PV2 Bryce Edmund Gautier was the Platoon Medic for 2/A/1-67 AR and a dismount in D304 on 10 April 09.
(6)          (b)(3)(b)(6)          is the Company Commander of A/3-8 CAV. 2/A/1-67 AR was OPCON to his company on 10 April 09. He was the senior Soldier on the patrol on 10 April 09.
(7)          (b)(3)(b)(6)          is the Platoon Leader for 2/A/1-67 AR. He was serving as the Patrol Leader on 10 April 09.
(8)          (b)(3)(b)(6)          is the Platoon Leader for 2/A/3-8 CAV. His platoon was the first US unit to arrive at the scene after the detonation of the SVBIED.
(9)          (b)(3)(b)(6)          is a member of 2/A/3-8 CAV. He made multiple attempts to recover an American Soldier from inside the burning hull of vehicle D304.
(10)          (b)(3)(b)(6)          was a dismount security personnel riding in (b)(3)(b)(6) (b)(3)(b)(6)  HMMWV on 10 April 09. He made multiple attempts to recover an American Soldier from inside the burning hull of vehicle D304.
(11)   Dr.      (b)(3)(b)(6)      is the Deputy Commander for Clinical Services (DCCS) at the 47th CASH Task Force – Mosul.   (b)(3)(b)(6)  examined SSG Hall, SSG Woods, SGT Forrest, CPL Pautsch, and PV2 Gautier and signed their death certificates.
(12)          (b)(3)(b)(6)          is the Battalion Physian's Assistant for 1-67 AR BN. (b)(3)(b)(6)  supervised the MACE testing for 2/A/1-67 AR after the incident on 10 April 09.

PRIVACY ACT STATEMENT
(5 U.S.C. 522a)

AUTHORITY:  5 U.S.C. 301 and 10 U.S.C. 3012

PURPOSE:  The purpose of this solicitation is to gather facts and make recommendations to assist the appropriate authorities in determining what action to take with regard to allegations of

My actions in response to SUBJED on 10 APR09.

ROUTINE USES:  Any information you provide is disclosable to members of the Department of Defense who have a need for the information in performance of their official duties, and where use of such information is compatible with the purpose for which the information is collected.  In addition, the information may be disclosed to Government agencies and persons outside the Department of Defense for law enforcement purposes, or if determined to be disclosable pursuant to a request submitted under the Freedom of Information Act, or if needed for Congressional or other Government Investigations.

DISCLOSURE MANDATORY FOR INDIVIDUAL WHO MAY BE ORDERED TO TESTIFY: providing the information is mandatory.  Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or applicable Army or other federal regulations.

DISCLOSURE VOLUNTARY FOR INDIVIDUAL WARNED OF HIS RIGHTS UNDER ARTICLE 31, UCMJ, OR THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION: providing the information is voluntary.  There will be no adverse effect on you for not furnishing the information other than essential information which might not otherwise be available to the commander for his decision in this matter.

ACKNOWLEDGMENT

I have read and been provided a copy of the P
contents.

13 APR 09
Date

(b)(3)(b)(6)

Social Security Number



**DEPARTMENT OF THE ARMY**
TASK FORCE 47TH CSH
MOSUL, IRAQ (COS DIAMONDBACK)
APO, AE 09344



FICI-MC-CHC-A-DCCS                                              13 April 2009

MEMORANDUM FOR RECORD

Subject:  Death of 5 service members killed in SVBIED 10 APR 09.

Of the 5 Service members killed I pronounced PV2 Gautier dead on arrival inside the MRAP that
brought him to the 47th CSH.  I officially pronounced the remaining four service members dead
in the mortuary. This statement is based upon review of DD Form 2064 and my recollection of
the service members. An autopsy was not performed and this statement is based upon description
of injuries I witnessed.

SGT Edward Forrest: Cause of death appeared to be instantly secondary to proximity of blast.
This was evident based upon                                   (b)(3)(b)(6)


                                    (b)(3)(b)(6)


SSG Bryan Hall: Cause of death appeared to be instantly secondary to proximity of blast. This
was evident based upon a layer of dirt coating his hair, face, neck and uniform. The principal
blast injury that caused his death was likely a primary blast injury which was evident  (b)(3)(b)(6)

                                    (b)(3)(b)(6)

PV2 Bryce Edmund Gautier:  Cause of death appeared to be instantly secondary to proximity of
blast. This was evident based upon blast injury to                  (b)(3)(b)(6)


                                    (b)(3)(b)(6)


CPL Jason Graham Pautsch: Cause of death appeared to be instantly secondary proximity of
blast. This was evident based upon blast injury to                  (b)(3)(b)(6)



                                    (b)(3)(b)(6)

SSG Gary Woods: Cause of death appeared to be instantly secondary to proximity of blast.

(b)(3)(b)(6)

All 5 service members were killed instantaneously based upon proximity of blast and injuries I witnessed.  Immediate access to the most advance medical care could not change the outcome for any of the listed soldiers.

(b)(3)(b)(6)

DCCS

**SWORN STATEMENT**
For use of this form, see AR 190-45; the proponent agency is PMG.

PRIVACY ACT STATEMENT

AUTHORITY: Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 *(SSN)*.
PRINCIPAL PURPOSE: To provide commanders and law enforcement officials with means by which information may be accurately identified.
ROUTINE USES: Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval.
DISCLOSURE: Disclosure of your social security number is voluntary.

| 1. LOCATION 47th CSH | 2. DATE (YYYYMMDD) 20090413 | 3. TIME 1120 | 4. FILE NUMBER |
|---|---|---|---|

5. LAST NAME FIRST NAME MIDDLE NAME (b)(3)(b)(6)
6. SSN (b)(3)(b)(6)
7. GRADE/STATUS (b)(3)(b)(6)

8. ORGANIZATION OR ADDRESS
47th CSH   TF - MOSUL

9. I, (b)(3)(b)(6) , WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

See attached memo

(b)(3)(b)(6)

10. EXHIBIT
11. INITIALS OF PERSON MAKING STATEMENT (b)(3)(b)(6)
PAGE 1 OF 2 PAGES

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.

DA FORM 2823, DEC 1998    DA FORM 2823, JUL 72, IS OBSOLETE    APD PE v1.01

STATEMENT OF _____ TAKEN AT _____ DATED _____

9. STATEMENT  *(Continued)*

**(b)(3)(b)(6)**

**(b)(3)(b)(6)**

**(b)(3)(b)(6)**

**(b)(3)(b)(6)**

**AFFIDAVIT**

I, ___ **(b)(3)(b)(6)** _____ , HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT
WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE ___2___ . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE
BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTION
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY
THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUE          **(b)(3)(b)(6)**

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to
administer oaths this  13   day of  Dec  11   . 2009
at ___

_____

ORGANIZATION OR ADDRESS          **(b)(3)(b)(6)**

_____

AR 15-6
ORGANIZATION OR ADDRESS          *(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT

| PAGE | OF | PAGES |

*PAGE 3, DA FORM 2823, DEC 1998*          APD PE v1.01

s 24 through 26 redacted for the following reasons:
- - - - - - - - - - - - - - - - - - - - - - - -
)1.4a

PRIVACY ACT STATEMENT
(5 U.S.C. 522a)

AUTHORITY: 5 U.S.C. 301 and 10 U.S.C. 3012

PURPOSE: The purpose of this solicitation is to gather facts and make recommendations to assist the appropriate authorities in determining what action to take with regard to allegations of

SUBIED  ATTACK  VICINITY  OF  FOB  MAREZ  IRAQ

ROUTINE USES: Any information you provide is disclosable to members of the Department of Defense who have a need for the information in performance of their official duties, and where use of such information is compatible with the purpose for which the information is collected. In addition, the information may be disclosed to Government agencies and persons outside the Department of Defense for law enforcement purposes, or if determined to be disclosable pursuant to a request submitted under the Freedom of Information Act, or if needed for Congressional or other Government Investigations.

DISCLOSURE MANDATORY FOR INDIVIDUAL WHO MAY BE ORDERED TO TESTIFY: providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or applicable Army or other federal regulations.

DISCLOSURE VOLUNTARY FOR INDIVIDUAL WARNED OF HIS RIGHTS UNDER ARTICLE 31, UCMJ, OR THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION: providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than essential information which might not otherwise be available to the commander for his decision in this matter.

ACKNOWLEDGMENT

I have read and been provided a copy of the Privacy Act Statement above and understand its contents.

11 APR 09
Date

(b)(3)(b)(6)

Social Security Number

**SWORN STATEMENT**
For use of this form, see AR 190-45; the proponent agency is PMG.

PRIVACY ACT STATEMENT

| AUTHORITY: | Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943  *(SSN)* |
|---|---|
| PRINCIPAL PURPOSE: | To provide commanders and law enforcement officials with means by which information may be accurately identified. |
| ROUTINE USES: | Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval. |
| DISCLOSURE: | Disclosure of your social security number is voluntary. |

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| FOB MAREZ, MOSUL IRAQ | 20090410 | 1606 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| (b)(3)(b)(6) | (b)(3)(b)(6) | (b)(3)(b)(6) |

8. ORGANIZATION OR ADDRESS

3 PLT D Co 1/67 AR

9.

I, _____ (b)(3)(b)(6) _____, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

ON THE MORNING OF 10 APRIL 2009, 3 PLATOON WAS SCHEDULED TO CONDUCT A DIS-
MOUNTED PATROL IN THE VICINITY OF AL BORSA AND RAS AL KROR NEIGHBORHOODS IN
ORDER TO FAMILIARIZE OURSELVES WITH A 3/8 LNKS AO IN SUPPORT OF OPERATION ASSASS-
IN RESOLVE ON 12 APRIL.

ALL VEHICLES WERE PREPPED AND STAGED IN FRONT OF THE A 3/8 CP WHERE SSG
HALL, THE PLATOON SERGEANT, AND I AS PLATOON LEADER CONDUCTED THE PATROL BRIEF.
BEING THE FIRST TIME OUR PLATOON HAD OPERATED IN THIS AO, WE CONDUCTED A SIGNIFICANTLY
LONGER BRIEF COVERING SIG ACT PATTERNS GOING BACK 30 DAYS. ONCE THE PLATOON
WAS SATISFACTORILY BRIEFED ON SIGACTS WE COVERED ESCALATION OF FORCE. I REITERATED
"IF YOU HAVE HOSTILE INTENT AND PID OF THE THREAT ENGAGE." RECALLING A PREVIOUS
PATROL WHERE WE DID NOT ENGAGE SOMEONE DUE TO LACK OF PID, I EMPASIZED "PID, PID, PID."
COMPLETING THE BRIEF, MY PLATOON SP'D EXACTLY AT 1000 CONSISTING OF FIVE VEHICLES
AND THE FOLLOWING PERSONNEL: (b)(3)(b)(6)   (b)(3)(b)(6)   (b)(3)(b)(6)   (b)(3)(b)(6)   (b)(3)(b)(6)
(b)(3)(b)(6)   (b)(3)(b)(6)
(b)(3)(b)(6)   , SSG HALL, SSG WOODS, SGT FORREST, CPL PAUSICH, PVT GAUTIREZ, AND MYSELF.
AND THREE MEN WERE ALSO IN THE CONVOY IN THE THIRD VEHICLE, AN 1114,
OUR ROUTE TO AL BORSA WAS (b)(1)1.4a   ROAD WESTBOUND, NORTH ON (b)(1)1.4a   AND
LASTLY EAST ON RTE PORSCHE.
APPROXIMATELY 15 MINUTES PAST SP THE PATROL TOOK CONTACT. ABOUT 500 METERS EAST
OF THE (b)(1)1.4a   UTILITY CHECKPOINT I HEARD SMALL ARMS FIRE. I TOOK NOTE NOTICE THAT
THE NATIONAL POLICE CHECKPOINT WAS FIRING IN OUR DIRECTION AND THE OFFICERS AROUND
US ON THE ROAD WERE TAKING COVER. AT THIS TIME I SAW A RED DUMP TRUCK WITH
A GRAY CAB AND WHAT I NOW UNDERSTAND WAS HME, PILED HIGH IN ITS 30 FOOT BOX,
HEADED IN MY VEHICLES DIRECTION. I GAVE THE COMM DT THIS POINT I

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT  (b)(3)(b)(6) | PAGE 1 OF  3  PAGES |
|---|---|---|

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.*

**DA FORM 2823, DEC 1998**          DA FORM 2823, JUL 72, IS OBSOLETE          APD PE v1 01

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF          (b)(3)(b)(6)          TAKEN AT  FOB MAREZ, MOSUL IRAQ  DATED  2009 04 11

9. STATEMENT *(Continued)*

DETERMINED THE DUMP TRUCK WAS A DIRECT THREAT TO MY MEN- I CALLED OVER THE PLATOON NET TO STOP THE TRUCK AND GAVE MY GUNNER, (b)(3)(b)(6) THE ORDER TO FIRE UPON THE DUMP TRUCK TO OUR 11 o'CLOCK. I HEARD MY LEAD VEHICLE'S ~~ENGAGE~~, FOLLOW GUNNER, (b)(3), (b)(6) ENGAGE, FOLLOWED A SPLIT SECOND AFTER BY MY GUNNER, AS THE TRUCK MOVED TO THE LEFT OF MY PATROL, I HEARD      (b)(3)(b)(6)      GUNNER, AS THE TRUCK MOVED TO GUNNER    (b)(3)(b)(6)    THE DUMP TRUCK CONTINUED BY US. GUNNER ENGAGE, FOLLOWED BY THE 41 I NOTICED THE DRIVE WAS WEARING A BLUE DIGITAL CAMO IRAQI POLICE UNIFORM WITH ONE STAR ON HIS EPPAULTTE. I PASSED THIS CRITICAL INFO UP THE CHAIN OF COMMAND ASAP. WHEN MY TRAIL VEHICLE HAD A CLEAR SHOT      (b)(3)(b)(6)      ENGAGED WITH MY PLATOON'S ONE M2 MACHINE GUN - ALL OTHERS BEING M240's. AFTER WHAT SEEMED LIKE 20 ROUNDS OF .50 CALIBER FIRE, I HEARD, ~~THE~~ AND FELT, THE DUMP TRUCK VBIED BLOW UP,

STILL IN THE DUST CLOUD I YELLED TO MY VEHICLE'S OCCUPANTS IF EVERYONE WAS OKAY. SEEING      (b)(3)(b)(6)      ON THE FLOOR AND HEARING HIS CRIES I YELLED TO (b)(3)(b)(6)      TO GET UP IN THE 240. I NOW CALLED FOR A STATUS OF ALL MY VEHICLES OVER THE NET. I NOW TOLD      (b)(3)(b)(6)      MY RTO, TO GET      (b)(3)(b)(6)      ON A BENCH IN THE BACK. MY NEXT ACTIONS WERE TO CALM MY PANICKING DRIVER. ONCE HE WAS WAS STABLE I ORDERED HIM TO TURN AROUND SO WE COULD PULL REAR SECURITY AND DISMOUNT. WHILE LIMPING MY DISABLED VEHICLE WITH FLAT TIRES TO THE REAR OF THE CONVOY I TOLD MY LEAD TRUCK TO SEAL OF THE ROAD AHEAD WHEN THE IMMEDIATE PERIMETER WAS SECURE WE DISMOUNTED THE PLATOON. ON THE GROUND I SAW      (b)(3)(b)(6)      IMMEDIATLY MOVE HIS SQUAD TO PROVIDE SECURITY AND HELP THE WOUNDED DESPITE THIER DAZED STATE. KNOWING WE WERE IN CONTROL OF THE SITE I MOVED WITH MY RTO,      (b)(3)(b)(6)    MY TERP, AND ANY MEN I COULD FIND TO MY PSG'S TRUCK. AS I ARRIVED TO THE FLIPPED BURNING VEHICLE (b)(2)High FROM 3/8 ARRIVED AS WELL. I HEARD SOMEONE YELL "THERE'S A MAN IN THE BACK!" I GRABBED ONTO DOC (b)(3)(b)(6) PULL STRAP AS SEVERAL OTHER'S HELPED GET HIM, STILL ALIVE BUT IN SHOCK, FROM THE VEHICLE. ONCE HE WAS OUT OF THE TRUCK I BACKED EVERYONE AWAY KNOWING THE VBI WOULD COOK OFF. I HEARD MEN SHOUTING THERE WERE BODIES ON THE SOUTH SIDE OF THE ROAD.
~~AT THIS POINT~~ THE EXPLOSION HAD TORE THE ROOF OF THE MRAP OPEN AND FLIPPED IT ONTO THE TC'S SIDE. THE DOOR'S WERE ALSO BOTH BEEN BLOWN OFF. WE ALSO HAD ACCOUNTABILITY OF ALL PAX AT THIS TIME EXCEPT THE PSG's TRUCK. I MOVED WITH MY

INITIALS OF PERSON MAKING STATEMENT
                          (b)(3)(b)(6)                                                    PAGE  2  OF  3  PAGES

PAGE 2, DA FORM 2823, DEC 1998                                                                      APD PE v1.01

STATEMENT OF _____ (b)(3)(b)(6) _____ TAKEN AT FOB MAREZ, MOSUL IRAQ DATED 2009 04/11

9. STATEMENT *(Continued)* TERP AND RTO TO CHECK THE BODIES AS AMMO BEGAN TO COOK OFF. I PERSONALLY ID'D SSG HALL, SGT FORREST, AND CPL PAUSTCH LEAVING THE WHEREABOUTS OF SSG WOODS UN- KNOWN. ONCE THE AMMO HAD COOKED OFF WE HIT THE TRUCK WITH FIRE EXTINGUISHERS. WHILE PUTTING OUT THE FIRE, I MOVED AWAY FROM THE TRUCK AND AIDED                    (b)(3)(b)(6) AND 3/8 QRF MOVE A BODYBAG TO A NEARBY BRADLEY.

THE FIRE, FINALLY EXTINGUISHED, ALLOWED (b)(2)High TO GET SSG WOODS' BODY OUT OF THE TRUCK. WE NOW HAD FULL ACCOUNTABILITY AND SECURITY SO I TURNED MY MEN TO RECOVERING SENSITIVE ITEMS. AT THIS TIME THE 3/8 BC AND        (b)(3)(b)(6)      CALLED ME OVER TO ASSESS THE SITUATION. THEY SATISFIED, THEY TOLD ME TO TAKE MY PLT BACK TO THE FOB. UPON ARRIVAL AT THE A 3/8 CP I ADDRESSED MY MEN ON WHAT HAD TRANSPIRED THIS DAY. MY NEXT ACTIONS WERE TO GET MY MEN MADE SCREENED AT THE 1/67 AID STATION AND BEGIN THEIR GETTING THEM TO HELP. MY LAST ACTIONS OF THE DAY (b)(3)(b)(6) WERE TO MOVE THE SURVIVERS TO THE DIAMONDBACK CASH TO CHECK THE STATUS OF

(b)(3)(b)(6) Question: Who was leading the rescue effort on the ground when you arrived? What IPs came to help your PLT? Who maintained control of your vehicles?

