UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT MARTINO, *et al.*,

    *Plaintiffs*,

v.

ISLAMIC REPUBLIC OF IRAN,

    *Defendant.*

Civil Action No. 21-1808 (RDM)

**UNDER SEAL**

## MEMORANDUM OPINION

Between 2003 and 2017, an array of terrorist organizations perpetrated over 200 attacks against United States servicemembers and civilians in Iraq. The 623 Plaintiffs in this action are family members of individuals killed in these attacks ("Family-Member Plaintiffs"), as well as one direct victim ("Survivor Plaintiff"). Plaintiffs have suffered immensely from losing their loved ones in these violent attacks, and the Survivor Plaintiff's life has been forever altered by his injuries. Plaintiffs bring this suit against the Islamic Republic of Iran, invoking the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(a), to recover for those irreparable injuries.

Pursuant to the case management order, Dkt. 35, on September 30, 2024, the Court issued a memorandum opinion pertaining to a subset of 45 "Bellwether Plaintiffs" associated with 25 "Bellwether Attacks." *See* Dkt. 60 at 1–2. The Court concluded that (1) "Iran provided the Zarqawi organization and [Ansar al-Islam] with significant support in the form of arms, funding, training, technical expertise, and safe haven," (2) the Zarqawi organization and [Ansar al-Islam] carried out the Bellwether Attacks, and (3) "neither the Zarqawi organization nor [Ansar al-Islam] would have been able to effectuate the attacks . . . without the assistance of Iran and that

the attacks were a foreseeable result of Iran's material support." Dkt. 60 at 8–10. Based on these findings, the Court held that it had subject-matter jurisdiction over Plaintiffs' claims, *see id.* at 89 (citing 28 U.S.C. § 1605A(a)(1)), that it had personal jurisdiction over Iran, *id.* at 99, and that Iran was liable for Plaintiffs' injuries and losses, *id.* at 90–91. The Court, accordingly, granted Plaintiffs' motion for entry of default judgment against Iran. *Id.* at 102.

Having granted Plaintiffs' motion for default judgment against Iran with regard to liability, the Court referred the case to a special master, Stephen A. Saltzburg, to prepare proposed findings of fact and recommendations for damages for the Bellwether Plaintiffs. *See* Min. Order (Oct. 9, 2024). The Special Master has now filed his report. *See* Dkt. 66. In compiling his report and drafting his recommendations, the Special Master relied on sworn declarations, medical records, birth certificates, passports and an expert report. *E.g.*, *id.* at 11, 23. The report explains the effects that the attacks have had on the Family-Member Plaintiffs and the Survivor Plaintiff, and it carefully analyzes these effects under the applicable framework for state-sponsored terrorism cases. The Court thanks the Special Master for his thorough and thoughtful analysis and assistance.

As explained below, the Court adopts the proposed findings and recommendations of the Special Master. In addition, the Court will award punitive damages to the Bellwether Plaintiffs. In total, the Court awards the Bellwether Plaintiffs $555,179,304 in compensatory damages and $555,179,304 in punitive damages.

## I. ANALYSIS

As an initial matter, the Court adopts the Special Master's findings of fact, all of which are well explained and amply supported by the record. The Court will first review the Special Master's conclusions with respect to the economic and non-economic damages for the Survivor

Plaintiff, followed by solatium damages for the Family-Member Plaintiffs, and will then turn to the question of punitive damages, which is not addressed in the Special Master's report, and prejudgment interest.

**A.   Survivor Plaintiff**

   1.   *Economic Damages*

"Section 1605A explicitly provides that foreign state-sponsors of terrorism are liable to victims for economic losses stemming from injuries or death sustained as a result of the foreign state's conduct." *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 48 (D.D.C. 2016) (citing 28 U.S.C. § 1605A(c)). Traditionally, plaintiffs may prove economic losses by the submission of a forensic economist's expert report. *See Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402 (D.D.C. 2015). When evaluating an expert's calculations, the Court must consider the "reasonableness and foundation of the assumptions relied upon by the expert." *Id.* at 402 (citing *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012)).

