UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT MARTINO, *et al.*,

    *Plaintiffs*,

v.

ISLAMIC REPUBLIC OF IRAN,

    *Defendant*.

Civil Action No. 21-1808 (RDM)

**UNDER SEAL**

## MEMORANDUM OPINION

Between 2003 and 2017, various terrorist organizations perpetrated over 200 attacks against United States servicemembers and civilians in Iraq. The 623 Plaintiffs in this action are American service members and civilians who were killed or wounded in these attacks and their families. Plaintiffs bring this suit against the Islamic Republic of Iran, invoking the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(a), to recover for their irreparable injuries.

Pursuant to the case management order, Dkt. 35; Min. Order (Aug. 16, 2023), the Court previously entered default judgment and awarded damages to 45 "Bellwether Plaintiffs," Dkts. 60, 72, adopted an administrative plan to govern further proceedings, and appointed Special Masters to make reports and recommendations ("R&Rs") as to the remaining Plaintiffs' claims, Dkts. 56, 64. Now before the Court is Special Master Stephen A. Saltzburg's latest report and recommendation, concerning 36 plaintiffs whose injuries arise from 14 attacks occurring in western Al Anbar Province. Dkt. 101. For the reasons that follow, the Court will adopt in part and modify in part the Special Master's findings and recommendations.

## I. BACKGROUND

On September 30, 2024, the Court issued a memorandum opinion ("Bellwether Opinion") pertaining to 45 "Bellwether Plaintiffs" associated with 25 "Bellwether Attacks." *See* Dkt. 60 at 1–2. Although the opinion addressed only a subset of the Plaintiffs and attacks at issue in this case, the Court made several findings relevant to all Plaintiffs, and it set forth a framework for analyzing the other attacks. The Court concluded that (1) "Iran provided the Zarqawi organization and [Ansar al-Islam]," two terrorist organizations, "with significant support in the form of arms, funding, training, technical expertise, and safe haven," (2) the Zarqawi organization and Ansar al-Islam carried out the Bellwether Attacks, and (3) "neither the Zarqawi organization nor [Ansar al-Islam] would have been able to effectuate the attacks . . . without the assistance of Iran and that the attacks were a foreseeable result of Iran's material support." Dkt. 60 at 8–10. Based on these findings, the Court granted Plaintiffs' motion for entry of default judgment against Iran with respect to the 45 Bellwether Plaintiffs. *Id.* at 102. Special Master Stephen A. Saltzburg then submitted a report and recommendation as to the Bellwether Plaintiffs' compensatory damages. Dkt. 66; *see* Min. Order (Oct. 9, 2024). The Court adopted the Special Master's recommendations, agreeing that the Bellwether Plaintiffs were entitled to recover compensatory damages under the FSIA's private right of action. *See* Dkt. 71 at 2. The Court also awarded punitive damages, prejudgment interest, and post-judgment interest, *id.* at 11–12, and entered final default judgment as to the Bellwether Plaintiffs, Dkt. 72.

Meanwhile, after issuing its Bellwether Opinion, the Court appointed six Special Masters—Deborah E. Greenspan, Stephen A. Saltzburg, Paul G. Griffin, Shelby R. Grubbs, David L. Broom, and Brad Pigott—to prepare R&Rs addressing the claims of the remaining

2

Plaintiffs. *See* Dkt. 56; Min. Order (August 16, 2023); Dkt. 64. The remaining Plaintiffs were divided into three groups. The first group consists of 52 Plaintiffs who are also associated with the Bellwether Attacks but were not included in the initial group of 45 Bellwether Plaintiffs ("Additional Bellwether Plaintiffs"); the second group consists of approximately 400 Plaintiffs ("Tranche 1 Plaintiffs"); and the third group consists of approximately 128 Plaintiffs ("Tranche 2 Plaintiffs"). Given the large number of Tranche 1 Plaintiffs, Plaintiffs divided the Tranche 1 attacks into five subgroups based upon the regions of Iraq in which they occurred. Dkt. 81 at 2–3.