(b)(3)(b)(6) Answer: (b)(3)(b)(6) AND I LED THE RESCUE EFFORT WITH 3/8 (b)(1)1.4a MEMBERS ON THE SCENE. NATIONAL POLICE PROVIDED SECURITY AND WERE ATTEMPTING TO RESCUE THERE OWN MEN. I RECALL ONE IP HELPING PUT OUT THE FIRE ON SSG HALLS TRUCK.      (b)(3)(b)(6)    ASSUMED CONTROL OF THE VEHICLES UPON MY IMMEDIATE DISMOUNTING. WHEN I NEEDED HIS LEADERSHIP ON THE GROUND, (b)(3)(b)(6) STEPPED UP TO KEEP CONTROL OF MY LAST TWO OPERATIONAL TRUCKS. NOTHING FOLLOWS.

                  (b)(3)(b)(6)              (b)(3)(b)(6)          (b)(3)(b)(6)

**AFFIDAVIT**

I, ____ (b)(3)(b)(6) ____, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE _3_. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUE

                            (b)(3)(b)(6)
                                              ng Statement)

WITNESSES:                          Subscribed and sworn to before me, a person authorized by law to administer oaths, this  11  day of  APRIL  , 2009

        (b)(3)(b)(6)                      (b)(3)(b)(6)        ng Oath)

                                    (Typed Name of Person Administering Oath)
        B 6 1-67 AR                   AR 15-6
ORGANIZATION OR ADDRESS              (Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT
            (b)(3)(b)(6)                         PAGE 3 OF 3 PAGES

PRIVACY ACT STATEMENT
(5 U.S.C. 522a)

AUTHORITY: 5 U.S.C. 301 and 10 U.S.C. 3012

PURPOSE: The purpose of this solicitation is to gather facts and make recommendations to assist the appropriate authorities in determining what action to take with regard to allegations of



ROUTINE USES: Any information you provide is disclosable to members of the Department of Defense who have a need for the information in performance of their official duties, and where use of such information is compatible with the purpose for which the information is collected. In addition, the information may be disclosed to Government agencies and persons outside the Department of Defense for law enforcement purposes, or if determined to be disclosable pursuant to a request submitted under the Freedom of Information Act, or if needed for Congressional or other Government Investigations.

DISCLOSURE MANDATORY FOR INDIVIDUAL WHO MAY BE ORDERED TO TESTIFY: providing the information is mandatory. Failure to provide information could result in disciplinary or other adverse action against you under the UCMJ or applicable Army or other federal regulations.

DISCLOSURE VOLUNTARY FOR INDIVIDUAL WARNED OF HIS RIGHTS UNDER ARTICLE 31, UCMJ, OR THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION: providing the information is voluntary. There will be no adverse effect on you for not furnishing the information other than essential information which might not otherwise be available to the commander for his decision in this matter.

ACKNOWLEDGMENT

I have read and been provided a copy of the Privacy Act Statement above and understand its contents.

12 APR 09
Date

(b)(3)(b)(6)

Social Security Number

| SWORN STATEMENT | | | |
|---|---|---|---|
| For use of this form, see AR 190-45; the proponent agency is PMG. | | | |

**PRIVACY ACT STATEMENT**

| AUTHORITY: | Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943  *(SSN)* . |
|---|---|
| PRINCIPAL PURPOSE: | To provide commanders and law enforcement officials with means by which information may be accurately identified. |
| ROUTINE USES: | Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval. |
| DISCLOSURE: | Disclosure of your social security number is voluntary. |

| 1. LOCATION | 2. DATE  *(YYYYMMDD)* | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| FOB MAREZ, APO AE 09334 | 2009/04/10 | 2200 | |
| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | | 7. GRADE/STATUS |
| (b)(3)(b)(6) | (b)(3)(b)(6) | | (b)(3)(b)(6) |

| 8. ORGANIZATION OR ADDRESS |
|---|
| A Co 3-8 Cav, 3 HBCT, MND-N |

9.

I,    (b)(3)(b)(6)                                                   , WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

I am the Company Commander for Alpha Company, 3-8 CAV, 3HBCT, 1CD (25th ID, MND-N). I was the Truck Commander for A6, an M1151 HMMWV with a  (b)(1)1.4a  and a M-240B. It was crewed by my Driver,    (b)(3)(b)(6)   13F), my gunner was    (b)(3)(b)(6)   11B), and my Left Rear Seat PSO was    (b)(3)(b)(6)   11B), and in the right seat was my interpreter "JACK" for the VBIED attack vicinity  (b)(3)(b)(6)

3rd Platoon Delta Company 1-67 AR was OPCON'ed to A Co, 3-8 CAV for the duration of OPERATION X. I referred to them as my Green platoon.

I informed (b)(3)(b)(6) of his mission for the 10th of April, an AO familiarization of the Borsa Market, Ras Al Koor and Bab Al Toob at 092100APR09. (b)(3)(b)(6) conducted a Backbrief of the order to me at 100900APR09. He then completed his troop leading procedures and we moved out the gate to Test fire at 1010APR09. We moved as a combined convoy with a 2 MRAP section, my HMMWV, A6, and then a 2 MRAP Section. We test fired all crew served weapons and ensured the CREW systems were on and my doors were combat locked. We then moved West on    (b)(1)1.4a  towards Baghdad Traffic Circle (the intersection of    (b)(1)1.4a   and    (b)(1)1.4a  . I was talking to Green one  (b)(2)High ) on my command net about the possible locations of VBIEDs that were anticipated later that day at Yarmouk or Baghdad Traffic circles. I told him that we received many reports like this during an average week, with very few actually occurring.

The SVBIED was a red and grey dump truck moving east on  (b)(2)High  After turning onto  (b)(2)High  from  (b)(2)High  the SVBIED bypassed the NP checkpoint by ramming the gap between the National Police Vehicle and the HESCO basket barriers and moved toward COP Eagle. NPs at the checkpoint engaged the SVBIED with AK-47s. This sounded like shots were being fired at us, and I called up "Contact" to Assassin Main. As the SVBIED approached the CF convoy the A6 gunner,  (b)(3)(b)(6)  engaged the vehicle with the M240 machine gun, damaging the truck. The SVBIED passed alongside the CF convoy, directly to the south. The SVBIED swung behind my truck and turned north, between the third and fourth vehicles in the order of movement and detonated against National Police headquarters after being engaged by the .50 caliber machine gun. The detonation shook our HMMWV and knocked my head against the door panel, giving me a bit of whiplash and twisting my back. The entire view out of the front of my HMMWV was obscured by grayish smoke, dust and debris.  (b)(3)(b)(6)  and I both immediately called for a crew report, and everyone said that they were OK. I dismounted the vehicle to survey the site, and I called Assassin Main and stated that we had a large explosion 200 meters east of Baghdad Traffic circle. I was unable to call Battalion because my other radio went dead with a beeping side-tone. I went to see where most of the damage was, and saw that there was a burning vehicle on the South side of the Road, as well as smoke billowing from behind the National Police headquarters building. I checked with Green one as to the status of his casualties, and contacted Assassin White platoon, who were less than ten minutes away, preparing to leave for a mission from FOB MAREZ.  (b)(3)(b)(6)  used a piece of metal bar to help to free a wounded National Police Shurta (policeman) that was trapped in a crushed Ford F350 pickup  (b)(3)(b)(6)  went to look for his other MRAP, and I determined that it was the hulk that was burning; we had not thought that was the MRAP. The top of the vehicle had been blown off and it was lying with the top facing to the South. There were a significant number of rounds cooking off, and we called for someone to bring over fire extinguishers.

One Iraqi soldier used a handheld fire extinguisher to try and put out the flame, but the fire was too big and being fed by the fuel and the tires, which were burning. We tried to extinguish the flames, but they spread too quickly. The ammo inside was cooking off at a fairly steady rate, but the MRAP shielded most of the people from the spall due to its location. I went to the other side of the dirt earthworks to look for survivors and determined that the three people that were ejected from the top of the MRAP were dead.  (b)(3)(b)(6)  the violent ejection from the MRAP, one at least 10-12 meters from the final resting place of the MRAP. I did not find a pulse in any of them, and my  (b)(3)(b)(6)   (b)(3)(b)(6)  The heat from the MRAP was significant. It was after that that I remember White platoon showing up  we started to recover some of the bodies, and I remember someone calling out that a man inside the MRAP was still alive.

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | | |
|---|---|---|---|
| | (b)(3)(b)(6) | PAGE 1 OF | 3    PAGES |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED*

**DA FORM 2823, DEC 1998**       DA FORM 2823, JUL 72, IS OBSOLETE       APD PE v1.01

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

| TATEMENT OF | (b)(3)(b)(6) | TAKEN AT | FOB MAREZ | DATED | 2009/04/10 |
| --- | --- | --- | --- | --- | --- |

9. STATEMENT (Continued)

    (b)(3)(b)(6)   and (b)(3)(b)(6) all went into the burning MRAP to try and remove the man from the flames. They had to try 2 times to move the body out, and were inside the vehicle for about 3 minutes. The volume of fire from the exploding rounds was near continuous, with distinctive .50 caliber and 5.56 rounds detonating. I saw (b)(3)(b)(6) disregarding his own safety; reenter the vehicle after the man a second time. He called out for someone to help him. (b)(3)(b)(6) and (b)(3)(b)(6) again went back to help pull the man out. The man looked as if he had (b)(3)(b)(6) I helped to grab the litter and pull on him to get him out at the top of the berm. The machinegun rounds and grenades cooking off and the fire still in the front of the vehicle precluded us from attempting to get out the last 2 people, but they were both obviously dead.

Some other Assassin elements were able to CASEVAC the wounded, and I sent my crew back to FOB MAREZ to get checked out, as we took a significant blast. Warhorse 6 and Warhorse 9 were on the scene, and I briefed them on what had happened. I had (b)(3)(b)(6) from white platoon call for recovery assets and a flatrack. We had to take cover from exploding grenades and M203 rounds in addition to countless rifle and machinegun rounds cooking off. Both Red and Blue platoons showed up, as well as Bulldog 6 (b)(3)(b)(6) and I had them cordon off the area and reinforce the Baghdad traffic circle checkpoint. After the fire department extinguished the hulk, I grabbed a (b)(3)(b)(6) and placed the body with Corporal rank in the bag with some help of (b)(3)(b)(6) removed the last of (b)(3)(b)(6)

White platoon began the recovery of the vehicle and collected as many sensitive items as we could account for with the support of some blue soldiers. Fox Company arrived and with the help of my mechanics M88, we were able to recover the MRAP on a HET and the remaining equipment on a flat-rack. All elements were clear around 1500.

I talked with WHIT, EOD, Warhorse 6 and Greywolf 6. (b)(3)(b)(6) reported that the driver was wearing a blue IP uniform with 2LT rank (one gold star). The truck had a red dump body and a charcoal grey cab. The crater was 55ft x 53ft x 11ft deep and the dump truck was believed to be full of 5-6 tons of UBE that (b)(3)(b)(6) reported was white like rice. COP Eagle suffered blast damage to buildings and vehicles. Iraqi Army EOD was able to take care of the remaining M203 grenades after EOD left. The total BDA was as follows: 5 x CF KIA, 2 x CF WIA (1 routine, 1 urgent surgical), 1 x NP KIA, 1 x IA KIA, 20 x NP WIA, 1 x MRAP destroyed, 6x M1114 and 4xF350 ISF Vehicles destroyed,1x civilian ambulance destroyed, 2x 5000 gal fuel tankers destroyed, 2x collapsed buildings, 1xEKIA

After returning to base, I was checked out by the Battalion Aid Station. It was not until I took off my boot that I realized I was hit with some shrapnel on the inside of my right calf.

    (b)(3)(b)(6)   and   (b)(3)(b)(6)   all went into the burning MRAP at without regards to their personal safety. There was a significant amount of smoke and heat, and there were rounds cooking off all around them. Each one of them knew of the possibility of the grenades and M203 rounds oking off as they worked to save the trapped soldier. Their personal courage and selfless service were simply outstanding. They knew what they had to do to try .d help, and they executed without hesitation.

    END OF STATEMENT   (b)(3)(b)(6)

(b)(3)(b)(6)

| INITIALS OF PERSON MAKING STATEMENT | (b)(3)(b)(6) | PAGE | 2 | OF | 3 | PAGES |
| --- | --- | --- | --- | --- | --- | --- |

PAGE 2, DA FORM 2823, DEC 1998

APD PE v1.01

STATEMENT OF       (b)(3)(b)(6)       TAKEN AT  FOB MAROH   DATED  2009/04/10

STATEMENT   (Continued)

(b)(3)(b)(6)

Not used

(b)(3)(b)(6)

(b)(3)(b)(6)

(b)(3)(b)(6)

AFFIDAVIT

I,       (b)(3)(b)(6)       HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT
WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE  3  . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE
BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT
THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWF

(b)(3)(b)(6)

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to
administer oaths, this  10th  day of  APRIL   2009
at  FOB MAROH

(b)(3)(b)(6)

(b)(3)(b)(6)                              'h)

(Typed Name of Person Administering Oath)

A Co 3-8 CAV 1CD  FOB MAROH  APO AE 09334        1 LT, USA
ORGANIZATION OR ADDRESS                    (Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT
                      (b)(3)(b)(6)                    PAGE 3  OF 3  PAGES

PAGE 3, DA FORM 2823, DEC 1998                                      APD PE v1.01

**SWORN STATEMENT**
For use of this form, see AR 190-45; the proponent agency is PMG.

**PRIVACY ACT STATEMENT**

| AUTHORITY: | Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 *(SSN)*. |
|---|---|
| PRINCIPAL PURPOSE: | To provide commanders and law enforcement officials with means by which information may be accurately identified. |
| ROUTINE USES: | Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval. |
| DISCLOSURE: | Disclosure of your social security number is voluntary. |

| 1. LOCATION | 2. DATE *(YYYYMMDD)* | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| Fob Marez, Iraq 09334 | 2009/04/10 | 2107 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| (b)(3)(b)(6) | (b)(3)(b)(6) | (b)(3)(b)(6) |

8. ORGANIZATION OR ADDRESS

D Co. 1-67 AR

9.

I, (b)(3)(b)(6) , WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

On April 10th, 2009 3rd platoon, Delta Company exited FOB MAREZ to conduct an area familiarization patrol with the commander of Alpha Company 3-8 CAV. The platoon personal were (b)(3)(b)(6). (b)(3)(b)(6) SSG Hall, SSG Woods, SGT Forrest, PVT Gautier, and CPL Pautsch. (b)(3)(b)(6) also had a HMMWV with his own personal manning it. At approximately 1000 the platoon exited Fob MAREZ and conducted a test fire with all mounted weapon systems. Then proceeded north on (b)(1)(1.4a) and moved towards (b)(2)High

Once we were approximately 500 meters from the checkpoint that controlled (b)(2)High and (b)(2)High a large dump truck had just come around the bend in our direction. The dump truck was red with a charcoal colored cab. The dump bed was about 30 feet long and 15 feet tall, it was completely full with some rice like material. I noticed that two IA personal on the ground were getting down behind cover and soon realized that the checkpoint was engaging the dump truck as it was driving towards us. The lead vehicle used escalation of force by using hand and arm signals, and sirens. Right away the dump truck was on the side of the convoy when the escalation of force was raised. The number 2 truck, controlled by (b)(3)(b)(6) opened fire with their machine gun. (b)(3)(b)(6) was the gunner and engaged as the truck passed by them. (b)(3)(b)(6) and (b)(3)(b)(6) vehicles all engaged the dump truck as it veered off the road to the right and rolled to a stop as it hit a concrete wall. (b)(3)(b)(6) and SGT Forrest accurately engaged the cab of the vehicle once identified as a threat. The driver of the dump truck was wearing an IP uniform with 2LT rank on the shoulder. He ignored all signs and warnings to stop. Once the vehicle was effectively engaged, it was stopped by the concrete wall on the side of the IA compound and exploded. The explosion created a 55 foot wide and 11 foot deep crater and rolled over the 4 vehicle, controlled by SSG Hall. The blast opened the MRAP at the roof as it rolled over and ejected 3 personal. SSG Hall, SGT Forrest, and CPL Pautsch were all ejected from the vehicle approximately 30 meters. SSG Woods and PVT Gautier remained in the vehicle.

The platoon halted and secured the area. Once (b)(1)(1.4a) was received from each vehicle I assessed the situation and got accountability. It was then we realized that SSG Hall, SSG Woods, SGT Forrest, CPL Pautsch, and PVT Gautier were all KIA. (b)(3)(b)(6) took a piece of shrapnel in his side, and (b)(3)(b)(6) received debris in his face. Another convoy from 3-8 CAV arrived at this time and helped secure the area. We then proceeded to police up the bodies from the catastrophic kill. Once security and personal accountability was confirmed, the platoon the started the recovery of equipment and sensitive items that were blown all over the area. The turret was blasted about 150 meters from the truck, the .50 caliber machine gun was approximately 250 meters away. In between these items was all the equipment that was once inside the 5 vehicle.

All the vehicles in the convoy were damaged by the VBIED. All personal were affected by the blast and the debris in the air. The platoon still maintained situational awareness, dismounted and did everything they could to help their fellow soldiers.