The Survivor Plaintiff, Sgt. Adam Kisielewski (ret.), seeks to recover the loss of income and benefits stemming from his injuries. In support of his claim, Sgt. Kisielewski submits an expert report from the Center for Forensic Economic Studies, prepared by Chad Staller and Stephen Dripps. Dkt. 38-7; Dkt. 66 at 23. This Court has previously reviewed Mr. Staller's and Mr. Dripps' qualifications and concluded that they "are both qualified as experts in the field of economic loss computations." Memorandum Opinion, *Coombs v. Islamic Republic of Iran*, No. 19-cv-3363 (Nov. 6, 2023), Dkt. 29 at 4. Moreover, as the Special Master observes, decisions in this district have regularly approved similar reports from the Center for Forensic Economic Studies. *See* Dkt. 66 at 23 (collecting cases). The Court is, once again, persuaded that Mr. Staller and Mr. Dripps are qualified as experts.

In estimating Sgt. Kisielewski's economic losses, the Special Master found that Staller and Dripps "us[ed] reasonable assumptions and reliable calculations[,] based on economic models and government data." Dkt. 66 at 23. ▮▮▮ The lower end assumes a work-life of 64.9, while the high end assumes a work-life of 67. Dkt. 38-7 at 4. The Special Master recommends that the Court adopt the higher end of the range, noting that other decisions have accepted estimates based on "an expected work-life out to the Social Security retirement age" of 67. Dkt. 66 at 23 (collecting cases). The Court agrees and will award economic loss damages to Sgt. Kisielewski in the amount of $1,906,778.

2.   *Damages for Pain and Suffering*

Sgt. Kisielewski also seeks to recover non-economic damages for the pain and suffering he has endured as a result of the attack. As explained more fully in the Special Master's report, Dkt. 66 at 26–28, and the Court's memorandum opinion, Dkt. 60 at 25, Sgt. Kisielewski suffered grave injuries from an IED attack, ▮▮▮

4

██████████████████████████████████████████
████████████████████████████████ ██

"As courts have recognized, it is difficult to place a dollar value on pain and suffering, particularly in the case of terrorist attacks." *Coombs v. Islamic Republic of Iran*, 2023 WL 4894939, at *17 (D.D.C. July 5, 2023). In general, however, such damage awards should be consistent across cases to "ensure that individuals with similar injuries receive similar awards." *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 54 (D.D.C. 2007). Decisions in this district have accordingly developed a framework for victims who were injured but not killed in terrorist attacks. The "baseline" award in these circumstances is $5 million, but "courts depart upward from this baseline to $7.5–$12 million in more severe instances of physical and psychological pain," *Cabrera v. Islamic Republic of Iran*, 2022 WL 2817730, at *43 (D.D.C. July 19, 2022) (citation omitted), and will "depart downward to $2–$3 million where victims suffered only minor shrapnel injuries or minor injury from small-arms fire," *O'Brien v. Islamic Republic of Iran*, 853 F. Supp. 2d 44, 47 (D.D.C. 2012). Upward departures may be warranted where, for example, the "victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, partially lost vision and hearing, or were mistaken for dead." *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 84 (D.D.C. 2010).

Here, ████████████████████████████████████ the Special Master recommends "the baseline amount of $5 million," with "an upward departure of $4 million, for a total of $9 million for pain and suffering." Dkt. 66 at 28 (citing *Cabrera v. Islamic Republic of Iran*, 2023 WL 3496303, at *8 (D.D.C. May 16, 2023) (awarding $9 million to a surviving victim of an IED attack who lost his right foot and suffered significant additional permanent physical and emotional harm)). The Court finds that the Special Master's conclusions

5

as to the award is supported by the facts and precedent, and therefore adopts his recommendation of $9 million in non-economic damages for Sgt. Kisielewski.