Because the Court had already adjudicated Iran's liability with respect to the Bellwether Attacks, Dkt. 60 at 89–91, the Court referred the Additional Bellwether Plaintiffs' claims to Special Master Deborah E. Greenspan to prepare an R&R on the remaining issues, Dkt. 56 at 1. The Court then referred all Tranche 1 and Tranche 2 Plaintiffs' claims to the six Special Masters for R&Rs regarding both liability and damages. Dkt. 64 at 1. The Court instructed the Special Masters to assess "whether the Court has subject matter jurisdiction over the claims pursuant to the Foreign Sovereign Immunities Act's ('FSIA') terrorism exception, 28 U.S.C. § 1605A." *Id.* at 2. To establish subject-matter jurisdiction, Plaintiffs must show that their personal injuries or death were "caused by an act of . . . extrajudicial killing . . . or the provision of material support or resources for such an act," and that the support was provided by "an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency." 28 U.S.C. § 1605A(a)(1); *see also* Dkt. 60 at 89–90. Moreover, "the claimant or victim must be a U.S. national, a member of the U.S. armed forces, or a U.S. government employee or contractor at the time the act of terrorism occurred." Dkt. 60 at 89–90 (citing 28 U.S.C. § 1605A(a)(2)(A)(ii)).

3

On May 7, 2025, the Court adopted in part and modified in part two R&Rs; one submitted by Special Master Greenspan for 49 Additional Bellwether Plaintiffs, Dkt. 87, and one submitted by Special Master Saltzburg for 54 Tranche 1 Plaintiffs associated with 16 attacks that occurred near Fallujah, Al Anbar Province, Dkt. 86; *see* Dkt. 94 at 4. For the Greenspan R&R, which concerned attacks that the Court had already determined met the FSIA requirements for subject matter jurisdiction and liability, the Court adopted the Special Master's recommendations for damages with minor adjustments. Dkt. 94 at 5–7. For the Saltzburg R&R dealing with the Fallujah Plaintiffs, the Court adopted the Special Master's factual findings, concluded that the Court had subject matter jurisdiction and that Iran was liable for each of the attacks, and similarly adopted the R&R's award recommendations with minor adjustments. *Id.* at 9–11. Finally, the Court awarded punitive damages, prejudgment interest, and post-judgment interest. *Id.* at 12–13, 13 n.5.

Now before the Court is an additional R&R prepared by Special Master Saltzburg addressing claims by 36 plaintiffs arising from 14 separate attacks that occurred in western Al Anbar province ("Tranche 1 W. Al Anbar Plaintiffs"). Dkt. 101 at 10. In preparing the R&R, Special Master Salzburg relied on sworn declarations, birth certificates, passports, naturalization records, and expert reports. *See, e.g., id.* at 14, 18–19, 55. The R&R explains the effects that the attacks have had on these Plaintiffs, all of whom lost family members. Special Master Saltzburg also explains his conclusions that Iran is liable for each of the 14 attacks. *See id.* at 27–103. The R&R carefully analyzes these issues under the applicable framework for state-sponsored terrorism cases. The Court thanks the Special Master for his thorough and thoughtful analysis and assistance.

4

As explained below, the Court adopts in part and modifies in part the proposed findings and recommendations of the Special Master. In addition, the Court will award punitive damages to Plaintiffs. In total, the Court awards the Tranche 1 W. Al Anbar Plaintiffs $420,689,939 in compensatory damages and $420,689,939 in punitive damages.

## II. ANALYSIS

### A. Compensatory Damages

#### 1. *Subject Matter Jurisdiction and Liability*

As the Court explained in its Bellwether Opinion, the question of subject matter jurisdiction overlaps with Iran's liability. Under the FSIA, the Court has subject matter jurisdiction over claims against foreign nations where:

> [(1)] money damages are sought against a foreign state [(2)] for personal injury or death [(3)] that was caused by [(4)] an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is [(5)] engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

Dkt. 60 at 89 (quoting 28 U.S.C. § 1605A(a)(1)).[1] The FSIA imposes two additional jurisdictional requirements. "First, the claimant or victim must be a U.S. national, a member of the U.S. armed forces, or a U.S. government employee or contractor at the time the act of terrorism occurred." *Id.* at 89–90 (citing 28 U.S.C. § 1605A(a)(2)(A)(ii)). "Second, the foreign state must be designated as a state sponsor of terrorism both at the time the act occurred . . . and at the time the lawsuit was filed." *Id.* at 90 (citing 28 U.S.C. § 1605A(a)(2)(A)(i)(I)). Because

---

[1] A court may exercise personal jurisdiction over a foreign nation where the court has subject matter jurisdiction and the foreign defendant has been properly served. *GSS Grp., Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012). The Court previously concluded that Plaintiffs properly served Iran. Dkt. 60 at 101. Thus, the Court has personal jurisdiction over Iran with respect to the Tranche 1 W. Al Anbar claims so long as it has subject matter jurisdiction.