------------------------------------------------------------NOTHING FOLLOWS------------------------------------------------------------

(b)(3)(b)(6)

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | | PAGE 1 OF | 2 | PAGES |
|---|---|---|---|---|---|
| | (b)(3)(b)(6) | | | | |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ T _____ DATED _____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.*

**DA FORM 2823, DEC 1998**    DA FORM 2823, JUL 72, IS OBSOLETE    APD PE v1.01

STATEMENT OF      (b)(3)(b)(6)                 TAKEN AT  Fob Marez, Iraq        DATED  2009/04/10

9. STATEMENT    *(Continued)*

(b)(3)(b)(6)

**AFFIDAVIT**

I,      (b)(3)(b)(6)                      , HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT
WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE ___1___ . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE
BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT
THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UN

(b)(3)(b)(6)

*(Signature of Person Making Statement)*

WITNESSES

Subscribed and sworn to before me, a person authorized by law to
administer oaths, this ___10___ day of __April__ · 2009
at  C n R   M  T

(b)(3)(b)(6)

(b)(3)(b)(6)                    *tering Oath)*

*(Typed Name of Person Administering Oath)*

D CO 163 715                   Executive Officer
ORGANIZATION OR ADDRESS              *(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT   (b)(3)(b)(6)              | PAGE 2 | OF 2 | PAGES

*PAGE 3, DA FORM 2823, DEC 1998*                                      APD PE v1.01

Pages 37 through 60 redacted for the following reasons:
- - - - - - - - - - - - - - - - - - - - - -
(b)(1)1.4a

## SWORN STATEMENT
For use of this form, see AR 190-45; the proponent agency is PMG.

### PRIVACY ACT STATEMENT

| | |
|---|---|
| AUTHORITY: | Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 *(SSN)*. |
| PRINCIPAL PURPOSE: | To provide commanders and law enforcement officials with means by which information may be accurately identified. |
| ROUTINE USES: | Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval. |
| DISCLOSURE: | Disclosure of your social security number is voluntary. |

| 1. LOCATION | 2. DATE *(YYYYMMDD)* | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| FOB MAREZ, MOSUL IRAQ | 2009/04/11 | 1230 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| (b)(3)(b)(6) | (b)(3)(b)(6) | (b)(3)(b)(6) |

8. ORGANIZATION OR ADDRESS
A.CO 3-8 CAV 1 CD, 3BCT, FOB MAREZ, MOSUL IRAQ APO AE 09334

9.
I (b)(3)(b)(6) , WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH

ON ABOUT 1030, 10 APRIL 09, COMING OUT OF (b)(2)High OUR CONVOY HAD JUST FINISHED TEST FIRING THE WEAPONS, WE STARTED TO MOVE DOWN (b)(2)High WHEN WE HEARD AN EXPLOSION. OUR PL TOLD US TO TURN AND GO TOWARDS THE SMOKE. THERE WE SAW A MILITARY CONVOY WAS HIT BY A VBIED AND IT WAS ON FIRE. RIGHT AWAY MY PLATOON DISMOUNTED AND RAN TO THE VEHICLE. PEOPLE WERE YELLING TO GET DOWN BECAUSE ROUNDS WERE COOKING OFF INSIDE THE VEHICLE (b)(3)(b)(6) SAID THAT HE THOUGHT HE SAW SOMEONE MOVING INSIDE. THEN (b)(3)(b)(6) SAID GET IN THERE THEN. THEY BOTH JUMPED INTO THE MRAP AND SAW THE GUY UNDERNEATH PIECES OF THE MRAP. THEY YELLED FOR PEOPLE TO HELP. (b)(3)(b)(6) CAME FROM THE OTHERSIDE OF THE MRAP AND ENTERED ALSO. THE THREE OF THEM WERE PULLING THE CASUALTY OUT WHEN THERE WAS A LARGER EXPLOSION POSSIBLY AN M203 ROUND. (b)(3)(b)(6) AND (b)(3)(b)(6) DROPED THE BODY. (b)(3)(b)(6) YELLED AT THEM AND THEN THEY CONTINUED TO PULL HIM OUT BUT YOU COULD TELL IT WAS HARD TO CARRY HIM. I WOULD HAVE JUMPED IN BUT THERE WAS NO ROOM FOR ANYONE ELSE IN THE MRAP. ONCE THEY WERE OUT OF THE MRAP THEY GOT STUCK IN THE CONSTINA WIRE AND KEPT SLIDING DOWN THE HILL WITH THE BODY. THE FIRE IN THE MRAP WAS GETTING BIGGER AND CLOSER TO THEM. ONCE THEY GOT HIM OUT ON TO THE SIDE OF THE BY BURM WHERE EVERYONE WAS THEY CALLED FOR US TO COME OVER. (b)(3)(b)(6) TOLD US IN HIS SQUAD TO HELP OUT AND GRAB HIM. AROUND THAT TIME A MEDIC CAME UP AND WAS CHECKING HIS VITALS AS WE WERE GETTING READY TO PUT HIM ON A STRETCHER. THE MEDIC PRONOUNCED HIM DEAD. WE STILL LOADED HIM ONTO ONE OF THE NEARBY MRAPS AND THEY LEFT FOR THE CSH. THEN (b)(3)(b)(6) TOLD US TO GET THE OTHER TWO BODY'S THAT WERE IN THE FIELD AWAY FROM THE MRAP. I GOT A BODY BAG WITH (b)(3)(b)(6) AND (b)(3)(b)(6) WE LOADED THE BODIES INTO THE BODY BAGS WITH THEIR SENSITIVE ITEMS AND PUT THEM IN THE BACK OF A BRADLEY. (b)(3)(b)(6) AND (b)(3)(b)(6) WENT WITH THE BODY ONCE THE FIRE DEPERTMENT CAME AND PUT OUT THE FIRE ON THE MRAP (b)(3)(b)(6) AND HIS SQUAD WENT IN AND RETRIEVED THE DRIVER OR TC. WHO HAD BEEN IN THE CAB OF THE MRAP WHEN WE GOT THERE AND WAS ON FIRE. ONCE WE DID THAT THEY PUT THE MRAP ON THE BACK OF TRUCKS AND I HELPED CLEAN UP THE DEBRIS. AFTER TAHT WE GAVE THE THUMBS UP THE (b)(3)(b)(6) THAT HE HAD ALL OUR SENSITIVE ITEMS, LOADED BACK UP IN OUR VEHICLE AND RTB BACK TO FOB MAREZ. THIS COMPLETES MY STATEMENT AND NOTHING FOLLOWS.

(b)(3)(b)(6)

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT (b)(3)(b)(6) | PAGE 1 OF 3 PAGES |
|---|---|---|

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.

DA FORM 2823, DEC 1998      DA FORM 2823, JUL 72, IS OBSOLETE      APD PE v1.01

_

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

ATEMENT OF    (b)(3)(b)(6) _____    TAKEN AT  FOB MAREZ _____    DATED  2009/04/11

9. STATEMENT  *(Continued)*



INITIALS OF PERSON MAKING STATEMENT

(b)(3)(b)(6)

PAGE  2  OF  3  PAGES

PAGE 2, DA FORM 2823, DEC 1998

APD PE v1.01

STATEMENT OF    (b)(3)(b)(6) _____    TAKEN AT  FOB MAREZ    DATED  2009/04/11

STATEMENT    (Continued)

**AFFIDAVIT**

I, (b)(3)(b)(6) _____, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT
WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE __3__. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE
BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT
THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR U

(b)(3)(b)(6)

Subscribed and sworn to before me, a person authorized by law to
administer oaths, this __11__ day of __APRIL__, 2009
at  _4 /  2-8 / A / _ ? P_

(b)(3)(b)(6)

(b)(3)(b)(6)

(Typed Name of Person Administering Oath)

A Co  3/8  (1AU , ICV

ORGANIZATION OR ADDRESS

1 LT  USA

(Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT

(b)(3)(b)(6)

PAGE  3  OF  3  PAGES

*PAGE 3, DA FORM 2823, DEC 1998*

APD PE v1.01

**SWORN STATEMENT**
For use of this form, see AR 190-45; the proponent agency is PMG.

**PRIVACY ACT STATEMENT**

AUTHORITY:          Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943  (SSN)
PRINCIPAL PURPOSE:  To provide commanders and law enforcement officials with means by which information may be accurately identified.
ROUTINE USES:       Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval.
DISCLOSURE:         Disclosure of your social security number is voluntary.

| 1. LOCATION | 2. DATE  (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| FOB MAREZ, MOSUL IRAQ | 2009/04/11 | 1030 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| (b)(3)(b)(6) | (b)(3)(b)(6) | (b)(3)(b)(6) |

8. ORGANIZATION OR ADDRESS

A CO / 3-8 CAV / 1CD / 3BCT / FOB MAREZ, MOSUL IRAQ APO AE 09334

9.
(b)(3)(b)(6)
, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

I AM THE PLATOON LEADER FOR 2ND PLATOON, A CO, 3-8 CAV, 3 HBCT, 1 CD (25 ID, MND-N). I WAS THE TRUCK
COMMANDER FOR 21M, AND MRAP WITH A CVRJ SYSTEM AND A M2 .50 CAL. IT WAS GUNNED BY  (b)(3)(b)(6)  (11B),
DRIVEN BY  (b)(3)(b)(6)  (11B) AND THE FOLLOWING DISMOUNTS:  (b)(3)(b)(6) : (11B).  (b)(3)(b)(6)  (11B), AND MY
INTERPRETER (b)(3)(b)(6) FOR THE MEDIVAC AND RECOVERY OF THE VBEID ATTACK;  (b)(3)

AT 1030 10 April 2009 MY PLATOON SP FROM FOB MAREZ WITH 3 MRAPS TO CONDUCT A RIP/AREA RECON WITH CHAOS
WHITE OF OUR AO; THE ZINJALLI NEIGHBORHOOD. AS WE WERE EXITING THE TEST FIRE PIT I HEARD RADIO TRAFFIC THAT
ASSASSIN 6 WAS IN CONTACT AND ENGAGING THE TARGETS ON  (b)(1)1.4a  A SECOND LATER WE HEARD THE
EXPLOSION. I TOLD MY SECTION SERGEANT  (b)(3)(b)(6)  TO TURN AND HEAD TOWARDS THE SMOKE. WHEN WE ARRIVED
WE WERE BLOCKED BY ANOTHER MRAP. I DISMOUNTED THE SOLDIERS. WHILE DISMOUNTED AND RUNNING TOWARDS
THE KNOCKED OVER MRAP SOMEONE YELLED FOR A MEDIC. AT THAT TIME MY PLATOON SERGEANT,  (b)(3)(b)(6)  RAN
TO THE CASUALTY WITH  (b)(3)(b)(6)  AND  (b)(3)(b)(6)  THEY TREATED AND BROUGHT THE CASUALTY
TO THE CSH. DURING THAT TIME I WAS RUNNING TOWARDS THE TIPPED OVER MRAP. I REALIZED IT WAS ON FIRE. THE
PREVIOUS SMOKE WE HAD SEEN WAS FROM MULTIPLE NATIONAL POLICE VEHICLES IN FLAMES ACROSS THE STREET IN
COP EAGLE/LOBO. ASSASSIN 6 TOLD ME THERE WERE 3 CF KIA AND POINTED WEST TO THEIR LOCATION. HE SAID HE AND
(b)(3)(b)(6)  HAD CHECKED THEM AND THEY WERE KIA.  (b)(3)(b)(6)  WHOM WAS ATTACHED TO US AND THE PLATOON
LEADER THAT WAS ATTACKED, TOLD ME THAT THERE WERE STILL SOLDIERS IN THE MRAP BUT THAT ROUNDS WERE
COOKING OFF IN THE VEHICLE AND THEY COULDN'T GET TO THEM. AT THAT POINT WE CONTINUED UP TO THE MRAP TO
SEE WHAT WE COULD DO.

(b)(3)(b)(6)  SAW WHAT COULD HAVE BEEN A BODY IN THE MRAP. HE JUMPED IN TO MRAP WITHOUT ANY REGARD FOR
HIS OWN SAFETY AND BEGAN TO UNCOVER THE BODY. I FOLLOWED HIM IN. WE CLEARED THE BODY OF MRAP PARTS AND
BII. I CALLED FOR HELP AND  (b)(3)(b)(6)  CAME FROM THE OTHER SIDE OF THE MRAP, JUMPED IN AND BEGAN TO HELP
OUT. IT WAS INCREDIBLY DIFFICULT TO CARRY THE BODY OUT BECAUSE  (b)(3)(b)(6)  AND WE COULDN'T GET
A GOOD FOOT HOLD ON THE MRAP AS IT WAS ON ITS SIDE. ONCE WE WERE OUT OF THE MRAP WE WERE TRYING TO GET
THE CASUALTY UP THE HILL AS FAST AS WE COULD BECAUSE 203 ROUNDS BEGAN TO COOK OFF AND THE FIRE WAS
GROWING. THEN WE GOT CAUGHT UP IN CONSTANTINE WIRE  (b)(3)(b)(6) AND  (b)(3)(b)(6)  JUMPED OVER THE HILL
AND BEGAN TO HELP US RECOVER HIM. ONCE WE GOT HIM UP ON THE OTHER SIDE OF THE HILL  (b)(3)(b)(6)  WAS GIVEN
A TOURNIQUET BY  (b)(3)(b)(6)  HE WAS APPLYING THE TOURNIQUET WHEN A MEDIC CAME OVER, CHECKED HIS VITALS
AND IDENTIFIED HIM AS A KIA. THE STRETCHER WAS ALREADY SET UP SO WE LOADED HIM ON THAT AND THE SOLDIERS,
MINUS MYSELF BROUGHT HIM TO THE MRAP.

FOLLOWING THAT MY SOLDIERS RECOVERED THE TWO OTHER BODIES THAT HAD BEEN EJECTED FROM THE MRAP INTO
BODY BAGS AND INTO ASSASSIN BLUE'S BRADLEY. THEY BROUGHT HIM TO THE CSH. ASSASSIN 6 TOLD ME TO RECOVER
ALL SENSITIVE ITEMS AND  (b)(3)(b)(6)  I SENT MY GUYS TO DO THAT AND HAD A TEAM PREP FOR THE RECOVERY OF
(b)(3)(b)(6)  ONCE THE FIRE DEPARTMENT EXTINGUISHED THE MRA (b)(3)(b)(6)
(b)(3)(b)(6)  PUT THE BODY INTO THE BODY BAG AND BROUGHT IT TO ANOTHER MRAP CLOSE
BY. ONCE THAT WAS COMPLETED THAT CASUALTY ALSO WENT TO THE CSH.  (b)(3)(b)(6)  THEN BROKE HIS SQUAD UP
INTO TWO TEAMS THAT RECOVERED ALL SENSITIVE ITEMS AND  (b)(3)(b)(6)

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT  (b)(3)(b)(6) | PAGE 1 OF | 3 | PAGES |
|---|---|---|---|---|

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER
MUST BE BE INDICATED.

**DA FORM 2823, DEC 1998**          DA FORM 2823, JUL 72, IS OBSOLETE          APD PE v1 01

ATEMENT OF  (b)(3)(b)(6)          TAKEN AT  FOB MAREZ      DATED  2009/04/11

9.  STATEMENT  *(Continued)*

THEN EOD ARRIVED, THEY DID THEY'RE INVESTIGATION WITH ASSASSIN 6 AND WARHORSE 6. THEY INTERVIEWED THE MEN AT THE GATES AND ALL OTHER WITNESSES.  (b)(3)(b)(6)  CAME UP TO  (b)(3)(b)(6)  AND I, THEN TOLD US THAT THERE WAS A NATIONAL POLICE SOLDIER VIDEO TAPING THE WHOLE THING.  (b)(3)(b)(6)  TOLD ME TO GO FIND HIM. I FOUND HIM AND BROUGHT IT TO  (b)(3)(b)(6)  ATTENTION. HE TOOK CARE OF HIM AND THE VIDEO CAMERA.  (b)(3)(b)(6)  THEN TOLD ME TO BEGIN COORDINATING FOR RECOVERY  (b)(3)(b)(6)  AND (b)(3)(b)(6) COORDINATED AND BEGAN THE RECOVERY. BLUE PLATOON, PSD PLATOON AND MY PLATOON MADE SEPARATE PILES FOR SENSITIVE ITEMS AND MRAP PIECES. THEN RECOVERED AND CLEANED UP. UPON COMPLETION OF THAT  (b)(3)(b)(6)  TOLD US TO HEAD BACK TO THE FOB AND MAKE SURE MY SOLDIERS MET WITH THE CHAPLAIN.

(b)(3)(b)(6)  AND  (b)(3)(b)(6)  CONTINUED TO GET THE CASUALTY OUT OF THE MRAP DESPITE THE GROWING FIRE AND CONTINUOUS ROUNDS COOKING OFF.  (b)(3)(b)(6)  SHOWED INCREDIBLY PROFESSIONALISM IN RECOVERING  (b)(3)(b)(6)  AND (b)(3)(b)(6) (b)(3)(b)(6) KEPT THE ENTIRE RECOVERY PROCESS GOING. THESE SOLDIERS KNEW WHAT JOB THEY HAD AND COMPLETED IT DESPITE ALL OBSTACLES.

NOTHING FOLLOWS

(b)(3)(b)(6)

INITIALS OF PERSON MAKING STATEMENT  (b)(3)(b)(6)

PAGE  2  OF  3  PAGES

*PAGE 2, DA FORM 2823, DEC 1998*    APD PE v1 01

STATEMENT OF          (b)(3)(b)(6)          TAKEN AT  FOB MAREZ          DATED  2009/04/11

STATEMENT  (Continued)

(b)(3)(b)(6)

AFFIDAVIT

I,          (b)(3)(b)(6)          , HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT
WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE   3   . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE
BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AN
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WIT
THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENC

(b)(3)(b)(6)

W                                              Sub:                                  by law to
                                               administer oaths, this  _11_  day of  _APRIL_  _2009_
-                                              at  _A 1. 2-9 1.1. 1.0_
-
í          (b)(3)(b)(6)                              (b)(3)(b)(6)
-
-                                              (Typed Name of Person Administering Oath)
-  _H^co 13/8 CAV, 1CD_                         _1LT, USA_
ORGANIZATION OR ADDRESS                         (Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT
                              (b)(3)(b)(6)                    PAGE  3  OF  3  PAGES

PAGE 3, DA FORM 2823, DEC 1998                                          APD PE v1.01

## SWORN STATEMENT

For use of this form see AR 190-45; the proponent agency is PMG.