**B.    Family-Member Plaintiffs**

The state-sponsored terrorism exception to the FSIA also contemplates the award of solatium damages to close relatives of terrorism victims. *See* 28 U.S.C. § 1605A(c). An award of solatium damages is intended to compensate for the "the mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as the result of the decedent's death, as well as the harm caused by the loss of the decedent." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). There is a "'presumption' that family members in direct lineal relationship 'suffer compensable mental anguish[,] . . . and testimony proving a close emotional relationship will usually be sufficient to sustain an award of solatium damages.'" *Kaplan v. Hezbollah*, 213 F. Supp. 3d 27, 38 (D.D.C. 2016) (quoting *Kim v. Democratic People's Republic of Korea*, 87 F. Supp. 3d 286, 290 (D.D.C. 2015)) (alterations in original). Family members need not be present for the attack to recover solatium damages. In fact, "[s]olatium claims are typically brought by family members who were not present or injured themselves." *Cohen v. Islamic Republic of Iran*, 238 F. Supp. 3d 71, 84 (D.D.C. 2017).

"Solatium damages, like damages for pain and suffering, are by their very nature unquantifiable." *Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 72 (D.D.C. 2015). But, as with the latter, prior FSIA decisions have identified certain baselines that help ensure that similarly situated victims receive comparable awards. Specifically, decisions in this district have "established two primary frameworks, sometimes called the '*Peterson II*' or '*Heiser*' frameworks," which, for family members of deceased victims, "provide a baseline of $8 million

6

for spouses, $5 million for parents and children, and $2.5 million for siblings." *Cabrera*, 2022 WL 2817730, at *47.

These amounts, however, are merely guideposts, and courts should deviate depending on the circumstances. *See Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affairs*, 892 F.3d 348, 361–62 (D.C. Cir. 2018). The size of the award is based on multiple factors, including "evidence establishing an especially close relationship between the plaintiff and decedent," "medical proof of severe pain, grief or suffering on behalf of the claimant," and the particular "circumstances surrounding the terrorist attack which made the suffering particularly more acute or agonizing." *Oveissi v. Islamic Republic of Iran*, 768 F.Supp.2d 16, 26–27 (D.D.C. 2011). As relevant here, prior decisions have increased solatium damages when the evidence demonstrates that the family members have experienced, or are experiencing, more extreme effects of the loss of their loved one. *See, e.g.*, *Valore*, 700 F. Supp. 2d at 85–86 (D.D.C. 2010); *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 90–91 (D.D.C. 2002).

Turning to the case at hand, the record demonstrates that the attacks have wrought profound emotional, physical, and financial harm on each Family-Member Plaintiff. Each Plaintiff has submitted evidence demonstrating his or her close relationship to the respective direct victim and the toll the loss of their loved one has taken on their lives. The Special Master considered relevant precedent and the individual circumstances of each of the Family-Member Plaintiffs and has recommended an amount for each. Given the comprehensive evidence of enormous suffering, *see* Dkt. 66 at 17–80, the Court adopts the Special Master's recommendations regarding each of the family members of the direct victims.

One issue requires additional attention. Decisions in this district have differed with respect to the appropriate award for young children, especially where the child never had an

7

opportunity to meet their deceased family member. *See Onsongo v. Republic of Sudan*, 60 F. Supp. 3d 144, 151 (D.D.C. 2014). Some decisions have applied a downward variance in these circumstances. *See, e.g., Cabrera*, 2023 WL 3496303, at *11 (awarding $3 million each to two minors who were two months old and one year old, respectively, at the time of their father's death). Here, Plaintiff ▮ was only six months old when her father, CPL Damon LeGrand, was killed. Dkt. 66 at 59. The Special Master nonetheless recommends a $5 million baseline award for ▮ *Id.* Although solatium damages are generally based on the strength of the plaintiff's relationship with the deceased, the Court agrees that a baseline award is appropriate here. ▮

▮

▮ In light of this evidence regarding the effect that ▮ father's death has had on her, the Court concludes that a baseline award of $5 million is warranted.