5

"[t]here is almost total 'overlap between the elements of [§ 1605A(c)'s] cause of action and the terrorism exception to foreign sovereign immunity,' . . . a plaintiff that offers proof sufficient to establish a waiver of foreign sovereign immunity under § 1605A(a) has also established entitlement to relief as a matter of federal law," so long as the plaintiff is also a qualifying U.S. national, member of the armed forces, government employee or contractor, or the legal representative of the above. *Id.* at 98–99 (quoting *Foley v. Syrian Arab Republic*, 249 F. Supp. 3d 186, 205 (D.D.C. 2017)); *see also* 28 U.S.C. § 1605A(c).

Based on the ample support in the record, the Court will adopt Special Master Saltzburg's factual findings that these requirements are satisfied with respect to the Tranche 1 W. Al Anbar Plaintiffs and the 14 W. Al Anbar attacks. Special Master Saltzburg found that all the attack victims were "nationals" of the United States at the time of the attacks, and that all of the Plaintiffs are U.S. nationals, entitling Plaintiffs to sue under the FSIA's private right of action. Dkt. 101 at 14, 25 (citing Dkt. 99-3). The Court also adopts the Special Master's factual findings that each Plaintiff is an immediate family member (or the functional equivalent) of a victim who was killed in a W. Al Anbar attack.[2] As for the attacks, Plaintiffs' expert Dr. Gartenstein-Ross assessed the circumstances of each of the 14 W. Al Anbar attacks and concluded that the Iran-backed Zarqawi organization and/or the Iran-backed Ansar al-Islam/Ansar al-Sunna was either "likely" or "very likely" responsible for each attack. Dkt. 101-3 at 5–6 (Gartenstein-Ross

---

[2] One Plaintiff, Nathan Strong, passed away after this case was filed. Dkt. 101 at 26. In keeping with its past practice, the Court will award damages, as applicable, to his estate. *See* Dkt. 92 at 7. Courts in this district have disagreed as to whether estates of eligible plaintiffs have an inherent federal statutory entitlement to bring claims under 28 U.S.C. § 1605A(c), or whether their ability to do so turns on the power of the estate to bring legal claims under state law. *Compare W.A. v. Islamic Republic of Iran*, 427 F. Supp. 3d 117, 138 (D.D.C. 2019), *with Worley v. Islamic Republic of Iran*, 75 F. Supp. 3d 311, 333 (D.D.C. 2014). The Court need not address the question here, as Nathan Strong's estate qualifies under either standard. *See* Dkt. 101 at 26 and n.7 (citing Vt. Stat. Ann. tit. 14, § 1452 (2024)).

6

Attribution Report). The Court concurs with the Special Master's analysis and, for the reasons set forth in this report and recommendation, finds that Iran is subject to the Court's jurisdiction and is liable for each of the 14 Tranche 1 W. Al Anbar attacks.

2.   *Solatium Damages*

Evaluation of the Plaintiffs' Tranche 1 W. Al Anbar claims for solatium damages is governed by the same framework that this Court applied in its prior opinions. *See* Dkt. 94 at 5–7. The state-sponsored terrorism exception to the FSIA contemplates the award of solatium damages to close relatives of terrorism victims. *See* 28 U.S.C. § 1605A(c). An award of solatium damages is intended to compensate for "the mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as the result of the decedent's death, as well as the harm caused by the loss of the decedent." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). There is a "'presumption' that family members in direct lineal relationship 'suffer compensable mental anguish[,] . . . and testimony proving a close emotional relationship will usually be sufficient to sustain an award of solatium damages.'" *Kaplan v. Hezbollah*, 213 F. Supp. 3d 27, 38 (D.D.C. 2016) (quoting *Kim v. Democratic People's Republic of Korea*, 87 F. Supp. 3d 286, 290 (D.D.C. 2015)) (alterations in original). Moreover, decisions in this district recognize that half-siblings, stepparents, stepchildren, stepsiblings, and others who are the "functional equivalent" of an immediate family member may recover where their relationship to the deceased is sufficiently close. *See, e.g., Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 62–63 (D.D.C. 2018). Family members need not be present for the attack to recover solatium damages. In fact, "[s]olatium claims are typically brought by family members who were not present or injured themselves." *Cohen v. Islamic Republic of Iran*, 238 F. Supp. 3d 71, 84 (D.D.C. 2017).