### PRIVACY ACT STATEMENT

| | |
|---|---|
| AUTHORITY: | Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN). |
| PRINCIPAL PURPOSE: | To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents. |
| ROUTINE USES: | Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions. |
| DISCLOSURE: | Disclosure of your SSN and other information is voluntary. |

| 1. LOCATION | 2. DATE *(YYYYMMDD)* | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| A CO 3-8 CAV | 2009/04/11 | 2015 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| (b)(3)(b)(6) | (b)(3)(b)(6) | (b)(3)(b)(6) |

8. ORGANIZATION OR ADDRESS

A CO 3-8 CAV, APO AE 09334

9. I, **(b)(3)(b)(6)** WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH

On 10 April 2009 at 1020 hours A6 M1151 (which consisted of **(b)(3)(b)(6)** as TC, **(b)(3)(b)(6)** as driver, **(b)(3)(b)(6)** as Gunner, **(b)(3)(b)(6)** as dismount, and **(b)(3)(b)(6)** the interpreter) was traveling down **(b)(2)High** to Baghdad traffic circle in a joint patrol with 4 MRAP's from 1-67 4th ID. The five vehicle patrol was moving in a file with our M1151 in the center of the four MRAP's. Once the patrol reached approximately **(b)(3)** I heard a pinging sound from outside the vehicle. I then said "are we in contact" and then I heard the 50 cal from the last vehicle start to fire. **(b)(3)(b)(6)** reported over the net saying "what are you firing at". The 4th ID guys reported they were engaging a vehicle. **(b)(3)(b)(6)** then said turn the vehicle around to **(b)(3)(b)(6)** As soon as **(b)(3)(b)(6)** started to turn there was an explosion and the vehicle became black inside. I ____ed out " is everyone okay" as I reach for **(b)(3)(b)(6)** and **(b)(3)(b)(6)** to see if they were okay. They reported they were fine and I could start to see and saw that **(b)(3)(b)(6)** was okay. Then **(b)(3)(b)(6)** and I dismounted to investigate what happened. As we got out I looked back and only saw one MRAP behind us. I said "where is the last MRAP" and kept looking around. I looked over to **(b)(3)(b)(6)** and said " sir where did the last MRAP go" **(b)(3)(b)(6)** went to the MRAP behind us and asked where is the last MRAP. As **(b)(3)(b)(6)** and I moved back to where the explosion was I saw 2 buildings that where destroyed I heard **(b)(3)(b)(6)** **(b)(3)(b)(6)** say that's it I looked over and realized what I was looking at was the MRAP burning, ammunition was cooking off all around the vehicle. I then told the 4th ID boys to get behind a wall in front of the National Police buildings. As I went over the wall I saw a NP truck with all the windows busted out and the roof caved in and a National Policeman trapped inside with blood running down his head. I ran up to the door and tried to pry it open but I couldn't. I yelled "get my a pry bar" I saw the 4th ID LT and said get me a pry bar this guys is hurt. I looked over and saw a 8 ft piece of angle iron laying about 20 feet away I ran over and grabbed it and started to pry the door open. Then about 20 Iraqi National Police showed up to help and I let them take over. As I was looking for **(b)(3)(b)(6)** A CO's White PLT showed up. **(b)(3)(b)(6)** and I started moving towards the MRAP that was laying on its side with the whole top blown off. **(b)(3)(b)(6)** yelled I see someone and we ran up to the MRAP and started throwing the debris I saw the body. **(b)(3)(b)(6)** said I think he is still breathing. Then Ammunition started going off again and **(b)(3)(b)(6)** came up to help from behind me. **(b)(3)(b)(6)** had the casualty's legs. **(b)(3)(b)(6)** had his arms, and stood over him and grabbed his belt. As we were lifting the body several explosions went off inside the vehicle while we were inside lifting the body. We lifted the body out **(b)(3)(b)(6)** **(b)(3)(b)(6)** said there was C-wire hanging up on the body, we lifted the body up and got it unstuck and put it on a stretcher. **(b)(3)(b)(6)** was the medic on the ground and started to go to work on the casualty and assessed that the Soldier was dead. We then lifted the stretcher up and took the body to one of white PLT MRAP's and loaded it up. The MRAP then took the body off. I turned around and started to look for **(b)(3)(b)(6)** and went back to A6 and saw **(b)(3)(b)(6)** and **(b)(3)(b)(6)** I asked them if they sa **(b)(3)(b)(6)** **(b)(3)(b)(6)** and they said no. They ask what happened and I told them. **(b)(3)(b)(6)** asked if we were okay and I said yes **(b)(3)(b)(6)** **(b)(3)(b)(6)** said his head was hurting and I look and saw that 2 of the gunner windows were spider webbed from the explosion. Ammunition was going off so I got behind the vehicle to catch my breath. 1SG then said I should take **(b)(3)(b)(6)** to get checked out. Then **(b)(3)(b)(6)** said **(b)(3)(b)(6)** was with **(b)(3)(b)(6)** and they would bring **(b)(3)(b)(6)** back. I then got into the vehicle and went back to FOB Marez to the AID station to get my crew checked out. NOTHING ELSE FOLLOWS-----**(b)(3)(b)(6)**

| 10. EXHIBIT | 11. ___SON MAKING STATEMENT | |
|---|---|---|
| | (b)(3)(b)(6) | PAGE 1 OF 2 PAGES |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.*

**DA FORM 2823, NOV 2006**                DA FORM 2823, DEC 1998, IS OBSOLETE                APD PE v1.00

STATEMENT OF       (b)(3)(b)(6)        TAKEN AT  A C₀ CP   DATED  11 Apr 09

TATEMENT  (Continued)

(b)(3)(b)(6)

(b)(3)(b)(6)                    (b)(3)(b)(6)

(b)(3)(b)(6)

**AFFIDAVIT**

I, _____ (b)(3)(b)(6) _____ , HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT
WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE ___α___ I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE
BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT
THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENC

(b)(3)(b)(6)

(Signature of Person Making Statement)

Subscribed and sworn to before me, a person authorized by law to
administer oaths, this  11  day of  April  2009
at  A C₀  CP

(b)(3)(b)(6)                                       th)

(b)(3)(b)(6)                                       )ath)

A C₀ 3-8 CAV 1CD
ORGANIZATION OR ADDRESS                  (Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT
(b)(3)(b)(6)                                  PAGE 2 OF 2 PAGES

DA FORM 2823, NOV 2006                                          APD PE v1 00

**SWORN STATEMENT**
For use of this form, see AR 190-45; the proponent agency is PMG.

**PRIVACY ACT STATEMENT**

| AUTHORITY: | Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 *(SSN)* |
|---|---|
| PRINCIPAL PURPOSE: | To provide commanders and law enforcement officials with means by which information may be accurately identified |
| ROUTINE USES: | Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval. |
| DISCLOSURE: | Disclosure of your social security number is voluntary. |

| 1. LOCATION | 2. DATE *(YYYYMMDD)* | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| | 20090410 | 2300 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| (b)(3)(b)(6) | (b)(3)(b)(6) | (b)(3)(b)(6) |

8. ORGANIZATION OR ADDRESS

A CO 3-8 CAV 1CD

9.

I, (b)(3)(b)(6) , WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH

ON OR AROUND 1800 ON 20090410 WHITE PLATOON, ALPHA CO WAS AT THE TRAFFIC CIRCLE ON (b)(1)1.4a WHEN WE HEARD GREEN 4 CAME ACROSS THE RADIO AND SAY THEY WERE ENGAGING A THREAT AND THAT THEY WERE RECIVING SMALL ARMS CONTACT FROM THE EAST. IMMEDIATELY AFTER THEIR RADIO TRANSMISSION WE HEARD THE EXPLUSION. WHITE PLATOONS CONVOY STARTED MOVING DOWN (b)(1)1.4a HEADING TOWARDS THE ATTACK. ONCE ON SCENE WE DISMOUNTED AND SAW 2 DAMAGED BUILDINGS, MULTIPLE DAMAGED IP VEHICLES, AND A US MILITARY MRAP ON FIRE. RUNNING TOWARDS US WAS A GROUP OF SOLDIERS INCLUDING A LT FROM 4TH ID. THE ATTACK LOCATION WAS IN FRONT OF CLP LOBO ON (b)(1)1.4a ONCE THE 4TH ID SOLDIERS REACHED US THEY GAVE US A SITTLEY. THEY TOLD US THERE WERE NO SOLDIERS TRAPPED INSIDE THEIR VEHICLES AND THE BUILDINGS. THEY ALSO TOLD US THEY THERE STILL WERE AMERICAN SOLDIERS INSIDE THE BURNING MRAP, THEY SAID THEY CANT GET THEM OUT DUE TO 50CAL AND 203 ROUNDS COOKING OFF. I RAN OVER TO THE MRAP ALONG WITH (b)(3)(b)(6) APON ARRIVING AT THE MRAP WE IMMEDIATELY SAW A SOLDIER LAYING UNDER MRAP PARTS INSIDE THE BURNING VEHICLE. WE YELLED FOR HELP AND (b)(3)(b)(6) JOINED US. WE ENTERED THE VEHICLE AND STARTED PULLING THE SOLDIER FREE. MULTIPLE ROUNDS WERE COOKING OFF SO WE LAYED ON TOP OF THE SOLDIER TO SHIELD HIM. WE THEN WERE ABLE TO GET HIM OUT OF THE VEHICLE AND ON THE DIRT BERM WHERE WE STARTED CHECKING FOR A PULSE. HE WAS DEAD ON SCENE DUE TO MAJOR INJURIES (b)(3)(b)(6) . WE THEN ROLLED THE SOLDIER ONTO A STRETCHER AND TRYED TO EVAC HIM. WE HAD TO YELL FOR MORE HELP CARRYING HIM. WE WERE ALL STUCK IN CONSTATINO WIRE. (b)(3)(b)(6) , (b)(3)(b)(6) , AND (b)(3)(b)(6) ARRIVED AND WE RUSHED THE SOLDIER TO THE MRAP LOCATED AWAY FROM THE SCENE

| 10. EXHIBIT | 11. INITIALS (b)(3)(b)(6) | G STATEMENT | PAGE 1 OF 3 PAGES |
|---|---|---|---|

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.*

**DA FORM 2823, DEC 1998**      DA FORM 2823, JUL 72, IS OBSOLETE      APD PE v1.01

USE THIS PAGE IF NEEDED.  IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

ATEMENT OF          (b)(3)(b)(6)          AKEN AT  FOB MAREZ  DATED  20090410

9. STATEMENT (Continued) ONCE THE SOLDIER WAS IN THE MRAP.  (b)(3)(b)(6)  AND
I RAN BACK OVER THE BERM TOWARDS THE SCENE. ONCE WE GOT BACK
WE CAME ACROSS 2 KIA SOLDIERS LAYING ON THE GROUND. THE 4TH ID
LT ALONG WITH HIS SOLDIERS WERE TELLING TO TAKE A KNEE, AND
NOT ATTEMPTING TO EVAC THEIR OWN PEOPLE, SO  (b)(3)(b)(6)  GOT
SOME BODY BAGS AND ALONG WITH MULTIPLE HELP FROM WHITE PLT
A CO. WE WERE ABLE TO POLICE UP THE SCENE OF THE  (b)(3)(b)(6)  .
SHORTLY AFTER THAT FIRE TRUCKS ARRIVED AND EXTINGUISHED
THE FIRE  ONCE THE FLAMES WERE PUT OUT.  (b)(3)(b)(6)
(b)(3)(b)(6)      (b)(3)(b)(6)   I AND MYSELF MOVED INTO THE MRAP AND
PULLED OUT THE BURNT DRIVER. WE PUT THE BODY INTO A BAG
AND GOT IT INTO A MEDEVAC VEHICLE. ONCE ALL THE BODIES WERE
MEDEVACED, WHITE PLATOON THEN STARTED GATHERING ALL SENSITIVE
ITEMS AND CONSOLIDATING MZAP PARTS. 883 AND LOWBOYS
GATHERED ALL THE PARTS AND THE DAMAGED VEHICLE. WHITE
PLT THEN PULLED BACK TO FOB MAREZ.

(b)(3)(b)(6)

(b)(3)(b)(6)

(b)(3)(b)(6)

(b)(3)(b)(6)

INITIALS OF PERSON MAKING STATEMENT          (b)(3)(b)(6)          PAGE 2 OF 3 PAGES

PAGE 2, DA FORM 2823, DEC 1998                                    APD PE v1 01

STATEMENT OF _____ (b)(3)(b)(6) _____ TAKEN AT FOB MAREZ DATED 20090410

STATEMENT (Continued)

(b)(3)(b)(6)

(b)(3)(b)(6)

(b)(3)(b)(6)

(b)(3)(b)(6)

**AFFIDAVIT**

I, _____ (b)(3)(b)(6) _____ , HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT
WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE __3__. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE
BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTION: _____ PAGE
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY _____ THOUT
THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUI

(b)(3)(b)(6)

ent)

V

Subscribed and sworn to before me, a person authorized by law to
administer oaths, this __11__ day of _APRIL_ · 2009
at _A ln 2-8 CAV rD_

(b)(3)(b)(6)

(b)(3)(b)(6)

(Typed Name of Person Administering Oath)

Alco 3-8 CAV
ORGANIZATION OR ADDRESS

1 LT , USA
(Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT
(b)(3)(b)(6)

PAGE 3 OF 3 PAGES

PAGE 3, DA FORM 2823, DEC 1998

APD PE v1 01

**SWORN STATEMENT**
For use of this form, see AR 190-45; the proponent agency is PMG.

**PRIVACY ACT STATEMENT**

| | |
|---|---|
| AUTHORITY: | Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 *(SSN)* . |
| PRINCIPAL PURPOSE: | To provide commanders and law enforcement officials with means by which information may be accurately identified. |
| ROUTINE USES: | Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval. |
| DISCLOSURE: | Disclosure of your social security number is voluntary. |

| 1. LOCATION | 2. DATE *(YYYYMMDD)* | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| FOB Marez, Iraq | 2009/04/18 | | |

| 5. LAST NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| (b)(3)(b)(6) | (b)(3)(b)(6) | (b)(3)(b)(6) |

8. ORGANIZATION OR ADDRESS

A CO 3-8 CAV

9.

I, (b)(3)(b)(6) , WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

(b)(3)(b)(6) Question: When did you arrive on the scene of the SVBIED attack near the Knights Raid Brigade Headquarters on 10 April 09?

Answer: I WAS THERE FROM THE EXPLOSION THROUGH THE

(b)(3)(b)(6) RECOVERY OF ALL REMAINS, EQUIPMENT AND VEHICLES (b)(3), (b)(6)

(b)(3)(b)(6) Question: Did you see a Soldier brought out of the MRAP that was destroyed as a result of the SVBIED attack?

Answer:

(b)(3)(b)(6)    YES, 3 MEN, (b)(3)(b)(6)    AND (b)(3)(b)(6)

(b)(3)(b)(6)    PULLED HIM OUT OF A BURNING MRAP (b)(3)(b)(6) .

(b)(3)(b)(6) Question: Did you believe that the Soldier was alive when he was brought out of the MRAP?

Answer:

(b)(3)(b)(6)    NO,

(b)(3)(b)(6)

(b)(3)(b)(6)    BELIEVED HE HAD MOVED, BUT AFTER

THE 3 MINUTES THEY SPENT PULLING HIM OUT of the

VEHICLE, WHICH WAS ON FIRE AND COOKING OFF ROUNDS,

HE WAS NOT ALIVE. I WAS ON TOP OF THE BERM,

AND WAS IN A POSITION TO HELP MOVE HIM AS HE WAS

RECOVERED, AND THERE WAS NO WAY THAT HE WAS

ALIVE GIVEN THE EXTENSIVE TRAUMA TO HIS BODY AND

FACE (b)(3)(b)(6)

end of STATEMENT

(b)(3)(b)(6)

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | |
|---|---|---|
| | (b)(3)(b)(6) | PAGE 1 OF 2 PAGES |

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT ____ DATED ____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.*

**DA FORM 2823, DEC 1998**    DA FORM 2823, JUL 72, IS OBSOLETE    APD PE v1.01

STATEMENT OF _____ TAKEN AT _____ DATED _____

9. STATEMENT    *(Continued)*

Not used

(b)(3)(b)(6)

**AFFIDAVIT**

I, _____ (b)(3)(b)(6) _____, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT
WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE __2__. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE
BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTI
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREI
THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INF

(b)(3)(b)(6)

WITNESSES:

_____

_____    administer oaths, this __18__ day of __April__ . __2009__
at   FORMArez. Toro
_____
ORGANIZATION OR ADDRESS                          (b)(3)(b)(6)

_____
                                    *(Typed Name of Person Administering Oath)*
_____    AR 15-6 IO
ORGANIZATION OR ADDRESS                  *(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT

_____ (b)(3)(b)(6) _____          PAGE  1  OF  2  PAGES

*PAGE 3, DA FORM 2823, DEC 1998*                                    APD PE v1.01

Pages 74 through 91 redacted for the following reasons:
- - - - - - - - - - - - - - - - - - - -
(b)(3), (b)(6)

## STATEMENT OF RECOGNITION OF DECEASED

### PRIVACY ACT STATEMENT

**AUTHORITY:** 10 USC Sections 1481 through 1488, EO 9397, Nov. 1943 (SSN).

**PURPOSE AND USE:** This form is used to establish initial identification of deceased personnel.

**DISCLOSURE:** Personal information provided on this form is given on a voluntary basis. Failure to provide this information, however, may result in improper identification of the deceased person and person making visual identification

### 1. TENTATIVELY IDENTIFIED DECEDENT

| a. NAME (Last, First, Middle Initial) (or Unidentified) | b. RANK | c. SSN |
|---|---|---|
| actusk | E-4 | conk |
| **d. ORGANIZATION** | **e. SERVICE** | |
| Dco 1-67 4th ID | US Army | |

### 2. I HAVE PERSONALLY VIEWED THE REMAINS TENTATIVELY IDENTIFIED ABOVE. RECOGNITION IS BASED ON THE FOLLOWING.

| a. SEX | b. APPROXIMATE AGE (Years) | c. APPROXIMATE HEIGHT | d. RACE |
|---|---|---|---|
| male | 22 | 7.2" | caucazoid |
| **e. HAIR COLOR** (If brown, indicate light or dark, as applicable) | | **f. BUILD/MUSCULARITY** (Slender, medium, heavy or obese) | |
| black | | Slender | |

g. IDENTIFYING MARKS (Fully describe by type and location ALL known scars, tattoos, birthmarks, amputations or other body markings to support the identification.)