### C. Punitive Damages

Plaintiffs also seek punitive damages. Dkt. 15 at 306 (Am. Compl.). Punitive damages "serve to punish and deter the actions for which they [are] awarded." *Valore*, 700 F. Supp. 2d at 87. The FSIA expressly contemplates the award of punitive damages. *See* 28 U.S.C. § 1605A(c). Pursuant to the case administrative plan, Dkt. 56 at 2; *see also* Min. Order (Oct. 9, 2024), the Special Master did not consider, and did not calculate, an appropriate award of punitive damages. Rather, the Court reserved this task for itself, which it takes up now.

"In cases brought under the FSIA, courts have concluded that '[p]unitive damages are warranted where defendants supported, protected, harbored, aided, abetted, enabled, sponsored,

conspired with, and subsidized a known terrorist organization whose modus operandi included the targeting, brutalization, and murder of American citizens and others.'" *Force v. Islamic Republic of Iran*, 617 F. Supp. 3d 20, 39 (D.D.C. 2022) (quoting *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 86 (D.D.C. 2017)). In determining the amount of punitive damages to award, courts typically consider four factors: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Hamen v. Islamic Republic of Iran*, 407 F. Supp. 3d 1, 10 (2019) (internal quotations and citations omitted).

Plaintiffs argue, and the Court agrees, that these factors weigh in favor of a sizeable award. As to the first two factors, Iran provided support to the Zarqawi Organization and Ansar al-Islam to enable them to perpetrate over 200 attacks with the purpose of injuring and killing as many American servicemembers as possible. Iran's conduct was deplorable by any measure, and has caused lasting grief and anguish for all Plaintiffs. As a result, there is a need to deter Iran from continuing to support terrorist organizations. Finally, Iran is a sovereign with "substantial wealth." *Force*, 617 F. Supp. 3d at 40. For these reasons, the Court concludes that Plaintiffs are entitled to punitive damages.

To determine the appropriate amount of punitive damages, most decisions from this district involving state-sponsored terrorism have applied a multiplier to a base amount (referred to as the "multiplicand"). *See Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 50 (D.D.C. 2012). As to the multiplicand, some decisions have utilized the defendant's annual expenditures on terrorist activities, *see, e.g.*, *Valore*, 700 F. Supp. 2d at 88, while others have instead opted to use the amount of compensatory damages already awarded, *see, e.g.*, *Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 105–06 (D.D.C. 2017), and still others have considered both these

9

factors together, *see, e.g., Hekmati v. Islamic Republic of Iran*, 278 F. Supp. 3d 145, 166–67 (D.D.C. 2022). A different method forgoes the multiplicand and multiplier approach and, instead, impose a fixed sum of $300 or $150 million per family. *See Hamen*, 407 F.Supp.3d at 10 n.2.

For present purposes, the Court agrees with Plaintiffs that the appropriate multiplicand is the total compensatory damages already awarded. Dkt. 38-2 at 193; *see also Force v. Islamic Republic of Iran*, 617 F. Supp. 3d 20, 40 (D.D.C. 2022) ("The Court therefore concludes that it is more appropriate to calculate punitive damages by applying, as this Court has in similar cases, a multiplier to a base amount (referred to as the 'multiplicand')."). This leaves, then, the question of the appropriate multiplier. Courts in this jurisdiction have frequently used a multiplier between one and five depending on various factors, including, among other things, whether the case involved exceptional circumstances, the perceived deterrence effect, and the nexus between the defendant and the injurious acts. *See, e.g., Haim v. Islamic Republic of Iran*, 784 F. Supp. 2d 1, 14 (D.D.C. 2011) (using the multiplier of three to calculate punitive damages for a suicide bombing attack that killed eight people).

Here, the Court finds that a multiplier of one—rather than the two Plaintiffs seek—is appropriate. This is a case of considerable magnitude, involving over 600 Plaintiffs. In cases of comparable size, decisions have employed multipliers between one and two. *See, e.g., Onsongo v. Republic of Sudan*, 60 F. Supp. 3d 144 (D.D.C. 2014), *aff'd in part, vacated in part on other grounds sub nom. Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017) (reviewing cases and finding it "appropriate to award punitive damages in an amount equal to the total compensatory damages awarded."). Applying a multiplier of one here is likely to result in a total punitive damages award reaching into the billions of dollars.