7

"Solatium damages, like damages for pain and suffering, are by their very nature unquantifiable." *Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 72 (D.D.C. 2015). But prior FSIA decisions have identified certain baselines that help ensure that similarly situated victims receive comparable awards. Specifically, decisions in this district have "established two primary frameworks, sometimes called the '*Peterson II*' or '*Heiser*' frameworks," which, for family members of deceased victims, "provide a baseline of $8 million for spouses, $5 million for parents and children, and $2.5 million for siblings." *Cabrera v. Islamic Republic of Iran*, No. 19-3835, 2022 WL 2817730, at *47 (D.D.C. July 19, 2022). These amounts, however, are merely guideposts, and courts should deviate depending on the circumstances. *See Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affairs*, 892 F.3d 348, 361–62 (D.C. Cir. 2018).

The size of the award is based on multiple factors, including "evidence establishing an especially close relationship between the plaintiff and decedent," "medical proof of severe pain, grief or suffering on behalf of the claimant," and the particular "circumstances surrounding the terrorist attack which made the suffering particularly more acute or agonizing." *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26–27 (D.D.C. 2011). As relevant here, prior decisions have increased solatium damages when the evidence demonstrates that the family members have experienced, or are experiencing, more extreme effects of the loss of their loved one. *See, e.g., Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 85–86 (D.D.C. 2010); *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 90–91 (D.D.C. 2002). The Tranche 1 W. Al Anbar Plaintiffs have experienced profound suffering. The Court will adopt the Special Master's recommended awards, with the following exceptions.[3]

---

[3] Devan Eutin, a Tranche 1 W. Al Anbar Plaintiff, lost her stepfather SGT Bryan Large in an IED attack on October 3, 2005. Dkt. 101 at 55–58. Plaintiffs have not yet supplied a declaration

8

First, the Court concludes that Irma J. McVicker and Edward R. Ricci should receive baseline awards rather than 25% enhancements. *See* Dkt. 99-1 at 63–68. Both plaintiffs lost LCpl. Daniel McVicker—Irma J. McVicker's stepson, and Edward R. Ricci's stepbrother—in an improvised explosive device ("IED") attack. *Id.* at 59, 63, 66. Although both plaintiffs doubtlessly suffer from "serious detrimental effects" from LCpl. McVicker's death, the Court determines that those effects are accounted for in the baseline framework and are similar to the horrific losses suffered by other victims who have received baseline awards. *Cabrera*, 2024 WL 3225942, at *14.

Second, the Court will award Melissa J. Warner, Scott Nicholas Warner, and Ashton Warner 25% enhancements, rather than 100% enhancements. *See* Dkt. 99-1 at 75–81. All three plaintiffs' claims arise from the death of Pvt. Heath Warner—Melissa J. Warner and Scott Nicholas Warner's son, and Ashton Warner's brother—in an IED attack. *Id.* at 74–79. The Warners request, and the Special Master recommends, a 100% upward departure in large part because ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌, and the Court concludes that a 25% enhancement is appropriate considering the

---

from Devan Eutin, however, and so the Special Master was unable to make any recommendation for her damages. *Id.* at 58 n.9. The Court's conclusions with respect to Devan Eutin are therefore limited to Iran's liability for this attack.

9

attack's devastating consequences for the Warner family and their relationships ▮

    Third, the Court determines that Jim Anthony Kaylor should receive a baseline award rather than a 25% enhancement. Following the death of his stepson SPC Jon-Erik Loney, Jim Anthony Kaylor suffered from ▮

As there is insufficient evidence to conclude that ▮ are attributable to the loss of SPC Loney, the Court will award the baseline figure.

    Fourth, the Court concludes that Doris Pangelinan Kent should receive a baseline award rather than a 25% enhancement. As with Jim Anthony Kaylor, Doris Pangelinan Kent experienced ▮

However, there is insufficient evidence for the Court to determine that ▮ are attributable to that loss, and, therefore, the Court holds that a baseline award is appropriate.