None to knowledge

REMARKS

Remains were Identified by facial recognition

### 3. DETAILS OF VIEWING

| a. DATE (YYYYMMDD) | b. TIME | c. PLACE |
|---|---|---|
| 20090410 | 12:18 Z | Mosul MacP #6 |

### 4. PERSON MAKING VISUAL IDENTIFICATION

(b)(3)(b)(6)

| b. ORGANIZATION | | f. DATE SIGNED (YYYYMMDD) |
|---|---|---|
| DCO 1-67 AR | (b)(3)(b)(6) | 20090410 |
| **g. RELATIONSHIP TO DECEASED** (CDR, ISG, Friend, Relative, etc.) | | ED (Number of months or years) |
| First Sergeant | | 1 yrs |

### 5. WITNESS

I certify that the individual identified in Item 4 has viewed the remains in my presence, and that to the best of my knowledge and belief the above statements are true.

| a. NAME (Last, First, Middle Initial) | b. RANK | c. TITLE |
|---|---|---|
| (b)(3)(b)(6) | | 18th CSSB MA NCOIC |
| **d. ORGANIZATION** | **e. SIGNATURE** | **f. DATE SIGNED** (YYYYMMDD) |
| HHC 18th CSSB | (b)(3)(b)(6) | 20090410 |

| RECORD OF IDENTIFICATION PROCESSING<br>*(Effects and Physical Data)* | | DATE<br>10 April 2009 | |
|---|---|---|---|

| AST NAME - FIRST NAME - MIDDLE INITIAL *(Or un-known number)*<br>Pautsch, Jason G | GRADE<br>E-4 | SERVICE NO.  SSAN<br>(b)(3)(b)(6) | CIL CASE NUMBER *(If applicable)*<br>N/A |
|---|---|---|---|

| NAME OF CEMETERY, EVACUATION NUMBER, OR SEARCH AND RECOVERY NUMBER<br>21-09/AR111TH QMCO/MOSUL | PLOT<br>N/A | ROW<br>N/A | GRAVE<br>N/A |
|---|---|---|---|

RECEIVED FROM
47th CSH

IMPRINT OF IDENTIFICATION TAG

OFFICIAL IDENTIFICATION FOUND WITH REMAINS *(Include personal effects aiding identification)*

1 set of ID Tags insc. Pautsch Jason
1 Military ID Card insc. Pautsch Jason
1 each DD Form 2851 insc. Pautsch Jason
------------------------------------------------------Nothing Follows---------------------------------

Pautsch Jason G
(b)(3)(b)(6)
A Pos
Christian

ITEMS OF CLOTHING AND EQUIPMENT FOUND WITH REMAINS *(Indicate type, color, size, markings, service, etc  If laundry marks are indistinct, follow procedures outlined in TM 10-286)*

1 each  US Flag Velcro
1 each  4th ID Patch Velcro
1 each  82nd Airbore Patch Velcro
1 each  Belt, Tan in color
1 each  ACU Top
1 each  T Shirt, Tan in color
1 each  ACU Bottoms
1 pair Boots, Tan in Color
1 each CPL Rank, Velcro
1each US Army Tab
1 each  Tab insc. Pautsch

| FINGERPRINTS TAKEN<br>☐ YES  ☒ NO | X-RAYS MADE<br>☐ YES  ☒ NO | FLUOROSCOPE STATEMENT ATTACHED<br>☐ YES  ☒ NO |
|---|---|---|
| PHOTOGRAPHS TAKEN<br>☐ YES  ☒ NO | ANTHROPOLOGICAL STATEMENT MADE<br>☐ YES  ☒ NO | CHEMICAL STATEMENT ATTACHED<br>☐ YES  ☒ NO |

| PHYSICAL DESCRIPTION | | | |
|---|---|---|---|
| ESTIMATED HEIGHT<br>72" | MUSCULARITY<br>Slender | COLOR OF HAIR<br>BLACK | RACE OR NATIVITY<br>CAUCASOID |

TATTOOS, SCARS OR MARKS ON BODY
SEE DD 2064

EVIDENCE OF HEALED FRACTURES AND BONE MALFORMATIONS
SEE DD 2064

WOUNDS OR INJURIES
SEE  DD 2064

I HAVE PERSONALLY VIEWED THE REMAINS OF THIS DECEASED AND ALL RESULTING INFORMATION HAS BEEN RECORDED TO THE BEST OF MY KNOWLEDGE.

| NAME  GRADE AND ORGANIZATION<br>(b)(3)(b)(6)    111th QNCO MA | SIGNATURE<br>(b)(3)(b)(6) |
|---|---|

DD Form 890, 1 JAN 1958        PREVIOUS EDITION OF THIS FORM IS OBSOL        APD PE v1 00

| MILITARY OPERATIONS RECORD OF PERSONAL EFFECTS OF DECEASED PERSONNEL | | | | 1. DATE *(YYYYMMDD)* 20090410 | | 2. PAGE 1 OF 2 PAGES |
|---|---|---|---|---|---|---|

**PRIVACY ACT STATEMENT**

**AUTHORITY:** 10 USC Sections 1481 through 1488, EO 9397, Nov. 1943 (SSN).

**PURPOSE AND USE:** This form is used to establish initial identification of deceased personnel.

**DISCLOSURE:** Personal information provided on this form is given on a voluntary basis. Failure to provide this information, however, may result in improper identification of the deceased person and person making visual identification.

**3. TENTATIVELY IDENTIFIED DECEDENT**

| a. NAME *(Last, First, Middle Initial) (for Unidentified)* | b. GRADE | c. SSN | d. ORGANIZATION | e. STATUS | f. DATE OF STATUS *(YYYYMMDD)* |
|---|---|---|---|---|---|
| BTB: Pautsch, Jason G | E-4 | (b)(3)(b)(6) | D CO 1-67 | Deceased | 20090410 |

| 4. PLACE OF RECOVERY *(Include grid coordinates)* | 5. DATE OF RECOVERY *(YYYYMMDD)* | 6. EVACUATION NUMBERS | |
|---|---|---|---|
| 47th CSH | 20090410 | a. #1 21-09 | b. #2 |

**7. INVENTORY OF EFFECTS**

| a. QUANTITY | b. DESCRIPTION | c. RECEIVED | d. CONDITION | e. DISPOSITION |
|---|---|---|---|---|
| 1 each | Amry Value Tag | | Fair | Forward with Remains |
| 1 each | US Coin | | Fair | Forward with Remains |
| 1 each | Nation Under God Tag | | Fair | Forward with Remians |
| 1 pair | Underwear, Grey in color insc. Jockey | (b)(3), (b)(6) | Fair | Forward with Remains |
| 1 each | Knife, insc. CRKT, Black in color | | Fair | Forward with Remains |
| 1 each | Key | | Fair | Forward with Remains |
| 1 each | Pen, Clear in color | | Fair | Forward with Remains |

**8. FUNDS/NEGOTIABLE INSTRUMENTS/OTHER HIGH VALUE ITEMS TRANSMITTED WITH EFFECTS**

| a. QUANTITY | b. DESCRIPTION | c. RECEIVED | d. CONDITION | e. DISPOSITION |
|---|---|---|---|---|
| 3 each | US Currency $1dollar bills SN: E44803063, B54459892J, K171770095B | | Fair | Forward with Remains |
| 1 each | US currency $20 dollar bill SN: IK37004095B | (b)(3), (b)(6) | Fair | Forward with Remains |
| 1 each | Eagle Cash Card | | Fair | Forward with Remains |

**9. EFFECTS INVENTORIED ABOVE REPRESENT** *(X as appropriate)*

| ALL KNOWN EFFECTS | ALL KNOWN EFFECTS RECOVERED FROM UNIT | X ALL KNOWN EFFECTS RECOVERED FROM REMAINS |
|---|---|---|

**10. PREPARING OFFICIAL**

| a. NAME *(Last, First, Middle Initial)* | b. GRADE | c. ORGANIZATION 111TH QM CO. |
|---|---|---|
| (b)(3)(b)(6) | | |

| d. SIGNATURE (b)(3)(b)(6) | e. DATE SIGNED *(YYYYMMDD)* 20090410 |
|---|---|

**11. RECEIVING OFFICIAL**

| a. NAME *(Last, First, Middle Initial)* | b. GRADE | c. ORGANIZATION |
|---|---|---|
| | | |

| d. SIGNATURE | e. DATE SIGNED *(YYYYMMDD)* |
|---|---|

**?. RECEIVING OFFICIAL**

| a. NAME *(Last, First, Middle Initial)* | b. GRADE | c. ORGANIZATION |
|---|---|---|
| | | |

| d. SIGNATURE | e. DATE SIGNED *(YYYYMMDD)* |
|---|---|

| MILITARY OPERATIONS<br>RECORD OF PERSONAL EFFECTS OF DECEASED PERSONNEL | 1. DATE *(YYYYMMDD)* | 2. PAGE 2 |
|---|---|---|
| | 20090410 | OF 2 PAGES |

**PRIVACY ACT STATEMENT**

AUTHORITY: 10 USC Sections 1481 through 1488, EO 9397, Nov. 1943 (SSN).

PURPOSE AND USE: This form is used to establish initial identification of deceased personnel.

DISCLOSURE: Personal Information provided on this form is given on a voluntary basis. Failure to provide this information, however, may result in improper identification of the deceased person and person making visual identification.

**3. TENTATIVELY IDENTIFIED DECEDENT**

| a. NAME *(Last, First, Middle Initial) (or Unidentified)* | b. GRADE | c. SSN | d. ORGANIZATION | e. STATUS | f. DATE OF STATUS *(YYYYMMDD)* |
|---|---|---|---|---|---|
| BTB: Pautsch, Jason G | E-4 | (b)(3)(b)(6) | D CO 1-67 | Deceased | 20090410 |

| 4. PLACE OF RECOVERY *(Include grid coordinates)* | 5. DATE OF RECOVERY *(YYYYMMDD)* | 6. EVACUATION NUMBERS | |
|---|---|---|---|
| 47th CSH | 20090410 | a. #1  21-09 | b. #2 |

**7. INVENTORY OF EFFECTS**

| a. QUANTITY | b. DESCRIPTION | c. RECEIVED | d. CONDITION | e. DISPOSITION |
|---|---|---|---|---|
| 1 pack | Gum inse. Extra | | Used | Forward with Remains |
| 1 pack | Cigarettes inse. Royale | | Used | Forward with Remains |
| 1 each | Lighter, Blue and Whit in Color | (b)(3), (b)(6) | Fair | Forward with Remians |
| 2 each | MNC ROE Cards | | Fair | Forward with Remains |
| 2 each | Mis. Papers | | Fair | Forward with Remains |
| ---------- | --------------Nothing Follows---------------- | ---------- | ---------- | ---------- |

**8. FUNDS/NEGOTIABLE INSTRUMENTS/OTHER HIGH VALUE ITEMS TRANSMITTED WITH EFFECTS**

| a. QUANTITY | b. DESCRIPTION | c. RECEIVED | d. CONDITION | e. DISPOSITION |
|---|---|---|---|---|
| 1 each | Capital One Visa Credit Card. inse. to Jason G Pautsch exp: 08/25/10/ with last fo(b)(3), (b)(6) | ES | Fair | Forward with Remains |
| ---------- | --------------Nothing Follows---------------- | ---------- | ---------- | ---------- |

**9. EFFECTS INVENTORIED ABOVE REPRESENT** *(X as appropriate)*

| ALL KNOWN EFFECTS | ALL KNOWN EFFECTS RECOVERED FROM UNIT | X ALL KNOWN EFFECTS RECOVERED FROM REMAINS |
|---|---|---|

**10. PREPARING OFFICIAL**

| a. NAME *(Last, First, Middle Initial)* (b)(3)(b)(6) | b. GRADE | c. ORGANIZATION 111TH QM CO. | |
|---|---|---|---|
| d. SIGNATURE (b)(3)(b)(6) | | | e. DATE SIGNED *(YYYYMMDD)* 20090410 |

**11. RECEIVING OFFICIAL**

| a. NAME *(Last, First, Middle Initial)* | b. GRADE | c. ORGANIZATION | |
|---|---|---|---|
| d. SIGNATURE | | | e. DATE SIGNED *(YYYYMMDD)* |

**12. RECEIVING OFFICIAL**

| a. NAME *(Last, First, Middle Initial)* | b. GRADE | c. ORGANIZATION | |
|---|---|---|---|
| d. SIGNATURE | | | e. DATE SIGNED *(YYYYMMDD)* |

# CERTIFICATE OF DEATH (OVERSEAS)
## Acte de décès (D'Outre-Mer)

| NAME OF DECEASED (Last, First, Middle)    Nom du décédé (Nom et prénoms) | GRADE    Grade | BRANCH OF SERVICE    Arme | SOCIAL SECURITY NUMBER    Numéro de l'Assurance Sociale |
|---|---|---|---|
| PAUTSCH, Jason Giglioni | | | |

| ORGANIZATION    Organisation | NATION (e.g., United States)    Pays | DATE OF BIRTH    Date de naissance | SEX    Sexe |
|---|---|---|---|
| | | | ☐ MALE    Masculin |
| | | | ☐ FEMALE    Féminin |

| RACE    Race | | MARITAL STATUS    État Civil | | RELIGION    Culte | |
|---|---|---|---|---|---|
| CAUCASOID    Caucasique | SINGLE    Célibataire | DIVORCED    Divorcé | PROTESTANT    Protestant | OTHER (Specify)    Autre (Spécifier) |
| NEGROID    Négroïde | MARRIED    Marié | SEPARATED    Séparé | CATHOLIC    Catholique | |
| OTHER (Specify)    Autre (Spécifier) | WIDOWED    Veuf | | JEWISH    Juif | |

| NAME OF NEXT OF KIN    Nom du plus proche parent | RELATIONSHIP TO DECEASED    Parenté du décédé avec le susdit |
|---|---|

| STREET ADDRESS    Domicile & (Rue) | CITY OR TOWN AND STATE (Include ZIP Code)    Ville (Code postal compris) |
|---|---|

## MEDICAL STATEMENT    Déclaration médicale

| CAUSE OF DEATH (Enter only one name per line)    Cause du | INTERVAL BETWEEN ONSET AND DEATH    Intervalle entre l'attaque et le décès |
|---|---|
| DISEASE OR CONDITION DIRECTLY LEADING TO DEATH    Maladie ou condition directement responsable de la mort | |
| **(b)(3)(b)(6)** | |
| ANTECEDENT CAUSES    Symptômes précurseurs de la mort. | MORBID CONDITION, IF ANY, LEADING TO PRIMARY CAUSE    Condition morbide, s'il y a lieu, menant à la cause primaire | |
| | UNDERLYING CAUSE, IF ANY, GIVING RISE TO PRIMARY CAUSE    Raison fondamentale, s'il y a lieu, ayant suscité la cause primaire | |
| OTHER SIGNIFICANT CONDITIONS    Autres conditions significatives | |

| MODE OF DEATH    Condition de décès | AUTOPSY PERFORMED    Autopsie effectuée    ☐ YES  Oui    ☒ NO  Non | CIRCUMSTANCES SURROUNDING DEATH DUE TO EXTERNAL CAUSES    Circonstances de la mort suscitées par des causes extérieures |
|---|---|---|
| | MAJOR FINDINGS OF AUTOPSY    Conclusions principales de l'autopsie | |
| NATURAL    Mort naturelle | | |
| ACCIDENT    Mort accidentelle | | |
| SUICIDE    Suicide | | |
| HOMICIDE    Homicide    **(b)(3)(b)(6)** | DATE  Date    19 APR 17 | AVIATION ACCIDENT    Accident à Avion    ☐ YES  Oui    ☐ NO  Non |

| DATE OF DEATH (Hour, day, month, year)    Date de décès (l'heure, le jour, le mois, l'année) | PLACE OF DEATH    Lieu de décès |
|---|---|

I HAVE VIEWED THE REMAINS OF THE DECEASED AND DEATH OCCURRED AT THE TIME INDICATED AND FROM THE CAUSES AS STATED ABOVE.
J'ai examiné les restes mortels du défunt et je conclus que le décès est survenu à l'heure indiquée et à, la suite des causes énumérées ci dessus.

| NAME OF MED.    **(b)(3)(b)(6)** | Titre ou diplôme |
|---|---|
| GRADE    **(b)(3)(b)(6)** | |
| DATE  Date    19 APR 17    SIGNAT.    **(b)(3)(b)(6)** | |

[1] State disease, injury or complication which caused death...
[2] State conditions contributing to the death, but not related to the disease or condition causing death.
[1] Préciser la nature de la maladie, de la blessure ou de la complication qui a contribué à la mort, mais son: la manière de mourir, telle qu'un arrêt du coeur, etc.
[2] Préciser la condition qui a contribué à la mort, mais n'ayant aucun rapport avec la maladie ou à la condition qui a provoqué la mort.

**DD FORM 2064, APR 1977**    REPLACES DA FORM 3865, 1 JAN 1972 AND DA FORM 3585-RIPASI, 26 SEP 1975, WHICH ARE OBSOLETE.    USAPA V1.00

Pages 97 through 100 redacted for the following reasons:
- - - - - - - - - - - - - - - - - - - -
(b)(3), (b)(6)

PRIVACY ACT STATEMENT
(5 U.S.C. 522a)

AUTHORITY: 5 U.S.C. 301 and 10 U.S.C. 3012

PURPOSE: The purpose of this solicitation is to gather facts and make recommendations to
assist the appropriate authorities in determining what action to take with regard to allegations of

Medical screening after SVBIED on 10 April 09

ROUTINE USES: Any information you provide is disclosable to members of the Department of
Defense who have a need for the information in performance of their official duties, and where
use of such information is compatible with the purpose for which the information is collected. In
addition, the information may be disclosed to Government agencies and persons outside the
Department of Defense for law enforcement purposes, or if determined to be disclosable pursuant
to a request submitted under the Freedom of Information Act, or if needed for Congressional or
other Government Investigations.

DISCLOSURE MANDATORY FOR INDIVIDUAL WHO MAY BE ORDERED TO TESTIFY:
providing the information is mandatory. Failure to provide information could result in
disciplinary or other adverse action against you under the UCMJ or applicable Army or other
federal regulations.

DISCLOSURE VOLUNTARY FOR INDIVIDUAL WARNED OF HIS RIGHTS UNDER
ARTICLE 31, UCMJ, OR THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION:
providing the information is voluntary. There will be no adverse effect on you for not furnishing
the information other than essential information which might not otherwise be available to the
commander for his decision in this matter.

ACKNOWLEDGMENT

I have read and been provided a copy of the F                                    ts
contents.