10

Accordingly, the Court will utilize a multiplier of one. The compensatory damages already awarded totals $555,179,304. The Court therefore will award punitive damages in the amount of $555,179,304 to the Bellwether Plaintiffs. Consistent with other decisions in this district, the award of punitive damages will be apportioned among each individual plaintiff "relative to their individual compensatory awards." *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 28 (D.D.C. 2017).

## D. Prejudgment Interest

Finally, Plaintiffs seek prejudgment interest on these awards. Dkt. 15 at 306 (Am. Compl.). The Special Master recommends that the Court award Plaintiffs prejudgment interest on their compensatory damages. *See* Dkt. 66 at 16, 80. "The decision to award prejudgment interest, as well as how to compute that interest, rests within the discretion of the court, subject to equitable considerations." *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). "The purpose of such awards is to compensate the plaintiff for any delay in payment resulting from the litigation." *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C. Cir. 1997). Accordingly, "[p]rejudgment interest is an element of complete compensation." *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 59 (D.D.C. 2012) (quoting *West Virginia v. United States*, 479 U.S. 305, 311–12 (1987)). Moreover, the Court has concluded in similar cases that the punitive-damages multiplier should be applied after incorporating prejudgment interest into Plaintiffs' compensatory damages awards. *See Force*, 617 F. Supp. 3d at 42. This approach "ensure[s] that the punitive-damage multiplier applies to the entire compensatory loss and that the happenstance of when judgment is entered does not have a material effect on the ultimate value of the judgment." *Id.* Applying this rule, the Special Master calculated prejudgment interest using the Federal Reserve's data for the average annual

prime rate in each year from the date of the various attacks. Dkt. 66 at 82 n.283. The Court adopts the Special Master's methodology, as it has done in prior cases using this same approach. *E.g.*, *Force*, 617 F. Supp. 3d at 42.[1]

## CONCLUSION

The Court will enter a separate order awarding damages to Bellwether Plaintiffs as described above and entering final judgment against Iran. The Court concludes that there is "no just reason for delay" in entering a partial final judgment pursuant to Rule 54(b) because, as an absent defendant, Iran will not be prejudiced by piecemeal appeals or the like, *see Sheikh v. Republic of Sudan*, 485. F. Supp. 3d 255, 274 (D.D.C. 2020), and "[a]bsent entry of final judgment," Bellwether Plaintiffs "will be prejudiced in their ability to receive prompt payment of all or some of their compensatory damages awarded from the fund Victims of State Sponsored Terrorism fund," *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 66 (D.D.C. 2018) (citing 34 U.S.C. § 20144(c)(2)).

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: February 25, 2025

---

[1] Plaintiffs also request post-judgment interest pursuant to 28 U.S.C. § 1961. Dkt. 38-5 at 195. "Application of section 1961(a) is mandatory." *Gration v. Islamic Republic of Iran*, 2023 WL 5221955, at *37 (D.D.C. Aug. 15, 2023) (collecting cases); *see Allen v. District of Columbia*, 969 F.3d 397, 402 (D.C. Cir. 2020) (noting that § 1961(a) "requires payment of interest"); *Winternitz v. Syrian Arab Republic*, 2022 WL 971328, at *12 (D.D.C. Mar. 31, 2022) (awarding post-judgment interest where plaintiffs did not request it in their complaint); *Okosi v. Roby*, 715 F. Supp. 3d 166, 182 (D. Mass. 2024) ("Postjudgment interest is awarded on the entire judgment, including any punitive damages and attorneys' fees . . . ." (citing *Foley v. City of Lowell*, 948 F.2d 10, 22 (1st Cir. 1991)). The Court, accordingly, will award post-judgment interest at the statutory rate on Plaintiffs' money judgment.