    \* \* \*

    The Court's conclusions with respect to the appropriate award for each Plaintiff in no way diminish the magnitude of their terrible losses. The Court carefully reviewed Plaintiffs' declarations and does not doubt that each Plaintiff has suffered enormously. Any reductions in the proposed enhancements are not intended to gainsay or to undervalue Plaintiffs' pain. To the contrary, the Court recognizes that no monetary award—no matter how large—can return to any



of the victims in this case what they lost through the abhorrent actions of Iran and the terrorist groups it supports. The Court's goal, instead, is simply to do its best to treat like cases alike and to ensure that the limited funds that are available to compensate the victims of terrorist attacks are allocated as fairly as possible among the thousands of deserving applicants. The process is not a perfect one but, given the nature of the endeavor, rough justice will have to do.

### B.   Punitive Damages

Plaintiffs also seek punitive damages. Dkt. 15 at 306 (Am. Compl. ¶ 2080). Punitive damages "serve to punish and deter the actions for which they [are] awarded." *Valore*, 700 F. Supp. 2d at 87. The FSIA expressly contemplates the award of punitive damages. *See* 28 U.S.C. § 1605A(c). Pursuant to the case administrative plan, the Special Master did not consider an appropriate award of punitive damages. *See* Dkt. 56 at 2; Min. Order (Oct. 9, 2024); Dkt. 64 at 2.

The Court previously concluded that the Bellwether Plaintiffs, the Additional Bellwether Plaintiffs, and the Fallujah Plaintiffs were entitled to punitive damages for their respective attacks, Dkt. 78 at 9; Dkt. 94 at 12, and for those same reasons, the Court concludes that punitive damages are appropriate for the W. Al Anbar Plaintiffs as well. In keeping with its prior opinions, the Court will use the total compensatory damages awarded as the multiplicand and will use a multiplier of one. *See* Dkt. 78 at 10–11. Punitive damages will be "apportioned among each individual plaintiff 'relative to their individual compensatory awards.'" *Id.* at 11 (quoting *Cohen v. Islamic Republic of Iran*, 268 F. Supp. 3d 19, 28 (D.D.C. 2017)).

### C.   Prejudgment Interest

Finally, Plaintiffs seek prejudgment interest on these awards. Dkt. 15 at 306 (Am. Compl.). The Special Master also recommends that the Court award Plaintiffs prejudgment

11

interest on their compensatory damages. Dkt. 101 at 33–34. "The decision to award prejudgment interest, as well as how to compute that interest, rests within the discretion of the court, subject to equitable considerations." *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). The Court has previously concluded that prejudgment interest is appropriate for the Bellwether Plaintiffs, the Additional Bellwether Plaintiffs, and the Fallujah Plaintiffs, Dkt. 78 at 11–12; Dkt. 94 at 12–13, and the Court reaches the same conclusion here. The Special Master calculated prejudgment interest using the Federal Reserve's data for the average annual prime rate in each year from the date of the various attacks, in accordance with *Forman v. Korean Air Lines Co., Ltd.*, 84 F.3d 446, 450–51 (D.C. Cir. 1996). Dkt. 101 at 33–34. The Court adopts the Special Master's methodology, as it has done in prior cases using this same approach. *E.g., Force v. Islamic Republic of Iran*, 617 F. Supp. 3d 20, 42 (D.D.C. 2022).[4]

## CONCLUSION

The Court will enter a separate order awarding damages to the western Al Anbar Plaintiffs as described above.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: October 14, 2025

---

[4] The W. Al Anbar Plaintiffs also request post-judgment interest pursuant to 28 U.S.C. § 1961. Dkt. 101 at 34. "Application of section 1961(a) is mandatory." *Gration v. Islamic Republic of Iran*, No. 21-1859, 2023 WL 5221955, at *37 (D.D.C. Aug. 15, 2023) (collecting cases); *see Allen v. District of Columbia*, 969 F.3d 397, 402 (D.C. Cir. 2020) (noting that § 1961(a) "requires payment of interest"); *Winternitz v. Syrian Arab Republic*, No. 17-2104, 2022 WL 971328, at *12 (D.D.C. Mar. 31, 2022) (awarding post-judgment interest where plaintiffs did not request it in their complaint). The Court, accordingly, will award post-judgment interest at the statutory rate.

12