11 Apr 09
Date

(b)(3)(b)(6)

Social Security Number

**SWORN STATEMENT**
For use of this form, see AR 190-45; the proponent agency is PMG.

PRIVACY ACT STATEMENT

| AUTHORITY: | Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943  *(SSN)* . |
| PRINCIPAL PURPOSE: | To provide commanders and law enforcement officials with means by which information may be accurately identified. |
| ROUTINE USES: | Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval. |
| DISCLOSURE: | Disclosure of your social security number is voluntary. |

| 1. LOCATION | 2. DATE *(YYYYMMDD)* | 3. TIME | 4. FILE NUMBER |
| BAS, FOB Maree, Iraq | 2009 04 11 | 1737 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
| (b)(3)(b)(6) | (b)(3)(b)(6) | (b)(3)(b)(6) |

8.
HHt 1-67 AR

9.
I, _____ (b)(3)(b)(6) _____ , WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH: On

10 Apr09 their was a VBIED, which the medical Plt, lost PFC.
Gauiter in the blast During the after math of the blast. I awaken.
the rest of the medical ~~Plt~~ (b)(3)(b)(6) Plt who was on FOB Marez and I inform
them of the blast and had them come to the Battalion Aid Station to
help with the (b)(3)(b)(6) MACE reports for all the causalites that were
return to duty from the Combat Support Hospital. All medics that
were on the FOB report to Aid Station and went to work conducting
and executing 13 MIACE Reports ~~write~~ After all MACE Report were.
done and ____ (b)(3)(b)(6) ____ . the Battalion Surgero and ____ (b)(3)(b)(6) ____ . the
Battalion PA reurew the reports. If was found the 3 Soldiers need
a CT scan, 1 Soldiers for Xrays on left wrist, 1 Soldiers had ~~to~~ two return
to Aid Station with in (b)(3)(b)(6) hours for (b)(3)(b)(6) evalution and 1 Soldier had to
return to (b)(3)(b)(6) id Station within 24 hrs for (b)(3)(b)(6) evaultion on MACE
Reports Even with the Knowledge of PFC Gauiter was killed in action the
medical Plt continue on with the mission of taken care of the platoon
that he was attached to. (b)(3)(b)(6) during Operation Iraq (b)(3)(b)(6) Freedom.

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | |
| | (b)(3)(b)(6) | PAGE 1 OF  2  PAGES |

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER
MUST BE BE INDICATED.

**DA FORM 2823, DEC 1998**      DA FORM 2823, JUL 72, IS OBSOLETE      APD PE v1.01

STATEMENT OF _____ (b)(3)(b)(6) _____ TAKEN AT _1737_ DATED _11 Apr 09_

J. STATEMENT    *(Continued)*

This concludes my statement ————————————————————————— *EB*

(b)(3)(b)(6)

(b)(3)(b)(6)

(b)(3)(b)(6)

(b)(3)(b)(6)

**AFFIDAVIT**

I _____ (b)(3)(b)(6) _____ , HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT
WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE _2_ . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE
BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY ...
THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INF...

(b)(3)(b)(6)

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to
administer oaths, this _11_ day of _Apr.l_ . _2009_
at _____

ORGANIZATION OR ADDRESS

(b)(3)(b)(6)

*(Typed Name of Person Administering Oath)*

AR 15-6

ORGANIZATION OR ADDRESS

*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT

PAGE _2_ OF _2_ PAGES

*PAGE 3, DA FORM 2823, DEC 1998*

APD PE v1.01

**SWORN STATEMENT**

For use of this form, see AR 190-45; the proponent agency is PMG.

PRIVACY ACT STATEMENT

| | | |
|---|---|---|
| AUTHORITY: | Title 10 USC Section 301; Title 5 USC Section 2951; E.O. 9397 dated November 22, 1943 *(SSN)*. | |
| PRINCIPAL PURPOSE: | To provide commanders and law enforcement officials with means by which information may be accurately identified. | |
| ROUTINE USES: | Your social security number is used as an additional/alternate means of identification to facilitate filing and retrieval. | |
| DISCLOSURE: | Disclosure of your social security number is voluntary. | |

| 1. LOCATION FoB MAREZ/MOSUL IRAQ | 2. DATE (YYYYMMDD) 2009 04 11 | 3. TIME 1700 | 4. FILE NUMBER |
|---|---|---|---|
| 5. LAST NAME, FIRST NAME, MIDDLE NAME (b)(3)(b)(6) | | 6. SSN (b)(3)(b)(6) | 7. GRADE/STATUS (b)(3)(b)(6) |
| 8. ORGANIZATION OR ADDRESS HHC 1/67 AR 2/4 ID | | | |

9.

I, _____ (b)(3)(b)(6) _____, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

On 10 Aug 2a9 at Approx 1030hrs I heard a huge explosion. I ran outside and saw that it had occurred just outside the FOB. I checked in at the BAS and was told there was no radio traffic yet. I went back to my CHU. At Approx 1100hrs I saw the D__ soldiers running around and was told they were responding As (b)(1)1.4a and that one of our vehicles had a catastrophic kill. Approx. 1230hrs (b)(3)(b)(6) poked his head in my door and said the guys who had been near the explosion (VBIED) were coming in to the BAS for mace screenings. I reported to the BAS and screened approx 6-8 soldiers and referred 4 to the CSH for further eval. By 1500 the soldiers all had headed to the CSH to see off one of the guys who was being evac'd to Landstuhl. At Approx 1700hrs I spoke with a couple more of the guys who had been involved in the incident. Most seemed sad and stunned. I had also seen (b)(3)(b)(6) and two members of the combat stress team in the BAS during the afternoon.

(b)(3)(b)(6)

nothing follows

(b)(3)(b)(6) — (b)(3)(b)(6)  (b)(3)(b)(6)

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT (b)(3)(b)(6) | PAGE 1 OF 2 PAGES |
|---|---|---|

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____*

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE BE INDICATED.

**DA FORM 2823, DEC 1998**      DA FORM 2823, JUL 72, IS OBSOLETE      APD PE v1.01

STATEMENT OF    (b)(3)(b)(6)    TAKEN AT _1700 hrs_ DATED _11 Apr 09_

9. STATEMENT  (Continued)

(b)(3)(b)(6)    (b)(3)(b)(6)

(b)(3)(b)(6)

(b)(3)(b)(6)

**AFFIDAVIT**

I, ___(b)(3)(b)(6)_____, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT
WHICH BEGINS ON PAGE 1. AND ENDS ON PAGE _2_. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE
BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT H‌                    UT
THREAT OF PUNISHMENT, AND WITHOUT COERCION. UNLAWFUL INFLUENCE. OR UN
                                (b)(3)(b)(6)

(Signature of Person Making Statement)

WITNESSES:                          Subscribed and sworn to before me, a person authorized by law to
                                    administer oaths, this _11th_ day of _April_, _2009_

(b)(3)(b)(6)

_DCG 452 AIC_
ORGANIZATION OR ADDRESS                       (b)(3)(b)(6)        Oath)

(b)(3)(b)(6)
                                    (Typed Name of Person Administering Oath)
ORGANIZATION OR ADDRESS             _AR 15-6 IO_
                                    (Authority To Administer Oaths)

INITIALS OF PERSON MAKING STATEMENT
            (b)(3)(b)(6)                         PAGE _2_ OF _2_  PAGES

PAGE 3, DA FORM 2823, DEC 1998                          APD PE v1.01

**SWORN STATEMENT**

For use of this form, see AR 190-45; the proponent agency is PMG.

PRIVACY ACT STATEMENT

| AUTHORITY: | Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN). |
|---|---|
| PRINCIPAL PURPOSE: | To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents. |
| ROUTINE USES: | Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions. |
| DISCLOSURE: | Disclosure of your SSN and other information is voluntary. |

| 1. LOCATION COP Eagle, Mosul Iraq | 2. DATE (YYYYMMDD) 2009/04/16 | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|

| 5. LAST NAME. FIRST NAME. MIDDLE NAME (b)(3)(b)(6) | 6. SSN | 7. GRADE/STATUS (b)(3)(b)(6)aqi National Police |
|---|---|---|

8. ORGANIZATION OR ADDRESS
Knights Raid Brigade, 3rd Iraqi National Police Division, COP Eagle Mosul, Iraq

9.

I        (b)(3)(b)(6)                                  , WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

--- This document is a translated version of the statement made by        (b)(3)(b)(6)        I to        (b)(3)(b)(6)        at COP
Eagle, Mosul, Iraq on 16 April 2009.

In the name of god the merciful and kindness.

On date of 10th April, 2009, day of Friday at 1020hours, there was an enemy attack on the Knights Raid Brigade Headquarters (HQ) by a big dump truck filled with C4 explosives; in result of which, the three buildings fell, five buildings were damaged, two IPs that belonged to the brigade were KIA, one from IA were KIA and five from CF were KIA. The total number of IPs wounded was 27. The blast burnt the MRAP, six HMWWVs and few other vehicles. One of the burnt vehicles was Ford passenger, one was a Ford pick-up truck, Ford Ranger and an ambulance. Two vehicles had the windows, doors and tires were also damaged all the vehicles. The vehicles damaged includes two more Ford passenger vehicles and two more fuel trucks with fuel in them (approx. 5000 liters of gas and 3000 oil). The blast also burnt two civilian cars which belonged to two captains in brigade HQ. The blast also broke windows, took down some doors and cracked the brigade building. The enemy was well planned and they executed the plan with perfection. The enemy used a big dump truck to make biggest damage possible and the time of choice was Friday, because its quiet in the morning and traffic is not heavy which made it easy for the suicide truck to drive towards the FOB entrance and exploded himself within the vicinity of the brigade HQ. I believe, the enemy did reconnaissance of the area and his job beforehand and saw the weakness in our CP or there is a possibility of an insider in that section who was guarding the CP at that moment.

        (b)(3)(b)(6)
Knights Raid Brigade Commander
4/16/09

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF   2   PAGES |
|---|---|---|

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____*

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.

**DA FORM 2823, NOV 2006**        DA FORM 2823, DEC 1998, IS OBSOLETE        APD PE v1.00

STATEMENT OF   (b)(3)(b)(6)                TAKEN AT  COP Eagle, Iraq      DATED 2009/04/16

9. STATEMENT   *(Continued)*

**AFFIDAVIT**

I,   (b)(3)(b)(6)                                , HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT
WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE    I   . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE
BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE
CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT
THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

--- Original Signed ---
*(Signature of Person Making Statement)*

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to
administer oaths, this  16  day of  April  . 2009
at  COP Eagle. Iraq

ORGANIZATION OR ADDRESS

(b)(3)(b)(6)                  ig Oath)

*(Typed Name of Person Administering Oath)*
AR 15-6

ORGANIZATION OR ADDRESS                        *(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT

PAGE  2  OF  2  PAGES

*DA FORM 2823, NOV 2006*                                        APD PE v1.00

Page 108 redacted for the following reason:
- - - - - - - - - - - - - - - - - - - - -



(b)(3), (b)(6)

A Co. 1-67          M4          W509466



D Co. 1-67          M2          693131



D Co. 1-67        M2            693131



D Co. 1-67          M2          693131



SSG Woods          D Co. 1-67          M4 W028991 M68 1220880



CPL Pautsch          A Co. 1-67          M4 W480686 M203 58993
                                         PEQ-15 146334



SGT Forrest          A Co. 1-67          M4 W481145



SGT Forrest          A Co. 1-67          M4 W481145



SSG Hall   A Co. 1-67          M4 W509497



SSG Hall   A Co. 1-67        M4 W509497



SSG Woods        A Co. 1-67        AN/PVS-7B 25038



CPL Pautsch        D Co. 1-67 (TPE)        EO-Tech 121810



SSG Forrest          A Co. 1-67          ACOG 353497



SSG Hall    A Co. 1-67    M68 1227057



PV2 Gautier          A Co. 1-67          M68 1225809



SGT Forrest          A Co. 1-67          PEQ-15 146347



SSG Hall      A Co. 1-67        PEQ-15 147018

# Unidentifiable electronic equipment



# Unidentifiable electronic equipment



# Unidentified M4 lower receiver and ACOG – found in vehicle D304



| MAINTENANCE REQUEST | | PG NO 1 | NO PGS 3 | REQMT CONTROL SYMBOL WON:    JAZF0A902931 | |
|---|---|---|---|---|---|

| CUSTOMER DATA | MAINTENANCE ACTIVITY DATA |
|---|---|
| UIC CUST    CUSTOMER UNIT NAME<br>WAQ2D0       D CO 1/67 | SPT WON       SHOP    PHONE NO |
| PHONE NO             SAMS-2 UIC  UTIL CD<br>                     WAQ2AA      0 | UIC SUPPORT    SUPPORT UNIT NAME |

### EQUIPMENT DATA

| MNT CD    ID  NSN<br>I        A   2355015534634 | MCSR<br>Y | FDD   USAGECDE        CURRENT USAGE<br>H     Miles                    202? |
|---|---|---|
| MODEL<br>100A01 | | PROJ CD                APC         I<br>9GJ                                 N |
| NOUN<br>TRUCK ARMORED MRAP | | LEVEL WORK    ADMIN NO<br>F              D304 |
| ORG WON<br>AQ2D00900576 | QTY<br>1 | PD AUTHENTICATING SIGNATURE: |
| SER NO<br>ADR18J665394 | PD<br>02 | |

MALFUNCTION DESCRIPTION/REMARKS: ECOD

TECHNICAL REFERENCES

### TASK / PART REQUIREMENTS

| ACT CDE | TASK NO | ACT RQD | TASK DESCRIPTION | QTY RPR | WRK CTR | FAIL CODE | MH FRM |
|---|---|---|---|---|---|---|---|
| | 001 | F | ECOD | 1 | ORG1 | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| ACT CDE | TASK NO | ID | REQUIRED NSN / PART NUMBER | SFX CDE | QTY RQD | QTY ISSUE | NM CS | FAIL CODE | STORAGE LOC | UNIT |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| TOTAL MANHOURS | TOTAL MANHOURS COST$ | TOTAL PARTS COSTS |
|---|---|---|

| QTY RPR | QTY CONDEMN | QTY NRTS | EVAC WON | | EVAC UNIT NAME |
|---|---|---|---|---|---|

| SUBMITTED BY | ACCEPTED BY | WORK STARTED BY | INSPECTED BY | PICKED |
|---|---|---|---|---|

| DATE | | STA | ORD DATE | MIL TIME | STA | ORD DATE | MIL TIME | STA | ORD DATE | MIL TIME | STA | ORD DATE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

DA FORM 2407-E (FACSIMILE)



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, 1ST COMBINED ARMS BATTALION, 67TH ARMOR REGIMENT
3RD HEAVY BRIGADE COMBAT TEAM, 1ST CAVALRY DIVISION
FOB MAREZ, IRAQ APO AE 09334

REPLY TO
ATTENTION OF

AFZC-DIA-S4                                          15 April 2009

MEMORANDUM FOR MATERIAL MANAGEMENT

SUBJECT: Certification of Battle Damage Equipment

1. I certify that the vehicle listed below contains no ordnance, explosives, HAZMAT, NBC, or any signs of injury or death.

| LIN | NOMENCLATURE | SERIAL # | REG# |
|---|---|---|---|
| YF200T | TRK, ARMORED, MRAP | 1HTWEADR18J665394 | NZ1JJL |

2. The POC for this memorandum is **(b)(3), (b)(6)** at **(b)(3), (b)(6)** or **(b)(3), (b)(6)**

**(b)(3)(b)(6)**

Battalion S4

| WO# | JAZF0A902931 | | | | Admin# | D304 |
|---|---|---|---|---|---|---|

**EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET**
For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG

PAGE 1
OF Page

| 1. ORGANIZATION | 2. NOMENCLATURE AND | MODEL |
|---|---|---|
| D Company, 1-67 AR | TRUCK ARMORED MRAP | 100A01 |

| 3. a. REGISTRATION b. SERIAL | 4a. MILES | b. HOURS | c ROUNDS FIRED | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|
| a. NZ1JJL<br>b. ADR18J665394 | 3021 | | | | April 12, 2009 | ECOD |

| 7. (NSN) | 2355-01553-4634 | APPLICABLE REFERENCE | | (7e) LIN | YF200T |
|---|---|---|---|---|---|

| (7a) TM NUMBER | (7b) TM DATE | (7c) TM NUMBER (Parts) | (7d) TM DATE |
|---|---|---|---|
| TM 9-2355-106-10 | 9/1/2007 CHG2 | TM 9-2355-106-23-1 | Sep-07 |

COLUMN a - Enter TM item number.
COLUMN b - Enter the applicable condition status symbol
COLUMN c - Enter deficiencies and shortcomings

COLUMN d - Show corrective action for deficiency or shortcomings listed in column c.
COLUMN e - Individual ascertaining completed corrective action initial in this column

**STATUS SYMBOLS**

"X" - Indicates a deficiency in the equipment that places it in an inoperable status
CIRCLED "X" - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished
HORIZONTAL DASH "(-)" - Indicates that a required inspection, component replacement, maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

DIAGONAL "(/)"- Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.

LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL - Indicates that a completed satisfactory condition exists.

FOR AIRCRAFT - Status symbols will be recorded in red

*ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.*

| 8a. SIGNATURE (Person ... spection) | 8b. TIME | 9a. SIGNATURE (Maintenance Supervisor) | 9b. TIME | 10. MAN HOURS REQUIRED |
|---|---|---|---|---|
| (b)(3)(b)(6) | | (b)(3)(b)(6) | | |

| ITEM NO. a | STATUS b | DEFICIENCIES AND SHORTCOMINGS c | EST TIME | CORRECTIVE ACTION d | QTY | INITIAL WHEN Corrected e |
|---|---|---|---|---|---|---|
| | X | CATASTROPHIC DAMAGE; Vehicle destroyed by VBIED | | Noun: TRUCK ARMORED MRAP<br>NSN: 2355-01-553-4634 | 1 | |
| | | | | Noun:<br>NSN: | | |
| | | | | Noun:<br>NSN: | | |
| | | | | Noun:<br>NSN: | | |
| | | | | Noun:<br>NSN: | | |
| | | | | Noun:<br>NSN: | | |
| | | | | Noun:<br>NSN: | | |
| | | | | Noun:<br>NSN: | | |
| | | | | Noun:<br>NSN: | | |
| | | | | Noun:<br>NSN: | | |
| | | Sub Total | | Sub Total | | |

DA FORM 2404, APR 79      Replaces edition of 1 Jan 64, which will be used

| WO# | JAZF0A902951 | | | | | | | Admin# | M68-42 |
|---|---|---|---|---|---|---|---|---|---|

**EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET** — PAGE 1

For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG — OF Page

| 1. ORGANIZATION | 2. NOMENCLATURE AND | MODEL |
|---|---|---|
| D Company, 1-67 AR | M68 SIGHT, REFLEX | M68 |

| 3. a. REGISTRATION | b. SERIAL | 4a. MILES | b. HOURS | c. ROUNDS | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|---|
| a. | | | | | | April 14, 2009 | ECOD |
| b. | 1220880 | | | | | | |

| 7. (NSN) | 1240-01-411-1265 | APPLICABLE REFERENCE | (7e) LIN | S60288 |
|---|---|---|---|---|

| (7a) TM NUMBER | (7b) TM DATE | (7c) TM NUMBER (Parts) | (7d) TM DATE |
|---|---|---|---|
| TM 9-1240-01-411-1265 | Jul-04 | | |

COLUMN a - Enter TM item number.

COLUMN b - Enter the applicable condition status symbol

COLUMN c - Enter deficiencies and shortcomings

COLUMN d - Show corrective action for deficiency or **shortcomings listed in column c.**

COLUMN e - Individual ascertaining completed corrective action initial in this column

**STATUS SYMBOLS**

"X" - Indicates a deficiency in the equipment that places it in an inoperable status

CIRCLED "X" - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished

HORIZONTAL DASH "( - )" - Indicates that a required inspection, component replacement, maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

DIAGONAL "( / )"- Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.

LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL - Indicates that a completed satisfactory condition exists.

FOR AIRCRAFT - Status symbols will be recorded in red

**ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.**

| 8a. SIGNATURE (Person's) performing inspection) | 8b. TIME | 9a. SIGNATURE (Maintenance Supervisor) | 9b. TIME | 10. MAN HOURS REC |
|---|---|---|---|---|
| (b)(3)(b)(6) | | (b)(3)(b)(6) | | |

| ITEM NO. a | STATUS b | DEFICIENCIES AND SHORTCOMINGS c | EST TIME | CORRECTIVE ACTION d | | QTY | INITIAL WHEN Corrected e |
|---|---|---|---|---|---|---|---|
| | X | CATASTROPHIC DAMAGE | | Noun: | SIGHT, REFLEX | 1 | |
| | | | | NSN: | 1010-01-495-8511 | | |
| | | (b)(3)(b)(6) | | Noun: | | | |
| | | | | NSN: | | | |
| | | (b)(3)(b)(6)    TACom ARMAMENT LAR | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | Sub Total | | Sub Total | | | |

DA FORM 2404, APR 79        Replaces edition of 1 Jan 64, which will be used

| WO# | JAZF0A902960 | | Admin# | M68-116 |
|---|---|---|---|---|

**EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET**  PAGE 1  OF Page

For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG

| 1. ORGANIZATION | 2. NOMENCLATURE AND | MODEL |
|---|---|---|
| A Company, 1-67 AR | M68 SIGHT, REFLEX | M68 |

| 3. a. REGISTRATION | b. SERIAL | 4a. MILES | b. HOURS | c. ROUNDS FIRED | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|---|
| a.  b. | 1227057 | | | | | April 14, 2009 | ECOD |

| 7. (NSN) 1240-01-411-1265 | APPLICABLE REFERENCE | (7e) LIN | S60288 |
|---|---|---|---|

| (7a) TM NUMBER | (7b) TM DATE | (7c) TM NUMBER (Parts) | (7d) TM DATE |
|---|---|---|---|
| TM 9-5855-1914-13&P | Dec-06 | | |

COLUMN a - Enter TM item number.
COLUMN b - Enter the applicable condition status symbol
COLUMN c - Enter deficiencies and shortcomings
COLUMN d - Show corrective action for deficiency or shortcomings listed in column c.
COLUMN e - Individual ascertaining completed corrective action initial in this column

**STATUS SYMBOLS**

"X" - Indicates a deficiency in the equipment that places it in an inoperable status
CIRCLED "X" - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished
HORIZONTAL DASH "(-)" - Indicates that a required inspection, component replacement, maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

DIAGONAL "(/)"- Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.
LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL - Indicates that a completed satisfactory condition exists.
FOR AIRCRAFT - Status symbols will be recorded in red

ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.

| 8a. SIGNATURE (Person's) performing inspection) | 8b. TIME | 9a. SIGNATURE (Maintenance Supervisor) | 9b. TIME | 10. MAN HOURS REQUIRED |
|---|---|---|---|---|
| (b)(3)(b)(6) | | (b)(3)(b)(6) | | |

| TM ITEM NO. a | STATUS b | DEFICIENCIES AND SHORTCOMINGS c | EST TIME | CORRECTIVE ACTION d | QTY | INITIAL WHEN Corrected e |
|---|---|---|---|---|---|---|
| | X | CATASTROPHIC DAMAGE | | Noun: SIGHT, REFLEX  NSN: 1240-01-411-1265 | 1 | |
| | | (b)(3)(b)(6) | | Noun:  NSN: | | |
| | | (b)(3)(b)(6) TACOM BROKE UP | | Noun:  NSN: | | |
| | | | | Noun:  NSN: | | |
| | | | | Noun:  NSN: | | |
| | | | | Noun:  NSN: | | |
| | | | | Noun:  NSN: | | |
| | | | | Noun:  NSN: | | |
| | | | | Noun:  NSN: | | |
| | | Sub Total | | Sub Total | | |

DA FORM 2404, APR 79    Replaces edition of 1 Jan 64, which will be used

| WO# | JAZF0A902952 | | | | | | Admin# | M68-124 |
|---|---|---|---|---|---|---|---|---|

**EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET**

For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG

PAGE: 1
OF Page

| 1. ORGANIZATION | 2. NOMENCLATURE AND | MODEL |
|---|---|---|
| A Company, 1-67 AR | M68 SIGHT, REFLEX | M68 |

| 3. a. REGISTRATION | b. SERIAL | 4a. MILES | b. HOURS | c. ROUNDS FIRED | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|---|
| a. | | | | | | April 14, 2009 | ECOD |
| b. | 1225807 | | | | | | |

| 7. (NSN) 1240-01-411-1265 | APPLICABLE REFERENCE | (7e) LIN | S60288 |
|---|---|---|---|

| (7a) TM NUMBER | (7b) TM DATE | (7c) TM NUMBER (Parts) | (7d) TM DATE |
|---|---|---|---|
| TM 9-5855-1914-13&P | Dec-06 | | |

| COLUMN a - Enter TM item number. | COLUMN d - Show corrective action for deficiency or shortcomings listed in column c. |
|---|---|
| COLUMN b - Enter the applicable condition status symbol | |
| COLUMN c - Enter deficiencies and shortcomings | COLUMN e - Individual ascertaining completed corrective action initial in this column |

**STATUS SYMBOLS**

"X" - Indicates a deficiency in the equipment that places it in an inoperable status

CIRCLED "X" - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished

IORIZONTAL DASH "(-)" - Indicates that a required inspection, component replacement. maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

DIAGONAL "(/)"- Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.

LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL - Indicates that a completed satisfactory condition exists.

FOR AIRCRAFT - Status symbols will be recorded in red

**ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.**

| 8a. SIGNATURE (Person's) performing inspection) | 8b. TIME | 9a. SIGNATURE (Maintenance Supervisor) | 9b. TIME | 10. MAN HOURS REQUIRED |
|---|---|---|---|---|
| (b)(3)(b)(6) | | (b)(3)(b)(6) | | |

| TM ITEM NO. | STATUS | DEFICIENCIES AND SHORTCOMINGS | | CORRECTIVE ACTION | | INITIAL WHEN Corrected |
|---|---|---|---|---|---|---|
| a | b | c | EST TIME | d | QTY | e |
| | X | CATASTROPHIC DAMAGE | | Noun: SIGHT, REFLEX | 1 | |
| | | | | NSN: 1240-01-411-1265 | | |
| | | (b)(3)(b)(6) | | Noun: | | |
| | | | | NSN: | | |
| | | (b)(3)(b)(6)   TACOM ARMAMENTLAR | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |

| WO# | JAZF0A902959 | | Admin# | A46L |
|---|---|---|---|---|

| EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET | PAGE | 1 |
|---|---|---|
| For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG | OF Page | |

| 1. ORGANIZATION | 2. NOMENCLATURE AND | MODEL |
|---|---|---|
| A Company, 1-67 AR | ILLUMI INFR AN/PEQ 15 | AN/PEQ 15 |

| 3. a. REGISTRATION | b. SERIAL | 4a. MILES | b. HOURS | c. ROUNDS FIRED | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|---|
| a. | | | | | | April 14, 2009 | ECOD |
| b. | 146347 | | | | | | |

| 7. (NSN) | 5855-01-534-5931 | APPLICABLE REFERENCE | (7e) LIN | J03261 |
|---|---|---|---|---|

| (7a) TM NUMBER | (7b) TM DATE | (7c) TM NUMBER (Parts) | (7d) TM DATE |
|---|---|---|---|
| TM 9-5855-1914-13&P | Dec-06 | | |

**COLUMN a** - Enter TM item number.

**COLUMN b** - Enter the applicable condition status symbol

**COLUMN c** - Enter deficiencies and shortcomings

**COLUMN d** - Show corrective action for deficiency or shortcomings listed in column c.

**COLUMN e** - Individual ascertaining completed corrective action initial in this column

### STATUS SYMBOLS

**"X"** - Indicates a deficiency in the equipment that places it in an inoperable status

**CIRCLED "X"** - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished

**HORIZONTAL DASH "(- )"** - Indicates that a required inspection, component replacement, maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

**DIAGONAL "( / )"** - Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.

**LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL** - Indicates that a completed satisfactory condition exists.

**FOR AIRCRAFT** - Status symbols will be recorded in red

*ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.*

| 8a. SIGNATURE (Person's) performing inspection) | 8b. TIME | 9a. SIGNATURE (Maintenance Supervisor) | 9b. TIME | 10. MAN HOURS REQUIRED |
|---|---|---|---|---|
| (b)(3)(b)(6) | | (b)(3)(b)(6) | | |

| ITEM NO. a | STATUS b | DEFICIENCIES AND SHORTCOMINGS c | EST TIME | CORRECTIVE ACTION d | | QTY | INITIAL WHEN Corrected e |
|---|---|---|---|---|---|---|---|
| | X | CATASTROPHIC DAMAGE | | Noun: | ILLUMINATOR, | 1 | |
| | | | | NSN: | 5855-01-534-5931 | | |
| | | (b)(3)(b)(6) | | Noun: | | | |
| | | | | NSN: | | | |
| | (b)(3)(b)(6) | TACON ARMAMENT LAR | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | Sub Total | | Sub Total | | | |

DA FORM 2404, APR 79          Replaces edition of 1 Jan 64, which will be used

| WO# | JAZF0A902958 | | Admin# | A34L |
|---|---|---|---|---|

| EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET | | PAGE | 1 |
|---|---|---|---|
| For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG | | OF Page | |

| 1. ORGANIZATION | 2. NOMENCLATURE AND | MODEL |
|---|---|---|
| A Company, 1-67 AR | ILLUMI INFR AN/PEQ 15 | AN/PEQ |

| 3. a. REGISTRATION | b. SERIAL | 4a. MILES | b. HOURS | c. ROUNDS | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|---|
| a. | | | | | | April 14, 2009 | ECOD |
| b. | 146018 | | | | | | |

| 7. (NSN) | 5855-01-534-5931 | APPLICABLE REFERENCE | | (7e) LIN | J03261 |
|---|---|---|---|---|---|

| (7a) TM NUMBER | (7b) TM DATE | (7c) TM NUMBER (Parts) | (7d) TM DATE |
|---|---|---|---|
| TM 9-5855-1914-13&P | Dec-06 | | |

**COLUMN a** - Enter TM item number.
**COLUMN b** - Enter the applicable condition status symbol
**COLUMN c** - Enter deficiencies and shortcomings

**COLUMN d** - Show corrective action for deficiency or **shortcomings listed in column c.**

**COLUMN e** - Individual ascertaining completed corrective action initial in this column

**STATUS SYMBOLS**

"X" - Indicates a deficiency in the equipment that places it in an inoperable status
**CIRCLED "X"** - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished
HORIZONTAL DASH "( - )" - Indicates that a required inspection, component replacement, maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

DIAGONAL "( / )"- Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.

**LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL -** Indicates that a completed satisfactory condition exists.

**FOR AIRCRAFT** - Status symbols will be recorded in red

*ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.*

| 8a. SIGNATURE (Person's) performing inspection) | 8b. TIME | 9a. SIGNATURE (Maintenance Supervisor) | 9b. TIME | 10. MAN HOURS REC |
|---|---|---|---|---|
| (b)(3)(b)(6) | | (b)(3)(b)(6) | | |

| TM ITEM NO. a | STATUS b | DEFICIENCIES AND SHORTCOMINGS c | EST TIME | CORRECTIVE ACTION d | | QTY | INITIAL WHEN Corrected e |
|---|---|---|---|---|---|---|---|
| | X | CATASTROPHIC DAMAGE | | Noun: | ILLUMINATOR | 1 | |
| | | | | NSN: | 5855-01534-5931 | | |
| | | (b)(3)(b)(6) | | Noun: | | | |
| | | | | NSN: | | | |
| | | (b)(3)(b)(6) TAСОН ARMAMENT LDR | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | Sub Total | | Sub Total | | | |

**DA FORM 2404, APR 79**     Replaces edition of 1 Jan 64, which will be used

| WO# | JAZF0A902957 | | Admin# | A44L |
|---|---|---|---|---|

| EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET | PAGE | 1 |
|---|---|---|
| For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG | OF Page | |

| 1. ORGANIZATION | 2. NOMENCLATURE AND | MODEL |
|---|---|---|
| A Company, 1-67 AR | ILLUMI INFR AN/PEQ 15 | AN/PEQ 15 |

| 3. a. REGISTRATION | b. SERIAL | 4a. MILES | b. HOURS | c. ROUNDS FIRED | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|---|
| a. | | | | | | April 14, 2009 | ECOD |
| b. | 146334 | | | | | | |

| 7. (NSN) | 5855-01-534-5931 | APPLICABLE REFERENCE | (7e) LIN | J03261 |
|---|---|---|---|---|

| (7a) TM NUMBER | (7b) TM DATE | (7c) TM NUMBER (Parts) | (7d) TM DATE |
|---|---|---|---|
| TM 9-5855-1914-13&P | Dec-06 | | |

| COLUMN a - Enter TM item number. | COLUMN d - Show corrective action for deficiency or shortcomings listed in column c. |
|---|---|
| COLUMN b - Enter the applicable condition status symbol | |
| COLUMN c - Enter deficiencies and shortcomings | COLUMN e - Individual ascertaining completed corrective action initial in this column |

### STATUS SYMBOLS

"X" - Indicates a deficiency in the equipment that places it in an inoperable status

CIRCLED "X" - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished

HORIZONTAL DASH "(-)" - Indicates that a required inspection, component replacement, maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

DIAGONAL "(/)"- Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.

LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL - Indicates that a completed satisfactory condition exists.

FOR AIRCRAFT - Status symbols will be recorded in red

**ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.**

| 8a. SIGNA (b)(3)(b)(6) ction) | 8b. TIME | 9a. SIGNATURE (Maintenance Supervisor) (b)(3)(b)(6) | 9b. TIME | 10. MAN HOURS REQUIRED |
|---|---|---|---|---|
| | | | | |

| TM ITEM NO. a | STATUS b | DEFICIENCIES AND SHORTCOMINGS c | EST TIME | CORRECTIVE ACTION d | QTY | INITIAL WHEN Corrected e |
|---|---|---|---|---|---|---|
| | X | CATASTROPHIC DAMAGE | | Noun: ILLUMINATOR, | 1 | |
| | | | | NSN: 5855-01-534-5931 | | |
| | | (b)(3)(b)(6) | | Noun: | | |
| | | | | NSN: | | |
| | (b)(3)(b)(6) | TACOMA ARMAMENT WBR | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | Sub Total | | Sub Total | | |

DA FORM 2404, APR 79          Replaces edition of 1 Jan 64, which will be used

| WO# | JAZF0A902961 | | | | | Admin# | 78 |
|---|---|---|---|---|---|---|---|

**EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET**

For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG

PAGE 1 OF Page

| 1. ORGANIZATION | 2. NOMENCLATURE AND | MODEL |
|---|---|---|
| D Company, 1-67 AR | RIFLE, 5.56MM, M4 | M4 RIFLE |

| 3. a. REGISTRATION | b. SERIAL | 4a. MILES | b. HOURS | c. ROUNDS FIRED | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|---|
| a. | | | | | | April 14, 2009 | ECOD |
| b. | W510218 | | | | | | |

| 7. (NSN) | 1005-01-231-0973 | APPLICABLE REFERENCE | | (7e) LIN | R97234 |
|---|---|---|---|---|---|

| (7a) TM NUMBER | (7b) TM DATE | (7c) TM NUMBER (Parts) | (7d) TM DATE |
|---|---|---|---|
| TM 9-1005-319-10 | May-01 | TM 9-1005-319-23&P | May-07 |

**COLUMN a** - Enter TM item number.

**COLUMN b** - Enter the applicable condition status symbol

**COLUMN c** - Enter deficiencies and shortcomings

**COLUMN d** - Show corrective action for deficiency or shortcomings listed in column c.

**COLUMN e** - Individual ascertaining completed corrective action initial in this column

**STATUS SYMBOLS**

**"X"** - Indicates a deficiency in the equipment that places it in an inoperable status

**CIRCLED "X"** - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished

**HORIZONTAL DASH "( - )"** - Indicates that a required inspection, component replacement, maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

**DIAGONAL "( / )"** - Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.

**LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL** - Indicates that a completed satisfactory condition exists.

**FOR AIRCRAFT** - Status symbols will be recorded in red

*ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.*

| 8a. SIGNATURE (Demonstrate of continuing protection) | 8b. TIME | 9b. TIME | 10. MAN HOURS REQUIRED |
|---|---|---|---|
| (b)(3)(b)(6) | | (b)(3)(b)(6) | |

| T ITEM NO. | STATUS | DEFICIENCIES AND SHORTCOMINGS | | CORRECTIVE ACTION | | | INITIAL WHEN Corrected |
|---|---|---|---|---|---|---|---|
| a | b | c | EST TIME | d | | QTY | e |
| | X | CATASTROPHIC DAMAGE | | Noun: | RIFLE 5.56 MILLIMETER | 1 | |
| | | | | NSN: | 1005-01-231-0973 | | |
| | . | | | Noun: | | | |
| | | (b)(3)(b)(6) | | NSN: | | | |
| | | | | Noun: | | | |
| | (b)(3)(b)(6) | TACOM ARMM EST AR | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | Sub Total | | Sub Total | | | |

**DA FORM 2404, APR 79**    Replaces edition of 1 Jan 64, which will be used

| WO# | JAZF0A902956 | | Admin# | M4-48 |
|---|---|---|---|---|

**EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET** — PAGE 1 OF Page
For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG

| 1. ORGANIZATION | 2. NOMENCLATURE AND | MODEL |
|---|---|---|
| D Company, 1-67 AR | RIFLE, 5.56MM, M4 | M4 RIFLE |

| 3. a. REGISTRATION | b. SERIAL | 4a. MILES | b. HOURS | c. ROUNDS FIRED | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|---|
| a. | | | | | | April 14, 2009 | ECOD |
| b. | W509497 | | | | | | |

| 7. (NSN) | 1005-01-231-0973 | APPLICABLE REFERENCE | (7e) LIN | R97234 |
|---|---|---|---|---|

| (7a) TM NUMBER | (7b) TM DATE | (7c) TM NUMBER (Parts) | (7d) TM DATE |
|---|---|---|---|
| TM 9-1005-319-10 | May-01 | TM 9-1005-319-23&P | May-07 |

**COLUMN a** - Enter TM item number.
**COLUMN b** - Enter the applicable condition status symbol
**COLUMN c** - Enter deficiencies and shortcomings

**COLUMN d** - Show corrective action for deficiency or shortcomings listed in column c.
**COLUMN e** - Individual ascertaining completed corrective action initial in this column

**STATUS SYMBOLS**

"X" - Indicates a deficiency in the equipment that places it in an inoperable status
CIRCLED "X" - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished
HORIZONTAL DASH "(-)" - Indicates that a required inspection, component replacement, maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

DIAGONAL "(/)" - Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.

LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL - Indicates that a completed satisfactory condition exists.

FOR AIRCRAFT - Status symbols will be recorded in red

**ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.**

| 8a. SIGNATURE (Person's) performing inspection) | 8b. TIME | 9a. SIGNATURE (Maintenance Supervisor) | 9b. TIME | 10. MAN HOURS REQUIRED |
|---|---|---|---|---|
| (b)(3)(b)(6) | | (b)(3)(b)(6) | | |

| TM ITEM NO. a | STATUS b | DEFICIENCIES AND SHORTCOMINGS c | EST TIME | CORRECTIVE ACTION d | | QTY | INITIAL WHEN Corrected e |
|---|---|---|---|---|---|---|---|
| | X | CATASTROPHIC DAMAGE | | Noun: | RIFLE 5.56 MILLIMETER | 1 | |
| | | | | NSN: | 1005-01-231-0973 | | |
| | | (b)(3)(b)(6) | | Noun: | | | |
| | | | | NSN: | | | |
| | | (b)(3)(b)(6)  1 ACOM ARMAMENT LAB | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | Sub Total | | Sub Total | | | |

**DA FORM 2404, APR 79**    Replaces edition of 1 Jan 64, which will be used

| WO# | JAZF0A902950 | | | | | Admin# | M4-48 |
|---|---|---|---|---|---|---|---|

**EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET** — PAGE 1 OF Page

For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG

| 1. ORGANIZATION | 2. NOMENCLATURE AND | MODEL |
|---|---|---|
| D Company, 1-67 AR | RIFLE, 5.56MM, M4 | M4 RIFLE |

| 3. a. REGISTRATION b. SERIAL | 4a. MILES | b. HOURS | c. ROUNDS FIRED | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|
| a. b. W028991 | | | | | April 14, 2009 | ECOD |

| 7. (NSN) 1005-01-231-0973 | APPLICABLE REFERENCE | (7e) LIN R97234 |
|---|---|---|

| (7a) TM NUMBER | (7b) TM DATE | (7c) TM NUMBER (Parts) | (7d) TM DATE |
|---|---|---|---|
| TM 9-1005-319-10 | May-01 | TM 9-1005-319-23&P | May-07 |

**COLUMN a** - Enter TM item number.
**COLUMN b** - Enter the applicable condition status symbol
**COLUMN c** - Enter deficiencies and shortcomings
**COLUMN d** - Show corrective action for deficiency or shortcomings listed in column c.
**COLUMN e** - Individual ascertaining completed corrective action initial in this column

STATUS SYMBOLS

"X" - Indicates a deficiency in the equipment that places it in an inoperable status
CIRCLED "X" - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished
HORIZONTAL DASH "( - )" - Indicates that a required inspection, component replacement, maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

DIAGONAL "(/)"- Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.
LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL - Indicates that a completed satisfactory condition exists.
FOR AIRCRAFT - Status symbols will be recorded in red

ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.

| 8a. (b)(3)(b)(6) | 8b. TIME | (b)(3)(b)(6) | 9b. TIME | 10. MAN HOURS REQUIRED |
|---|---|---|---|---|

| TM ITEM NO. a | STATUS b | DEFICIENCIES AND SHORTCOMINGS c | EST TIME | CORRECTIVE ACTION d | QTY | INITIAL WHEN Corrected e |
|---|---|---|---|---|---|---|
| | X | CATASTROPHIC DAMAGE | | Noun: RIFLE 5.56 MILLIMETER / NSN: 1005-01-231-0973 | 1 | |
| | | (b)(3)(b)(6) | | Noun: / NSN: | | |
| | | (b)(3)(b)(6) Jacon ARMAMENT LAR | | Noun: / NSN: | | |
| | | | | Noun: / NSN: | | |
| | | | | Noun: / NSN: | | |
| | | | | Noun: / NSN: | | |
| | | | | Noun: / NSN: | | |
| | | | | Noun: / NSN: | | |
| | | | | Noun: / NSN: | | |
| | | Sub Total | | Sub Total | | |

**DA FORM 2404, APR 79**    Replaces edition of 1 Jan 64, which will be used

| | | WO# | **JAZF0A902955** | | Admin# | 60 |
|---|---|---|---|---|---|---|
| | EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET | | | | PAGE | 1 |
| | For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG | | | | 0F Page | |

| 1. ORGANIZATION | | | | | 2. NOMENCLATURE AND | | | MODEL |
|---|---|---|---|---|---|---|---|---|
| D Company, 1-67 AR | | | | | RIFLE, 5.56MM, M4 | | | M4 RIFLE |

| 3. a. REGISTRATION b. SERIAL | 4a. MILES | b. HOURS | c. ROUNDS | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|
| a. | | | | | April 14, 2009 | *ECOD* |
| b.   W480686 | | | | | | |

| 7. (NSN)   1005-01-231-0973 | APPLICABLE REFERENCE | (7e) LIN | R97234 |
|---|---|---|---|
| (7a) TM NUMBER | (7b) TM DATE | (7c) TM NUMBER (Parts) | (7d) TM DATE |
| TM 9-1005-319-10 | May-01 | TM 9-1005-319-23&P | May-07 |

| COLUMN a - Enter TM item number. | COLUMN d - Show corrective action for deficiency or |
|---|---|
| COLUMN b - Enter the applicable condition status symbol | shortcomings listed in column c. |
| COLUMN c - Enter deficiencies and shortcomings | COLUMN e - Individual ascertaining completed corrective action initial In this column |

**STATUS SYMBOLS**

"X" - Indicates a deficiency in the equipment that places it in an inoperable status

CIRCLED "X" - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished

HORIZONTAL DASH "( - )" - Indicates that a required inspection, component replacement, maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

DIAGONAL "( / )"- Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.

LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL - Indicates that a completed satisfactory condition exists.

FOR AIRCRAFT - Status symbols will be recorded in red

*ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.*

| 8a. SIGNATURE (Person(s) performing Inspection) | 8b. TIME | 9a. SIGNATURE (Maintenance Supervisor) | 9b. TIME | 10. MAN HOURS REQ |
|---|---|---|---|---|
| (b)(3)(b)(6) | | (b)(3)(b)(6) | | |

| ITEM NO. | STATUS | DEFICIENCIES AND SHORTCOMINGS | EST TIME | CORRECTIVE ACTION | | QTY | INITIAL WHEN Corrected |
|---|---|---|---|---|---|---|---|
| a | b | c | | d | | | e |
| | X | CATASTROPHIC DAMAGE | | Noun: | RIFLE 5.56 MILLIMETER | 1 | |
| | | | | NSN: | 1005-01-231-0973 | | |
| | | (b)(3)(b)(6) | | Noun: | | | |
| | | | | NSN: | | | |
| | (b)(3)(b)(6) | T A L con ARAMENT LA2 | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | | | Noun: | | | |
| | | | | NSN: | | | |
| | | Sub Total | | *Sub Total* | | | |

**DA FORM 2404, APR 79**     Replaces edition of 1 Jan 64, which will be used

| WO# | JAZF0A902954 | | Admin# | 62 |
|---|---|---|---|---|

**EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET**  | PAGE | 1
For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG | OF Page

| ORGANIZATION | 2. NOMENCLATURE AND | MODEL |
|---|---|---|
| D Company, 1-67 AR | RILFE, 5.56MM, M4 | M4 RIFLE |

| 3. a. REGISTRATION | b. SERIAL | 4a. MILES | b. HOURS | c. ROUNDS | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|---|
| a. | | | | | | April 14, 2009 | |
| b. | W481145 | | | | | | |

| 7. (NSN) | 5855-01-534-5931 | APPLICABLE REFERENCE | (7e) LIN | J03261 |
|---|---|---|---|---|

| (7a) TM NUMBER | (7b) TM DATE | (7c) TM NUMBER (Parts) | (7d) TM DATE |
|---|---|---|---|
| TM 9-1005-319-10 | May-01 | TM 9-1005-319-23&P | May-09 |

| | |
|---|---|
| COLUMN a - Enter TM item number. | COLUMN d - Show corrective action for deficiency or shortcomings listed in column c. |
| COLUMN b - Enter the applicable condition status symbol | |
| COLUMN c - Enter deficiencies and shortcomings | COLUMN e - Individual ascertaining completed corrective action initial in this column |

**STATUS SYMBOLS**

"X" - Indicates a deficiency in the equipment that places it in an inoperable status

CIRCLED "X" - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished

HORIZONTAL DASH "( - )" - Indicates that a required inspection, component replacement, maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

DIAGONAL "( / )"- Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.

LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL - Indicates that a completed satisfactory condition exists.

FOR AIRCRAFT - Status symbols will be recorded in red

*ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.*

| 8a. SIGNATURE (Person's) performing inspection) | 8b. TIME | | 9b. TIME | 10. MAN HOURS REC |
|---|---|---|---|---|
| (b)(3)(b)(6) | | (b)(3)(b)(6) | | |

| TM ITEM NO. | STATUS | DEFICIENCIES AND SHORTCOMINGS | | CORRECTIVE ACTION | | INITIAL WHEN Corrected |
|---|---|---|---|---|---|---|
| a | b | c | EST TIME | d | QTY | e |
| | X | CATASTROPHIC DAMAGE | | Noun: RIFLE 5.56 MILLIMETER | 1 | |
| | | | | NSN: 1005-01-231-0973 | | |
| | | (b)(3)(b)(6) | | Noun: | | |
| | | | | NSN: | | |
| | | (b)(3)(b)(6)    T Acom Akerpmen74AB | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | Sub Total | | *Sub Total* | | |

**DA FORM 2404, APR 79**    Replaces edition of 1 Jan 64, which will be used

| WO# | JAZF0A902953 | | | | | | | | Admin# | 305A |
|---|---|---|---|---|---|---|---|---|---|---|

**EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET**
For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG

PAGE: 1
0F Page

| 1. ORGANIZATION | | | | | 2. NOMENCLATURE AND | | | MODEL |
|---|---|---|---|---|---|---|---|---|
| D Company, 1-67 AR | | | | | LCHR | | | M203A2 |

| 3. a. REGISTRATION | b. SERIAL | 4a. MILES | b. HOURS | c. ROUNDS | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|---|
| a. | | | | | | April 14, 2009 | ECOD |
| b. | 58993 | | | | | | |

| 7. (NSN) | 1010-01-495-8511 | | APPLICABLE REFERENCE | | (7e) LIN | L69012 |
|---|---|---|---|---|---|---|
| (7a) TM NUMBER | | (7b) TM DATE | (7c) TM NUMBER (Parts) | | | (7d) TM DATE |
| TM 9-1005-221-10 | | Aug-01 | TM 9-1005-221-23&P | | | Jan-93 |

**COLUMN a** - Enter TM item number.
**COLUMN b** - Enter the applicable condition status symbol
**COLUMN c** - Enter deficiencies and shortcomings

**COLUMN d** - Show corrective action for deficiency or shortcomings listed in column c.
**COLUMN e** - Individual ascertaining completed corrective action Initial in this column

**STATUS SYMBOLS**

"X" - Indicates a deficiency in the equipment that places it in an inoperable status
CIRCLED "X" - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished
HORIZONTAL DASH "(-)" - Indicates that a required inspection, component replacement, maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

DIAGONAL "(/)" - Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.

LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL - Indicates that a completed satisfactory condition exists.

FOR AIRCRAFT - Status symbols will be recorded in red

*ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.*

| 8a. SIGNATURE *(Person's) performing inspection)* | 8b. TIME | | 9b. TIME | 10. MAN HOURS REC |
|---|---|---|---|---|
| (b)(3)(b)(6) | | (b)(3)(b)(6) | | |

| TM ITEM NO. | STATUS | DEFICIENCIES AND SHORTCOMINGS | | CORRECTIVE ACTION | | INITIAL WHEN Corrected |
|---|---|---|---|---|---|---|
| a | b | c | EST TIME | d | QTY | e |
| | X | CATASTROPHIC DAMAGE | | Noun: LCHR GREN 40MM | 1 | |
| | | | | NSN: 1010-01-495-8511 | | |
| | | (b)(3)(b)(6) | | Noun: | | |
| | | | | NSN: | | |
| | (b)(3)(b)(6) | TACOM ARMAMENT LAR | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | Sub Total | | Sub Total | | |

**DA FORM 2404, APR 79**    Replaces edition of 1 Jan 64, which will be used

| WO# | JAZF0A902949 | | Admin# | M2-4 |
|---|---|---|---|---|

| EQUIPMENT INSPECTION AND MAINTENANCE WORKSHEET | PAGE | 1 |
|---|---|---|
| For use of this form, see DA Pam 738-750 and 738-751; the proponent agency is DCSLOG | OF Page | |

| 1. ORGANIZATION | 2. NOMENCLATURE AND | MODEL |
|---|---|---|
| D Company, 1-67 AR | MACHINE GUN, CALIBER .50 CAL M2 | M2MG |

| 3. a. REGISTRATION | b. SERIAL | 4a. MILES | b. HOURS | c. ROUNDS | d. HOT STARTS | 5. DATE | 6. TYPE OF INSPECTION |
|---|---|---|---|---|---|---|---|
| a. | | | | | | April 12, 2009 | ECOD |
| b. | 69319 / | | | | | | |

| 7. (NSN) | 1005-00-322-9715 | APPLICABLE REFERENCE | | (7e) LIN | L91975 |
|---|---|---|---|---|---|

| (7a) TM NUMBER | (7b) TM DATE | (7c) TM NUMBER (Parts) | (7d) TM DATE |
|---|---|---|---|
| TM 9-1005-213-10 | Sep-09 | TM 9-1005-213-23&P | Sep-07 |

| COLUMN a - Enter TM item number. | COLUMN d - Show corrective action for deficiency or shortcomings listed in column c. |
|---|---|
| COLUMN b - Enter the applicable condition status symbol | |
| COLUMN c - Enter deficiencies and shortcomings | COLUMN e - Individual ascertaining completed corrective action initial in this column |

**STATUS SYMBOLS**

"X" - Indicates a deficiency in the equipment that places it in an inoperable status

CIRCLED "X" - Indicates a deficiency, however, the equipment may be operated under specific Limitations as directed by higher authority or as prescribed locally, until corrective action can be accomplished

HORIZONTAL DASH "( - )" - Indicates that a required inspection, component replacement, maintenance operation check or test flight is due but has not been accomplished, or an overdue MWO has not been accomplished

DIAGONAL "( / )"- Indicates a material defect other than a deficiency which must be corrected to increase efficiency or make the item completely serviceable.

LAST NAME INITIAL IN BLACK, BLUE BLACK INK, OR PENCIL - Indicates that a completed satisfactory condition exists.

FOR AIRCRAFT - Status symbols will be recorded in red

**ALL INSPECTIONS AND EQUIPMENT CONDITIONS RECORDED ON THIS FORM HAVE BEEN DETERMINED IN ACCORDANCE WITH DIAGNOSTIC PROCEDURES AND STANDARDS IN THE TM CITED HEREIN.**

| 8a. SIGNATURE (Ger...... .........  .. .... ction) | 8b. TIME | 9a. SIGNATURE (Maintenance Super......tor) | 9b. TIME | 10. MAN HOURS REC |
|---|---|---|---|---|
| (b)(3)(b)(6) | | (b)(3)(b)(6) | | |

| TM ITEM NO. | STATUS | DEFICIENCIES AND SHORTCOMINGS | | CORRECTIVE ACTION | | INITIAL WHEN Corrected |
|---|---|---|---|---|---|---|
| a | b | c | EST TIME | d | QTY | e |
| | X | CATASTROPHIC DAMAGE | | Noun: MACHINE GUN, CAL .50 | 1 | |
| | | | | NSN: 1005-00-322-9715 | | |
| | | (b)(3)(b)(6) | | Noun: | | |
| | | | | NSN: | | |
| | | (b)(3)(b)(6)   ↑Aτιミllλ2ιλλΑΝΤιΑ 5ιん | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | | | Noun: | | |
| | | | | NSN: | | |
| | | Sub Total | | Sub Total | | |

**DA FORM 2404, APR 79**     Replaces edition of 1 Jan 64. which will be used

# DEPARTMENT OF THE ARMY



# POSTHUMOUS CERTIFICATE OF PROMOTION

TO ALL WHO SHALL SEE THESE PRESENTS, GREETING

Know ye, that the President of the United States, has reposed special trust
and confidence in the patriotism, valor, fidelity, and abilities of Bryce E.
Gautier who died on the 10th of April, 2009. Under the provisions of Public
Law No. 680, passed by the 77th Congress and signed into law on the 28th of
July, 1942, I do hereby appoint him as Private First Class in the United States
Army from the 10th day of April, 2009.

Given at the City of Washington, DC this 13th day of April, 2009.

BY AUTHORITY OF THE SECRETARY OF THE ARMY

(b)(3); (b)(6)

# DEPARTMENT OF THE ARMY



# POSTHUMOUS CERTIFICATE OF PROMOTION

TO ALL WHO SHALL SEE THESE PRESENTS, GREETING:

Know ye, that the President of the United States, has reposed special trust
and confidence in the patriotism, valor, fidelity, and abilities of Bryan E. Hall
who died on the 10th of April, 2009.  Under the provisions of Public Law No.
680, passed by the 77th Congress and signed into law on the 28th of July,
1942, I do hereby appoint him as Sergeant First Class in the United States
Army from the 10th day of April, 2009.

Given at the City of Washington, DC this 13th day of April, 2009.

BY AUTHORITY OF THE SECRETARY OF THE ARMY:

(b)(3), (b)(6)

DA FORM 3168, APR 2000. Edition of Jan 2000 will be used.

Pages 147 through 150 redacted for the following reasons:
- - - - - - - - - - - - - - - - - - - - - - - - -
b)(5)